# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

## NO. _____

---

## YOKAMON LANEAL HEARN,

### Petitioner,

### v.

## RICK THALER
### Director, Texas Department of Criminal Justice Institutional Division,

### Respondent.

---

---

## EXHIBITS TO
## PETITION FOR A WRIT OF HABEAS CORPUS
### (Capital Case)

### Volume 2

---

**NAOMI TERR**
**1927 Blodgett Street**
**Houston, Texas 77004**
**(713) 222-7788**
**(713) 222-0260 (fax)**
**NaomiTerr@aol.com**

**RICHARD BURR**
**PO Box 525**
**Leggett, Texas 77350**
**(713) 628-3391**
**(713) 893-2500 (fax)**
**dick.burrandwelch@gmail.com**

**Counsel for Yokamon Laneal Hearn**

# INDEX OF EXHIBITS

Volume 1

Exhibit 1:     Order Setting Execution Date

Exhibit 2:     Notes of Trial Counsel Matt Fry (Excerpts)

Exhibit 3:     *Capital Sentencing Strategy: A Defense Primer*, July 1994 (Excerpts)

Exhibit 4:     Plano Police Department Records of Tony L. Massingill (Excerpts)

Exhibit 5:     Tarrant County Mental Health and Mental Retardation Records of Susan D. Johnson (Excerpts)

Exhibit 6:     Dallas County Mental Health and Mental Retardation Records of Yokamon L. Hearn (Excerpts)

Exhibit 7:     Parkland Memorial Hospital Records of Susan D. Johnson (Excerpts)

Volume 2

Exhibit 8:     Social Security Earned Income Records of Susan D. Johnson

Exhibit 9:     Tarrant County Juvenile Probation Records of Yokamon L. Hearn (Excerpts)

Exhibit 10:    Child Protective Services Records (Excerpts)

Exhibit 11:    Texas Department of Corrections Records of Tony L. Massingill

Exhibit 12:    Dallas ISD Records of Tony L. Massingill

Exhibit 13:    Parkland Memorial Hospital Records of Tony L. Massingill (Excerpts)

Exhibit 14:    Parkland Memorial Hospital Records of Yokamon L. Hearn (Excerpts)

Exhibit 15:    Assessment of Yokamon Hearn for Fetal Alcohol Syndrome by Pablo Stewart, M.D.

Exhibit 16:      Neuropsychological Report of Dale G. Watson, Ph.D.

Exhibit 17:      Dallas ISD Records of Yokamon L. Hearn

Volume 3

Exhibit 18:      Fort Worth ISD Records of Yokamon L. Hearn

Exhibit 19:      Educational Records of Yokamon L. Hearn Contained in CPS Records

Exhibit 20:      Dallas Can! Academy Records of Yokamon L. Hearn

Exhibit 21:      Social Security Administration Earned Income Records of Yokamon L. Hearn

Exhibit 22:      Texas Health and Human Services Records of Yokamon L. Hearn

Exhibit 23:      Sworn Statements of Delvin J. Diles, Dwight P. Burley, and Theresa S. Shirley

Exhibit 24:      XX-Jim's Exhibit

Exhibit 25:      Billing Records of Jan Hemphill

Exhibit 26:      Billing Records of Dean Swanda

Exhibit 27:      Texas Criminal Appellate Manual 1996, 3d ed. (Excerpts)

Exhibit 28:      Jan Hemphill's File (Excerpts)

Exhibit 29:      Table Reflecting the Time Entries in Jan Hemphill's files

# EXHIBIT 8



# SOCIAL SECURITY ADMINISTRATION
Baltimore, Maryland 21235

## CERTIFICATION OF EXTRACT FROM RECORDS

Pursuant to the provisions of Title 42, United States Code, Section 904, and the authority vested in me by 42 United States Code 902. I hereby certify that I have legal custody of certain records, documents, and other information established and maintained by the Social Security Administration, pursuant to Title 42, United States Code, Section 405, and that the annexed is a true extract from such records in my custody as aforesaid.

I further certify that all signatures of Social Security Administration annexed document(s) are genuine and made to the signers' official capacity.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the Social Security Administration to be affixed this 1st day of July , 2005.



Steven Donnell
Division Director
Division of Earnings Record Operations
Office of Central Operations

Form SSA-473 (3-96)
Destroy Prior Edition

* * * ITEMIZED STATEMENT OF EARNINGS          JOB:
              FOR SSN ▇▇▇▇▇▇▇▇         * * *

        SOCIAL SECURITY ADMINISTRATION
        OFFICE OF CENTRAL OPERATIONS
        300 N GREENE STREET
        BALTIMORE, MARYLAND  21290-0300

        CINDI WALL CHAVEZ                    NUMBER HOLDER NAME:
        ▇▇▇▇ ▇▇ ▇▇                          DIANNE   JOHNSON
        PO BOX 270033
        ▇▇▇▇▇
        ▇▇▇▇
        AUSTIN                    TX   78727

        PERIOD REQUESTED   JANUARY 1966  THRU  DECEMBER 2004
        EMP:
        YEAR   JAN - MARCH  APRIL -JUNE   JULY - SEPT    OCT - DEC      TOTAL

        EMPLOYER NUMBER:  75-1475009
        WALTON FURNITURE INDUSTRIES INC
        3443 BINKLEY
        DALLAS  TX 75205-5006

        1977      106.35       220.20                          $      326.55

        EMPLOYER NUMBER:  41-1241707
        MACO INC
        405 S 8TH ST
        MINNEAPOLIS  MN 55404-0000

        1977                   488.75                          $      488.75

        EMPLOYER NUMBER:  95-2557851
        MOTEL 6 G P INC
        14651 DALLAS PRKWY STE 500
        DALLAS  TX 75240-0000

        1978       -            -           -           -      $       11.92

        EMPLOYER NUMBER:  69-0740001
        THE UNIVERSITY OF TEXAS AT DALLAS
        BUSINESS MANAGER
        BOX 688
        RICHARDSON  TX 75080-0000

        1979     1,256.62     1,654.19     1,710.57    1,196.72 $    5,818.10

                                PAGE 001

```
     1826              ITEMIZED STATEMENT OF EARNINGS        JOB:
  RSION 1984.002 * * *      FOR SSN                  * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1981 | - | - | - | - | $ | 1,713.60 |

EMPLOYER NUMBER:  13-2844675
PRUDENTIAL BUILDING MAINTENANCE
 CORP OF TEXAS
1430 BROADWAY
NEW YORK NY 10018-0000

| 1980 | - | - | - | - | $ | 106.95 |

EMPLOYER NUMBER:  34-0902807
CLEVEPAK CORP
CLEVEPAK CORP
% MADISON MANAGEMENT GROUP INC
29 SOUTH LASALLE STE 355
CHICAGO  IL 60603-1502

| 1980 | - | - | - | - | $ | 561.36 |

EMPLOYER NUMBER:  95-2301514
BEVERLY HEALTH AND REHABILITATION
 SERVICES INC
ONE THOUSAND BEVERLY WAY
FORT SMITH AR 72919-0001

| 1980 | - | - | - | - | $ | 69.87 |
| 1995 | - | - | - | - | $ | 63.75 |

EMPLOYER NUMBER:  36-2998720
OXFORD SERVICES INC & SUBSIDIARIES
 %HAWLEY GROUP INC
PO BOX 723017
ATLANTA  GA 30339-0017

| 1981 | - | - | - | - | $ | 14.20 |

PAGE 002

826              ITEMIZED STATEMENT OF EARNINGS           JOB:
SION 1984.002 * * *      FOR SSN               * * *


| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|

EMPLOYER NUMBER:  75-1094140
GRACE PRESBYTERIAN VILLAGE
 MINISTRIES
GRACE PRESBYTERIAN VILLAGE
550 E ANN ARBOR AVE
DALLAS  TX 75216-6718

| 1981 | - | - | - | - | $ | 1,183.87 |
| 1982 | - | - | - | - | $ | 41.13 |

EMPLOYER NUMBER:  75-1371879
CRESTVIEW NURSING HOME INC
3105 STONEHENGE DR
RICHARDSON  TX 75082-4075

| 1982 | - | - | - | - | $ | 135.41 |

EMPLOYER NUMBER:  94-1685598
ESSELTE METO INC
 ATTN-RUTH GACK-ACCT DEPT
71 CLINTON RD
GARDEN CITY NY 11530-0000

| 1982 | - | - | - | - | $ | 3,035.00 |

EMPLOYER NUMBER:  58-1400737
DALLAS MEDICAL INVESTORS LTD
MEADOW GREEN NURSING HOME LTD
1935 GARRAUX RD NW
ATLANTA  GA 30327-2505

| 1983 | - | - | - | - | $ | 1,325.25 |
| 1984 | - | - | - | - | $ | 4,915.57 |

PAGE 003

```
1826                ITEMIZED STATEMENT OF EARNINGS        JOB:
RSION 1984.002 * * *      FOR SSN ████████      * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|------|-------------|-------------|-------------|-----------|-------|

```
EMPLOYER NUMBER:  75-1846956
AMBASSADOR PARK HOTEL LTD
 PARTNERSHIP
 AMBASSADOR PARK HOTEL
850 E CENTRAL PARKWAY 190
PLANO   TX 75074-0000
```

| 1983 | - | - | - | - | $ 89.17 |

```
EMPLOYER NUMBER:  86-0362136
NORTH CENTRAL HOTEL CO INC
DOUBLETREE INN-DALLAS
 % ACCOUNTING-P/R
8250 N CENTRAL EXPRESSWAY
DALLAS   TX 75206-1803
```

| 1983 | - | - | - | - | $ 870.88 |

```
EMPLOYER NUMBER:  13-5409005
EXXON MOBIL CORPORATION
% PAYROLL TAX REPORTING
PO BOX 3187
HOUSTON   TX 77253-3187
```

| 1984 | - | - | - | - | $ 1,297.08 |
| 1985 | - | - | - | - | $ 3,105.94 |

```
EMPLOYER NUMBER:  75-1923554
MAINTENANCE OF DALLAS INC
9876 PLANO RD
DALLAS   TX 75238-5103
```

| 1984 | - | - | - | - | $ 651.00 |

```
EMPLOYER NUMBER:  34-0862393
C B R UNIVERSAL INC
11 LONGMEADOW LN
BEACHWOOD   OH 44122-7518
```

| 1986 | - | - | - | - | $ 3,031.75 |

```
1826              ITEMIZED STATEMENT OF EARNINGS        JOB:
RSION 1984.002 * * *      FOR SSN                   * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1987 | - | - | - | - | $ | 341.70 |

EMPLOYER NUMBER:  61-0703028
LONG JOHN SILVERS INC
% PAYROLL DEPT
5200 COMMERCE CROSSINGS L51-10
LOUISVILLE  KY 40229-2182

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1987 | - | - | - | - | $ | 4,112.20 |
| 1988 | - | - | - | - | $ | 8,496.84 |
| 1989 | - | - | - | - | $ | 9,473.81 |
| 1990 | - | - | - | - | $ | 8,021.97 |

EMPLOYER NUMBER:  62-0799798
SHONEYS INC
1717 ELM HILL PIKE STE B1
NASHVILLE  TN 37210-3628

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1990 | - | - | - | - | $ | 1,475.00 |
| 1991 | - | - | .- | - | $ | 7,163.28 |
| 1992 | - | - | - | - | $ | 1,584.76 |

EMPLOYER NUMBER:  75-2325368
INNS OF CBS INC
PIZZA INN
6900 GRAPEVINE HWY
FORT WORTH TX 76180-8867

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1992 | - | - | - | - | $ | 1,452.45 |
| 1993 | - | - | - | - | $ | 1,075.26 |

EMPLOYER NUMBER:  38-1510762
KELLY SERVICES INC
% ATTN TAX DEPT
PO BOX 331179 ATTN TAX DEPT
DETROIT  MI 48232-7179

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 1993 | - | - | - | - | $ | 875.25 |

PAGE 005

```
            026          ITEMIZED STATEMENT OF EARNINGS        JOB:
          TON 1984.002 * * *       FOR SSN                * * *
```

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|

EMPLOYER NUMBER:  75-1506653
BEEFERS SYSTEMS INC
3000 E LOOP 820
FORT WORTH TX 76112-6567

| 1993 | - | - | - | - | $ | 1,025.31 |
| 1994 | - | - | - | - | $ | 2,972.20 |

EMPLOYER NUMBER:  75-2161061
DALLAS MARKET CENTER COMPANY
 12-31-86
BILLINGSLEY LUCY GEN PTR
2100 STEMMONS FRWY
DALLAS  TX 75207-3005

| 1993 | - | - | - | - | $ | 592.88 |

EMPLOYER NUMBER:  75-0758523
FORT WORTH POLICE OFFICERS ASSOC   -
904 COLLIER ST
FORT WORTH TX 76102-3565

| 1994 | - | - | - | - | $ | 44.63 |

EMPLOYER NUMBER:  74-1940998
PEAKLOAD INC OF AMERICA
PO BOX 37
BARKER  TX 77413-0037

| 1995 | - | - | - | - | $ | 29.75 |

EMPLOYER NUMBER:  75-2124010
DMN INC
508 YOUNG S
DALLAS  TX 75202-4893

| 1995 | - | - | - | - | $ | 2,208.85 |
| 1996 | - | - | - | - | $ | 12,624.72 |

PAGE 006

ITEMIZED STATEMENT OF EARNINGS          JOB:
ON 1984.002 * * *      FOR SSN ▓▓▓▓▓▓▓▓      * * *

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|

EMPLOYER NUMBER: 75-2538377
MISSION CORPS INTERNATIONAL OF
 TENNESSEE INC
HELPING HANDS TEMP SERV OF DALLAS
% MISSION SERVICES
PO BOX 1553
STONE MTN GA 30086-1553

| 1995 | - | - | - | - | $ | 2,330.08 |

EMPLOYER NUMBER: 75-2636936
BELO MANAGEMENT SERVICES INC
400 S RECORD ST
DALLAS  TX 75202-4841

| 1997 | - | - | - | - | $ | 17,127.37 |
| 1998 | - | - | - | - | $ | 8,670.23 |

EMPLOYER NUMBER: 22-2228945
ABLEST SERVICE CORP
 ANDERSON RD
1901 ULMERTON RD STE 300
CLEARWATER  FL 33762-2317

| 1999 | - | - | - | - | $ | 1,284.50 |

EMPLOYER NUMBER: 75-0800694
C C YOUNG MEMORIAL HOME
4847 W LAWTHER DR STE 100
DALLAS  TX 75214-1853

| 1999 | - | - | - | - | $ | 1,695.38 |

EMPLOYER NUMBER: 75-2591784
AMERICAN STAFF RESOURCES CORP
5050 W LEMON ST
TAMPA  FL 33609-1104

| 1999 | - | - | - | - | $ | 270.00 |

ITEMIZED STATEMENT OF EARNINGS          JOB:
1984.002 * * *      FOR SSN ████████████      * * *

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|
| 2000 | - | - | - | - | $ | 2,430.83 |

EMPLOYER NUMBER:  75-2572794
ESSILOR LABORATORIES OF AMERICA L P
13515 N STEMMONS FWY
DALLAS   TX 75234-5765

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 2000 | - | - | - | - | $ | 10,624.09 |
| 2001 | - | - | - | - | $ | 4,542.54 |

EMPLOYER NUMBER:  75-2192081
RECONCILIATION CHURCH
17300 N DALLAS PKWY STE 2040
DALLAS   TX 75248-1195

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 2001 | - | - | - | - | $ | 1,200.00 |

EMPLOYER NUMBER: .75-2673025
SAMARITAN SERVICES INC
1617 PEAR ST
DALLAS   TX 75215-4146

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 2001 | - | - | - | - | $ | 36.00 |

EMPLOYER NUMBER: 74-3034712
VISION STAFFING INC
4311 BRYAN
DALLAS   TX 75204-6738

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 2002 | - | - | - | - | $ | 42.25 |

EMPLOYER NUMBER:  75-2336522
DALLAS MINISTRY FOR LIFE INC
DALLAS LIFE FOUNDATION
1100 CADIZ ST
DALLAS   TX 75215-1064

| | | | | | | |
|------|-------------|-------------|-------------|-----------|---|-------|
| 2002 | - | - | - | - | $ | 595.00 |
| 2003 | - | - | - | - | $ | 2,090.00 |

PAGE 008

ITEMIZED STATEMENT OF EARNINGS JOB:

[illegible]-2002 * * * FOR SSN [redacted] * * *

| | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | TOTAL |
|---|---|---|---|---|---|
| EMPLOYER NUMBER: 75-2677948<br>SEVEN SEVENTEEN HB DALLAS<br>CORPORATION<br>ADAMS MARK HOTEL<br>1330 OLIVE CORP<br>ST LOUIS MO 63141-0000 | | | | | |
| 2002 | - | - | - | - | $ 716.06 |
| EMPLOYER NUMBER: 75-2961574<br>GM ENTERPRISES LLC<br>DOUBLE D RANCH<br>12809 EASTGATE DR<br>MESQUITE TX 75181-2032 | | | | | |
| 2002 | - | - | - | - | $ 390.00 |

THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY NUMBER FOR THE PERIOD(S) REQUESTED.

EARNINGS FOR THE YEARS AFTER 2003 MAY NOT BE SHOWN, OR ONLY PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

PAGE 009 END

# EXHIBIT 9

```
09/14/94          TARRANT COUNTY JUVENILE PROBATION          PAGE  1
                        CHRONOLOGICAL NOTES

   NAME: HEARN, YOKAMON LEANEAL                  P.O.: WOODERT

    DATE    TYPE    CONTACT
--------------------------------------------------------------------------
09/14/1994    OV    CLIENT/AUNT
              ON 08/18/94,15 YEAR OLD YOKAMON HEARN WAS REF.BY THE FWPD
              ON A CHARGE OF CRIMINAL TRESPASS.ACCORDING TO THE POLICE
              REPORT.THIS JUVENILE AND HIS 12 YEAR OLD COMPANION WENT ON
              TO THE PROPERTY OF THE VICTIM AND ATTEMPTED TO STEAL THE -
              VICTIM'S SON BICYCLE.YOKAMON WAS ALSO CHARGE WITH THEFT $20
              200.THE CASES WERE FILED OUT OF CUSTODY.

              ON 08/22/94.THE CASE WAS ASSIGN TO P.O.WOODERT.THE INTAKE IN-
              TERVIEW WAS SCHEDULED FOR 09/14/94.

              ON 09/14/94.YOKAMON AND HIS AUNT.PEARLIE MAE MIKE,APPEARED FOR
              THE SCHEDULED INTAKE INTERVIEW.THE INCIDENT WAS DISCUSSED WITH
              THE JUVENILE AND AUNT.
              MRS MIKE IS NOT HAVING BEHAVIORAL PROBLEM WITH HER NEPHEW,
              ALTHOUGH SHE CAN NOT FIND YOKAMON MOTHER(HER SISTER)THIS
              YOUNGMAN HAS LIVE WITH HER FOR ABOUT NINE MONTHS.IT IS
              VERY LITTLE SHE CAN LEGALLY DO WITH HER NEPHEW WITHOUT THE
              MOTHER CONSENT.I TOLD HER I WOULD CONTACT CPS TO SEE IF THEY
              CAN BE OF SOME ASSISTANCES.

              YOKAMON HAD A GOOD ATTITUDE AND SEEMED TO RESPOND TO THE COUN
              SELLING IN A SERIOUS MANNER.HE WAS TOLD IF ANY FUTURE VIOLATIONS
              OCCURRED,HE WOULD BE TAKEN TO COURT.

              INTAKE COMPLETED.CASE ADJUSTED.
```

# EXHIBIT 10

# REQUEST FOR SPECIAL PAYMENT

**TO:** Leanne Johnson, Administrative Assistant, 128-6

**From:** _Trecia DeBaun_  98  129-3  725-9381 x 2055
Caseworker Name    Unit   Mail Code   Phone #D & Extension

Date Money Needed by: _____

Child(ren) for whom request is being made: _Yokoman Hearn_

DOB: ▨▨▨▨  AGE: _16_  SEX: _M_  RACE: _B_

PRS CONSERVATORSHIP: Yes _✓_  No ____  Estimated Request: $ _300.00_
plus relative clothing allowan

How long has the child(ren) been in conservatorship: _3 months_

Current placement of child(ren): _Relative - Wanda Bell_

Does child(ren) have funds: Yes ____  No _✓_ (Call Bookkeeping, if necessary, at 534-1002 ext. 351)

If yes, Account Balance: $ _____

Statement of what is being requested (why, what, when, and where): _Yokoman was removed and placed at Bridge Shelter. He only stayed there for 10 days and went on extended visit with relative who will ultimately have PMC. Yokoman is →_

If approved, make check payable to: _Wanda Bell_

Mail check to: ▨▨▨▨▨▨▨▨▨▨▨▨▨▨

Caseworker's Signature/Date: _Trecia DeBaun_ , _8-9-95_

**APPROVALS:**

Supervisor's Signature/Date: _Jennifer C___ , _1 8 5 -55_

Program Director's Signature/Date: _____ / _____

Lead P.D.'s Signature/Date: _____ / _____

***************************************************
DO NOT WRITE BELOW THIS LINE/FOR ADMINISTRATIVE USES ONLY

____ County General Fund    ____ Jury Fund    ____ Title IV-E Fund
   #001-____-53101    #T57-____-53101    #W31-____-53105

____ *Kash for Kids    ____ Other, Specify _____

Approvals:   Administrative Assistant/Date: _____ / _____
    (Approving designation of funds)

_____ / _____   or   _____ / _____
*Community Coordinator    Date    *Kash for Kids President    Date
*Requires at least one signature from either of these positions

CONFIDENTIAL
DO NOT RELEASE WITHOUT

is still on extended visit with no orders due to needing to serve parents. Relative needs assistance with obtaining clothes and bedroom furniture for Yokoman. He never received any clo... allowance due to being in Lic. facility less than 14days Aunt is going to have PMC once service is taken care. She is single with 4 children of her own, and needs the assistance to set the household up for Yokoman.

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT PROTECTIVE
AND REGULATORY SERVICES

**2**  GARCIA       LANETTE

U650   031-98-C-07   1293

Texas Departmer.
of Protective and      Regulatory Services
**CANRIS REPORT—Turnaround Document**

1. CANRIS Incident No.
**F222814**

**RUN DATE**
**05/12/95**

2. Ongoing BJN/Provider No.     3.

## SECTION I—WORKER INFORMATION

| 4. Investigative Worker Name (Last) | (First) | 5. Emp. No. | 6 B... | 7. Mail Code |
|---|---|---|---|---|
| GARCIA | LANETTE | U650 | 031-98-C-07 | 1293 |

## SECTION II—INCIDENT REPORT

| 8. Date Occurred to Child | 9. Date Reported to DPRS | 10. Date Invest. Completed | 11. Source | 12. PRIORITY | | Data Submitted |
|---|---|---|---|---|---|---|
| 04-24-95 | 04-24-95 | 05-08-95 | OSA | A. At Intake 1 | B. Actual 1 | |

| 13.A. DISPOSITION | | B. RISK ASSESSMENT | | 14. ANNUAL FAMILY INCOME | EMERGENCY ASSIST. |
|---|---|---|---|---|---|
| 1 | 1–Reason to Believe | NO RISK INDICATED | 6   6–Risk Indicated | 1–$0 to $8,999 | 1 1–Yes |
| | 2–Unable to Determine | 1–No Significant Factors | XXXXXXXXXXXXX | 2 2–$9,000 to $17,999 | 2–No |
| | 3–Ruled Out | 2–Factors Controlled | XXXXXXXXXXXXX | 3–$18,000 to $33,999 | |
| | 4–Family Moved | 5–Risk Assessment Not Applicable | | 4–$34,000 to $62,999 | |
| | | | | 5–$63,000 or more | |

## SECTION III—INDIVIDUAL INFORMATION

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | HEARN | SUSAN | D | ▉▉▉ | WI | F | B | MO | AP | OC |
| 24. Street Address | | 25. City | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| IN JAIL | | FORT WORTH | | | | TX | 76102 | 220 | NO | |
| 30. DHS Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line | | |
| 511381814 | ▉▉▉NSUP | | | NA | NCF | NA | | NA | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | HEARN | YOKAMON | | 11 06 78 | NA | M | B | OV | VC | OC |
| 24. Street Address | | 25. City | | | | | | 220 | NO | |
| 30. DHS Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line | | |
| 511381815 | ▉▉▉NSUP | | | NF | PRS | NA | | NA | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | 25. City | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 30. DHS Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | 25. City | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 30. DHS Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line | | |

| 15. Line | 16. Name (Last) | (First) | (MI) | 17. Date of Birth | 18. Mar. St. | 19. Sex | 20. Eth. | 21. Rel'ship | 22. Role | 23. SSMS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| 24. Street Address | | 25. City | | | | 26. St. | 27. ZIP | 28. Co. | 29. Characteristics | |
| 30. DHS Client No. | 31. Social Security No. | 32. Type of Abuse/Neglect | | 33. Fatal | 34. Leg. Act. | 35. Prev. Inc. No. | | 36. Line | | |

Page ____1____ of _____ pages



.DATE 25 APR 95   08:14:40     CHIPSS - PRINT    PONTUTI        , JUDITH    - 1293
                     TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES
INTAKE WORKER               TIME OF INTAKE       CHILD PROTECTIVE SERVICES
BLODGETT       , DALE       2238                      CANRIS REPORT

INVESTIGATION WORKER        EMP NO  BJN      MAIL CD    ONGOING BJN/PROV. NO.
CRUZ       , JENNIFER       4964    03198F01   1293

DATE        DATE          DATE INV     SOURCE        PRIORITY
OCCURRED    REPORTED      COMPLETED    REPORT     INTAKE / ACTUAL
042495      042495                     OSA          01       0 /
                                                              ***********
DISPOSITION        RISK ASSESSMENT   ANNUAL FAMILY INCOME    * J674551 *
 - RTB                 X  U            - 5.000               ***********

EMERGENCY ASSISTANCE    WORKER SIGNATURE:  _Lisette Harris_
 Yes
-----------------------------------------------------------------------------
  LIN  NAM-LAST        FIRST      MI  AGE  DOB     MAR SEX ETH RELA ROL SSMS
  01   HEARN           SUSAN          34           W   F   B   MO   P   OC
       STREET ADDRESS        CITY        ST   ZIP      COU   CHARACTERISTICS
       IN JAIL               FORT WORTH  TX   76102    220     NO
       DHS CL NBR   SSN      TYPES ABUSE/NEGLECT   FTL  LGL   PREV INC  LIN
       600900564             NSUP           NA   NCF    NA
       HOME PHONE   W/S PHONE   WORK/SCHOOL ADDRESS
                    8173361781 PRESBYTERIAN NIGHT SHELTER   Unknown
-----------------------------------------------------------------------------
  LIN  NAM-LAST        FIRST      MI  AGE  DOB     MAR SEX ETH RELA ROL SSMS
  02   HEARN           YOKAMON        16           C   M   B   OV   V   OC
       STREET ADDRESS        CITY        ST   ZIP      COU   CHARACTERISTICS
                                                     220     NO
       DHS CL NBR   SSN      TYPES ABUSE/NEGLECT   FTL  LGL   PREV INC  LIN
       600900567             NSUP           NA   PRS    NA
       HOME PHONE   W/S PHONE   WORK/SCHOOL ADDRESS
       8178774663             THE BRIDGE
                    ..... END REPORT .....

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES

.DATE 25 APR 95   08:14:21     CHIPSS - PRINT   PONTUTI        , JUDITH    - 1293

TEXAS DEPARTMENT OF HUMAN SERVICES
CHILD PROTECTIVE SERVICES
INTAKE REPORT

                    INTAKE WORKER: BLODGETT        , DALE           BJN: 03112C08
        INVESTIGATIVE WORKER: CRUZ            , JENNIFER        BJN: 03198F01

                    CASE: HEARN            , SUSAN          NUMBER: J674551
                          IN JAIL
                          FORT WORTH     , TX 76102        COUNTY: 220

        PRIMARY ALLEGATION: NEGLECTFUL SUPERVISI     DATE OF INTAKE: 042495
                  PRIORITY: 01                        TIME OF INTAKE: 2238
        DATE OF INCIDENT: 042495                      REFERENCE NUMBER:

| LN | NAME | | AG | DOB | M | S | E | RE | R | AN-1 | AN-2 | AN-3 | AN-4 |
|----|------|--|----|-----|---|---|---|----|---|------|------|------|------|
| 01 | SUSAN | HEARN | 34 | | W | F | B | MO | P | | | | |
| 02 | YOKAMON | HEARN | 16 | | C | M | B | OV | V | | | | |

****** CHILD WENT TO BRIDGE BECAUSE MO IN JAIL- WILL NEED TO BE ******
         PLACED IF MOTHER DOESN'T BOND OUT.
FAXED NARRATIVE STATES: MO AND OV WERE RESIDING IN THE PRESBYTERIAN NIGHT
SHELTER. MO WAS KICKED OUT OF THE PROGRAM THIS EVENING AND ARRESTED. MO
CAME IN INTOXICATED AND UNDER THE INFLUENCE OF CRACK. SHE GOT INTO AN
ALTERCATION WITH ANOTHER RESIDENT. MO WAS ESCORTED OUT AND ARRESTED.
REPORTER DOESN'T KNOW WHAT OFFENSE MOTHER WAS CHARGED WITH NOR HOW LONG SHE
WILL BE IN JAIL. (OR WHERE SHE WILL GO WHEN SHE GETS OUT)
OV IS CURRENTLY AT THE SHELTER AND NEEDS TO BE PLACED. AN AUNT, KENDRA ROSS
WAS CONTACTED BUT IS AT WORK AND DOES NOT GET OFF UNTIL 12 AM. THERE IS NO
INDICATION THAT AU IS ABLE OR WILLING TO PICK UP OV. ATTEMPTS WERE MADE TO
CONTACT ANOTHER AUNT, PEARLY MIKE IN FORT WORTH. MS MIKE DOES NOT HAVE A
PHONE. A MANAGEMENT NUMBER WAS LISTED BUT THERE WAS NO ANSWER. OV STATES
HE DOES NOT KNOW ANYONE ELSE TO CONTACT.
PRIOR TO MOVING IN THE SHELTER, MO AND OV WERE LIVING WITH AN AUNT.
MO WAS ARRESTED IN 11987 (CHARGES UNKNOWN.)

MD/NR ACT  CANS-NR   TERM-ACTIVE FS

NORMA WOLF, UNIT 12, CONTACTED BEN STEWART AT THE PRES SHELTER AND ARRANGED
THAT HE WOULD TRANSPORT THE BOY TO THE BRIDGE. SHE SPOKE WITH ROBERT SIBLEY
AT THE BRIDGE SHELTER WHO AGREED TO TAKE HIM.

*Janette Garcia*
*4/25/95*
*jeg*

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND ...

```
                                                                  J674551
---------------------------------------------------------------------------
 LIN  NAM-LAST        FIRST     MI  AGE DOB      MAR SEX ETH RELA ROL SSMS
 01   HEARN           SUSAN          34          W   F   B   MO   P
 STREET ADDRESS       CITY           ST   ZIP       COU   CHARACTERISTICS
 IN JAIL              FORT WORTH     TX   76102     220
 DHS CL NBR  SSN      TYPES ABUSE/NEGLECT    FTL  LGL   PREV INC  LIN
 600900564
 HOME PHONE   W/S PHONE    WORK/SCHOOL ADDRESS
                           8173361781 PRESBYTERIAN NIGHT SHELTER
---------------------------------------------------------------------------
 LIN  NAM-LAST        FIRST     MI  AGE DOB      MAR SEX ETH RELA ROL SSMS
 02   HEARN           YOKAMON        16          C   M   B   OV   V
 STREET ADDRESS       CITY           ST   ZIP       COU   CHARACTERISTICS
                                                    220
 DHS CL NBR  SSN      TYPES ABUSE/NEGLECT    FTL  LGL   PREV INC  LIN
 600900567
 HOME PHONE   W/S PHONE    WORK/SCHOOL ADDRESS
 8178774663                THE BRIDGE
---------------------------------------------------------------------------
 LIN  NAME                          SOURCE OF REPORT
 01   RON STEWART                   OTHER SOCIAL AGENCY

 2400 CYPRESS, FW 76102  918/336-1781  REVEREND BEN STEWART
 AGREED TO TAKE THE BOY TO THE BRIDGE
---------------------------------------------------------------------------
 LIN  NAME                          INTEREST IN CASE
 02   FWPD                          LAW



---------------------------------------------------------------------------
 LIN  NAME                          INTEREST IN CASE
 03   KENDRA ROSS                   RELATIVE

 AUNT                     214/374-1301

---------------------------------------------------------------------------
 LIN  NAME                          INTEREST IN CASE
 04   PEARLY MIKE                   RELATIVE

 AU LIVES IN THE               MANAGER'S OFFICE NUMBER IS 817/531-3971

---------------------------------------------------------------------------
 LIN  NAME                          INTEREST IN CASE
 05   PRESBYTERIAN SHELTER STAFF    OTHER SOCIAL AGENCY

 CHRIS NORTON  817/336-1781, DAVID HART,  WILLIE CURL
---------------------------------------------------------------------------
 LIN  NAME                          INTEREST IN CASE
 06   ROBERT SIBLEY                 CHILD CARE FACILITY

 BRIDGE SHELTER  877-4663  SAID THE BOY COULD STAY THERE TONIGHT
---------------------------------------------------------------------------
                      ..... END REPORT .....
```

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
SERVICES

TEXAS DEPARTMENT OF HUMAN SERVICES
CHILD PROTECTIVE SERVICES
NOTIFICATION TO LAW ENFORCEMENT AGENCY OF CHILD ABUSE/NEGLECT REPORT

**98**

SECTION 34.02 OF THE TEXAS FAMILY CODE REQUIRES THE TEXAS DEPARTMENT OF HUMAN SERVICES TO NOTIFY THE APPROPRIATE LAW ENFORCEMENT AGENCY OF ALL REPORTS OF CHILD ABUSE/NEGLECT RECEIVED BY THE DEPARTMENT OTHER THAN REPORTS RECEIVED FROM SUCH AGENCIES.  THE PURPOSE OF THIS LETTER IS TO CONFIRM NOTIFICATION TO YOU OF A REPORT OF CHILD ABUSE/NEGLECT RECEIVED BY DHS.

DATE:  APRIL 26, 1995

TO: FWPD

DHS PERSON: GARCIA          , LANETTE
ADDRESS:

TELEPHONE: 817 735-9381

REGARDING:
NAME: HEARN          , SUSAN          COMMENTS:

ROLE IN CASE: ALLEGED PERPETRATOR

METHOD OF NOTIFICATION TO LAW
 ENFORCEMENT AGENCY
    ORAL REPORT MADE TO
OF YOUR AGENCY ON                    ;
 COPY OF REPORT ATTACHED.
    THIS LETTER SERVES AS INITIAL
NOTIFICATION OF THE REPORT AND A COPY
OF THE REPORT IS ATTACHED.
    ACTION TAKEN BY
TEXAS DEPARTMENT OF HUMAN SERVICES
 THE CASE INVESTIGATION IS
    PLANNED          IN PROGRESS
    HAS BEEN COMPLETED
WITH A DISPOSITION OF:
        ADJUDICATED
        REASON TO BELIEVE
        UNFOUNDED
        FAMILY MOVED (UNABLE TO LOCATE)

FOR ADJUDICATED AND REASON TO BELIEVE,
ONGOING CHILD PROTECTIVE SERVICES
    WILL      WILL NOT  BE PROVIDED.

ACTION REQUESTED OF LAW ENFORCEMENT AGENCY

PLEASE NOTIFY THE ABOVE DESIGNATED DHS CONTACT PERSON OF ANY ACTION PLANNED OR TAKEN IN THIS CASE SO THAT WE MAY BETTER COORDINATE THE RESPECTIVE INVESTIGA-TION AND SERVICES PROVIDED.  IF YOU DETERMINE THAT THIS CASE SHOULD BE REPORTED TO ANOTHER LAW ENFORCEMENT AGENCY, PLEASE FORWARD THIS INFORMATION TO THE APPROPRIATE AGENCY.
                    ..... END REPORT .....

DO NOT ... WITHOUT
AUTHOR... FROM TEXAS
DEPART... ... OTECTIVE
AND RE... ... ... ...VICES

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 1 of 7

| Case Name HEARN, SUSAN | Assigned Worker LANETTE GARCIA | Date Assigned 04/25/1995 |
|---|---|---|

## DOCUMENTATION OF ACTIONS

| | DONE | NOT DONE | N/A |
|---|---|---|---|
| Examine and interview each alleged victim and child at risk................................................................ | ☒ | ☐ | |
| Interview each child in the household who may have information........................................................ | ☒ | ☐ | |
| Notice to parents of interview or exam of the child.......................................................................... | ☒ | ☐ | |
| Explain each allegation to the parents and all alleged perpetrators.................................................. | ☒ | ☐ | |
| Interview each parent and alleged perpetrator................................................................................ | ☒ | ☐ | |
| Give a copy of *A Parent's Guide* to the parents and all alleged perpetrators.................................. | ☒ | ☐ | |
| Make a home visit.......................................................................................................................... | ☐ | ☒ | ☐ |

Explain each action not done.  Also, if a videotape was made, indicate where it is stored.

PARENTS WERE NOT NOTIFIED OF INVESTIGATION,  INTERVIEWED OR GIVEN A PARENTS GUIDE BECAUSE
THEIR  WHEREABOUTS ARE UNKNOWN.   A HOME VISIT WAS NOT MADE BECAUSE MS. HEARN WAS RESIDING AT
A  SHELTER WHEN SHE ABANDONED HER SON YOKAMON.   MS. HEARN WAS NOTIFIED  AND INTERVIEWED ON
4/26/95

**RECORD OF CONTACTS -**   Make an entry for each significant contact made during the investigation.  Begin each entry with a
header line containing the following information: Date of Contact - Type of Contact - Primary Persons
Contacted - Relationship to Case - Purpose of Contact.  Under the header line, record factual
information about the contact.

Date Investigation Initiated
04/25/95

| Date of Contact | Type of Contact | Primary Persons Contacted | Locating Info Phone/Address | Relationship to Case | Summary of Purpose and/or Outcome of Contact |
|---|---|---|---|---|---|
| 04/25/95 | T.C. | KENDRA ROSS / WANDA BELL | 214-374-1301 | MAU/ MAU | INVESTIGATION |
| THE AUNTS SAID THEY COULD NOT COME AND GET  OR TAKE CARE OF YOKAMON. | | | | | |
| 04/25/95 | T.C. | ANTHONY, APT MANAGER | 531-3971 | APT. MANAGER | LEAVE MESSAGE |
| APARTMENT MANAGER  LEFT MESSAGE FOR PEARLY MIKE, MAU TO CONTACT CPS. | | | | | |
| 04/25/95 | H.V. | ATTEMPTED CONTACT | ▓▓▓▓▓▓ | MAU | NO ANSWER |
| 04/25/95 | T.C. | PEARLY MIKE | | MAU | CAN NOT TAKE CHILD |
| 04/25/95 | T.C. | FWPD | | LAW | MOTHER  RELEASED |
| 04/25/95 | H.V. | YOKAMON | ▓▓▓▓▓▓ | OV | INTERVIEW |
| 04/25/95 | H.V. | UNKNOWN MALE | ▓▓▓▓▓▓ | MO'S PP | COLLATERAL |
| 04/25/95 | H.V. | NO CONTACT MADE | ▓▓▓▓▓ | | VACANT |

DO NOT ~~...~~ ~~...~~
~~...~~ ~~...~~ RELEASE WITHOUT
~~...~~ ~~...~~ TION FROM TEXAS
DEPART ~~...~~ OF PROTECTIVE
AND ~~...~~ ~~...~~ SERVICES

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 2 of 7

| Date of Contact | Type of Contact | Primary Persons Contacted | Locating Info Phone/Address | Relationship to Case | Summary of Purpose and/or Outcome of Contact |
|---|---|---|---|---|---|
| 04/25/95 | T.C. | WANDA BELL | 214-374-1301 | MAU | NOTIFY OF COURT TIME |
| 04/25/95 | T.C. | CHRIS NORTON | 336-1781 | SHELTER | MOTHER HAS NOT CONTACTED |
| 04/26/95 | T.C. | YOKAMON | 877-4663 | OV | INFORMATION |
| 04/26/95 | T.C. | SUSAN HEARN | UNION GOSPEL MISSION | MO | SET APPT. |
| 04/26/95 | O.V. | SUSAN HEARN | | MO | WANTS CHILD BACK |
| 04/27/95 | T.C. | MARY HARRIS | PRESBYTERIAN SHELTER | WORKER | VERIFY MOTHER CONTACT |
| 04/27/95 | T.C. | A.J. | PRESBYTERIAN SHELTER | WORKER | VERIFICATION |
| 04/27/95 | T.C. | ATTEMPTED CONTACT | 927-1163 | HOSP | LEFT MESSAGE |
| 04/27/95 | T.C. | SUSAN HEARN | UNION GOSPEL MISSION | MO | ARRANGE FOR HER TO PICK UP YOKAMON |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 3 of 7

**Summary Recording Format**
(Closed Investigation)

Case Name
HEARN, SUSAN

**ALLEGATIONS/DISPOSITION (REFER TO CPS INTAKE REPORT):**

THE ALLEGATIONS CONSISTED OF THE NEGLECTFUL SUPERVISION OF YOKAMON HEARN AGE SIXTEEN BY HIS MOTHER SUSAN HEARN, DUE TO HER ARREST. MS. HEARN DID NOT ATTEMPT TO LOCATE OR CONTACT HER SON UPON HER RELEASE FROM JAIL.   DUE TO THE ABANDONMENT OF YOKAMON HE WAS PLACED IN  THE BRIDGE SHELTER BY CPS. ON 4/25/95 CPS WAS GRANTED TEMPORARY MANAGING CONSERVATORSHIP OF YOKAMON HEARN  BY THE COURT.

**INTERVIEW AND EXAMINATION OF EACH VICTIM AND OR OTHER CHILDREN AT RISK AND THEIR RESPONSE TO ALL ALLEGATIONS/OTHER PERTINENT INFORMATION (OBSERVATIONS MADE, DESCRIPTION OF INJURY OR HARM, NON-VERBAL COMMUNICATION):**

4/25/95 VISIT WITH YOKAMON  AT THE BRIDGE SHELTER.

YOKAMON STATED THAT HIS MOTHER WAS HIGH AND DRUNK LAST NIGHT WHEN SHE RETURNED TO THE SHELTER. SHE GOT INTO AN ARGUMENT WITH ANOTHER  RESIDENT. SHE WAS ARRESTED AND TAKEN TO JAIL. YOKAMON  WOULD LIKE TO STAY WITH HIS AUNT, WANDA BELL, HE ALSO GAVE PEARLY MIKE AS A PERSON HE COULD STAY WITH. I EXPLAINED TO HIM THAT AT THIS TIME IT IS NOT POSSIBLE FOR HIM TO STAY WITH THEM. HE WAS UNABLE TO  NAME ANY OTHER FAMILY MEMBERS OR FRIENDS. HE STATED THAT HIS PATERNAL GRANDMOTHER DOES NOT LIKE HIM AND HAS NEVER HAD ANY CONTACT WITH HIM.  HIS FATHER IS DEAD AND HE DOES NOT EVEN KNOW HIS NAME.   HE GAVE ▮▮▮▮▮▮▮ AS HIS PREVIOUS ADDRESS.  HE IS CURRENTLY ENROLLED IN POLYTECHNIC HIGH SCHOOL.  HE STATED THAT HE DOES NOT KNOW ANY OF HIS MOTHER'S FRIENDS .  HIS MOTHER MAY HAVE GONE TO HER BOYFRIEND'S HOUSE  AT THE CORNER OF KNOX AND NOLAN, HE DOES NOT KNOW THE BOYFRIENDS NAME.   YOKAMON APPEARED CLEAN AND WELL GROOMED. HE WAS VERY FRIENDLY AND POLITE. HE HAS BEEN IN TROUBLE WITH THE POLICE  TWICE FOR STEALING. HE HAS NEVER GONE TO JUVENILE AND  NO CHARGES HAVE BEEN BROUGHT AGAINST HIM.   YOKAMON WAS BORN IN DALLAS .  HIS MATERNAL GRANDMOTHER IS DECEASED.

**OBSERVATIONS OF HOME ENVIRONMENT:  CONDITIONS THAT INVOLVE RISK TO THE CHILD (IF HOME VISIT MADE):**

NO HOME VISIT WAS MADE BECAUSE OV AND  MO WERE RESIDING IN A SHELTER AT THE TIME OF THE REMOVAL.

. . . IAL
AU. . . . . . . . .  . . . THOUT
DEPAR. . . . . . . . . . . TEXAS
AND RE. . . . . . . . . . TECTIVE
. . . . . . . . . . SERVICES

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 4 of 7

Case Name
HEARN , SUSAN

**INTERVIEW WITH EACH PARENT AND/OR PERPETRATOR AND THEIR RESPONSE TO ALL ALLEGATIONS (OBSERVATIONS, NON-VERBAL COMMUNICATION):**

4/25/95  MS. HEARN  WAS  NOT  NOTIFIED OF THE REMOVAL OR INVESTIGATION BECAUSE HER WHEREABOUTS ARE UNKNOWN.

4/26/95 O.V. WITH MS. HEARN — office visit

MS. HEARN STATED THAT SHE HAD GONE TO THE HOSPITAL AFTER BEING RELEASED FROM JAIL  BECAUSE SHE WAS  PREGNANT  AND BLEEDING.   MS. HEARN IS NO LONGER PREGNANT.   SHE CALLED THE SHELTER AND SPOKE WITH A.J. , MARY, AND WILLIE CURL , THEY WERE UNABLE TO  TELL HER WHERE YOKAMON  WAS.  SHE FINALLY  SPOKE WITH ROBERT JACKSON AT THE SHELTER AND WAS INFORMED CPS HAD TAKEN HIM.   SHE IMMEDIATELY  CONTACTED  ME AT MY OFFICE.  MS. HEARN ADMITTED  THAT  SHE HAS A ALCOHOL AND DRUG PROBLEM.  SHE SMOKED CRACK  ON 4/24/95.  SHE SAID SHE WAS WILLING TO GO IINTO  DRUG REHAB  OR DO ANYTHING THAT SHE COULD TO GET HER SON  BACK.   MS. HEARN IS PLANNING TO MARRY  ROBERT JACKSON WHO SHE MET AT THE SHELTER.  SHE PLANS TO HAVE AN APARTMENT BY 5/3/95.    MS. HEARN IS NOT ABLE TO TAKE YOKAMON TO THE UNION GOSPEL MISSION WHERE SHE IS CURRENTLY STAYING DUE TO HIS AGE.   THE MISSION SEPERATES  MEN AND WOMEN AND HE IS NOT EIGHTEEN. MS. HEARN ASKED THAT I  TELL YOKAMON THAT SHE  HAD TRIED TO FIND HIM  AND  SHE WANTS TO SEE HIM.  SHE UNDERSTANDS THAT HE MIGHT BE ANGRY  AND DOES NOT WANT TO FORCE HIM TO SEE HER.   ON 4/27/95  MS. HEARN  WAS  INFORMED THAT SHE WOULD BE ABLE TO  HAVE DAY VISITS WITH YOKAMON ON SATURDAY AND SUNDAY.   SHE IS NOT ALLOWED TO TAKE HIM OVERNIGHT BECAUSE SHE IS UNABLE TO PROVIDE SHELTER FOR HIM.

**INFORMATION ABOUT ABSENT PARENT (NAME, WHEREABOUTS, LEVEL OF INVOLVEMENT WITH CHILD):**

UNKNOWN FATHER IS DECEASED

**COLLATERAL INFORMATION OBTAINED TO CONFIRM OR RULE OUT ABUSE/NEGLECT AND ADDRESS RISK OR ABUSE/NEGLECT AND SAFETY:**

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 5 of 7

MS. WANDA BELL STATED THAT HER SISTER HAS A LONG HISORY OF DRUG AND ALCOHOL ABUSE.   THE FAMILY HAS TRIED TO HELP HER NUMEROUS TIMES.  SHE HAS NEVER BEEN A PARENT TO YOKAMON.   THE MATERNAL GRANDMOTHER IS DECEASED  AND THE PATERNAL GRANDMOTHER  HAS NEVER MET YOKAMON AND DOES NOT LIKE HIM.  MS. BELL IS UNABLE TO TAKE YOKAMON BECAUSE SHE HAS FOUR CHILDREN AT HOME AND SHE DOES NOT WANT TO  DEAL WITH HER SISTER ANYMORE.  SHE DID STATE  THAT IF SHE COULD GET LEGAL CUSTODY OF YOKAMON  SHE WOULD TAKE HIM.   MS. BELL DOES NOT KNOW WHERE SUSAN  IS OR WHERE SHE MIGHT GO.      ON 4/27/95  MS. BELL STATED THAT SHE WAS STILL INTERESTED IN TAKING YOKAMON IF SHE COULD GET LEGAL CUSTODY OF HIM.  I SET UP AN APPOINTMENT  FOR A HOME STUDY TO BE  DONE ON 5/3/95. MS. BELL INFORMED ME THAT MS. HEARN HAS A SERIOUS DRUG PROBLEM AND SHE NEEDS  EXTENSIVE TREATMENT.

MS. PEARLY MIKE , MAU, STATED THAT SHE CANNOT TAKE  YOKAMON  BECAUSE SHE CAN'T HANDLE HIS MOTHER'S DRUG USE AND BEHAVIOR.  SHE HAS TRIED TO HELP SUSAN ON MANY OCCASIONS AND HAS HELPED TO  RAISE YOKAMON  BUT SHE CANNOT DEAL WITH SUSAN ANYMORE.   MS. MIKE HAS NO IDEA WHERE MS. HEARN  IS OR WHERE SHE WOULD GO.

MS. KENDRA ROSS, MAU,  STATED THAT  SHE WOULD NOT TAKE YOKAMON  AND DID NOT WANT TO TALK ABOUT THE SITUATION.

MS. HEARN'S PARAMOUR AN UNKNOWN WHITE MALE LIVING AT ███████████████ STATED THAT YOKAMON HAD STOLEN HIS CAR AND WRECKED IT  AND THAT   SUSAN HEARN  IS A " CRACK WHORE" .   HE DID NOT KNOW WHERE SUSAN MIGHT BE  AND WAS UNAWARE  THAT SHE HAD BEEN  RELEASED  FROM JAIL.  HE WAS EXTREMELY DRUNK  AND SEEMED ANGRY WITH  SUSAN AND YOKAMON HEARN.

 T.C. WITH PRESBYTERIAN SHELTER STAFF, MARY HARRIS , A.J. AND WILLIIE CURL.   THEY  VERIFIED THAT MS. HEARN HAD CALLED ON  4/25/ AND 4/26 LOOKING FOR YOKAMON.   SHE  WAS FINALLY INFORMED OF CPS INVOLVEMENT BY ROBERT JACKSON ON 4/26/95.

CONFIDENTIAL
DO NOT
AUTHOR             WITHOUT
                   TEXAS
                   TIVE

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 6 of 7

**Case Name**
HEARN , SUSAN

**DOCUMENTATION SUPPORTING RISK ASSESSMENT (INCLUDE SOURCE OF INFORMATION, I.E., COLLATERALS, CASE RECORDS, FAMILY MEMBERS):**

**PAST ABUSE/NEGLECT:**
THERE IS NOT A RECORD OF ANY PAST ABUSE OR NEGLECT.

**CHILD FACTORS:**
YOKAMON IS AN ARTICULATE SIXTEEN YEAR OLD.  HE HAS BEEN IN SOME TROUBLE WITH THE LAW.  HE DOES NOT APPEAR TO REQUIRE ANY SPECIAL  NEEDS.

**PARENT FACTORS:**
MS. HEARN IS ADDICTED  TO CRACK AND ALCOHOL.  SHE ABANDONED HER CHILD. DUE TO HER ARREST AND HOSPITALIZATION.    SHE IS VIOLENT WHEN INTOXICATED.

**OTHER PERTINENT INFORMATION:**

**INFORMATION GIVEN TO FAMILY AND REFERRALS MADE:**
I  NOTIFIED THE FAMILY  OF THE COURT TIME AND THE REMOVAL.    I ASKED  THE FAMILY  TO  LET MS. HEARN KNOW OF THE REMOVAL AND LEFT  A NUMBER FOR HER TO CONTACT ME AT.      I NOTIFIED MS. BELL OF THE FOURTEEN DAY HEARING AND ASKED HER IF SHE WOULD BE INTERESTED IN ATTAINING CUSTODY OF YOKAMON.  I ARRANGED FOR A HOME STUDY WITH HER.   MS. HEARN WAS NOTIFIED OF  THE REMOVAL AND GIVEN  WRITTEN  NOTICE OF  FINDINGS AND REMOVAL. SHE WAS INFORMED THAT SHE COULD VISIT WITH YOKAMON ON SATURDAY AND SUNDAY  BUT COULD NOT TAKE HIM HOME  BECAUSE SHE CANNOT PROVIDE ADEQUATE SHELTER.

CONFIDENTIAL
DO NOT ... WITHOUT
AUTH... TEXAS
DEP...

Texas Department of
Protective and Regulatory Services

**INVESTIGATION ACTIONS AND CONTACTS**

Form 2602-A
June, 1994
Page 7 of 7

Case Name
HEARN , SUSAN

**COURT AND PLACEMENT ACTIVITIES:**

TEMPORARY  MANAGING CONSERVATORSHIP  OF YOKAMON  WAS GRANTED  TO CPS ON 4/25/95.

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHO...   ...FROM TEXAS
DEP...   ...

ADDENDUM

MAY 2, 1995 RUBY LINCOLN , THE PATERNAL GRANDMOTHER CALLED AND STATED
THAT SHE WOULD LIKE TO CARE FOR YOKAMON AT HER HOUSE.   ON 5/4/95 I SPOKE WITH
YOKAMON AND ASKED HIM HOW HE FELT ABOUT STAYING WITH HIS GRANDMOTHER,
RUBY LINCOLN IN DALLAS. HE REPLIED THAT HE WANTED TO GO AND STAY WITH HER.
HE THEN WANTED TO KNOW WHEN SHE WOULD BE PICKING HIM UP. HE SEEMED VERY
HAPPY ABOUT GOING TO HER HOUSE AND ANXIOUS  TO  LEAVE THE SHELTER.   A HOME
STUDY WAS COMPLETED ON MAY 3, 1995 AND A RECOMMENDATION FOR YOKAMON  TO
BE PLACED WITH THE GRANDMOTHER WAS PRESENTED TO THE COURT ON MAY 4, 1995.
THE JUDGE  GRANTED MS. LINCOLN  EXTENDED VISITATION   RIGHTS  WITH YOKAMON.
A NEW COURT DATE WILL BE SET AND  WE WILL TRY TO LOCATE MS. HEARN.   MS.
HEARN CALLED ON 5/8/95 , LEFT A MESSAGE , ASKING THE WORKER TO CALL HER  BUT
SHE DID  NOT  LEAVE  ANY  INFORMATION ON WHERE TO CONTACT HER.
ON 5/6/95 RUBY LINCOLN PICKED YOKAMON UP FROM THE BRIDGE SHELTER AND TOOK
HIM TO HER HOUSE IN DALLAS.

5/10/95   MS. LINCOLN CALLED TO INFORM ME  THAT  YOKAMON  WAS OUT OF CONTROL,.
AND WANTS TO LIVE WITH HIS AUNT WANDA BELL.    SHE WANTED TO KNOW IF HE
COULD GO AND STAY WITH WANDA  BELL FOR A FEW DAYS.    I EXPLAINED THAT SHE
COULD ALLOW HIM TO STAY WITH WANDA BUT SHE WOULD STILL BE  RESPONSIBLE
FOR  YOKAMON.   I ALSO INFORMED MS. LINCOLN THAT HER CASE WAS ASSIGNED TO
AN ONGOING CASE WORKER, TRECIA DEBAUN.

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
PROTECTIVE

Texas Dept. of Protective
and Regulatory Services

**ASSESSMENT OF RISK**
**Staged Investigation Format**

Form 2603
October 1994

| Case Name | Hearn, |
|---|---|

Purpose
☒ Investigation   ☐ Removal   ☐ Other (specify):

**NATURE AND EXTENT OF THE ABUSE OR NEGLECT (Investigations Only)**–For each type of abuse and neglect that appears to have occurred, enter the number that corresponds to the extent found. For each type of abuse and neglect that was investigated but not found, enter either 1 or 0. *Note:* Skip all types of abuse and neglect that were not investigated.

———— APPEARS TO HAVE OCCURRED ————
4=Severe     3=Serious     2=Moderate

———— INVESTIGATED BUT NOT FOUND ————
1=Cannot be Determined     0=Did Not Occur

| Emotional Abuse | Physical Abuse | Sexual Abuse | Abandonment | Neglectful Supervision | Medical Neglect | Physical Neglect | Refusal to Assume Parental Responsibility |
|---|---|---|---|---|---|---|---|
|  |  |  | 3 |  |  |  |  |

**RISK FACTORS**–The following questions are intended to identify possible "risk factors"–elements of family functioning that may place a child at risk of abuse or neglect. Base your response to each question on the presence or absence of indications that the factor applies.

**PAST ABUSE, NEGLECT, AND RISK**–Respond to each item by checking YES, NO, or UNK (unknown).

| | YES | NO | UNK |
|---|---|---|---|
| Is there a previous CANRIS report on any family member with a disposition of reason-to-believe, adjudicated, unable-to-determine, or moved? | | X | |
| Is there a previous CANRIS report on any family member with a risk assessment finding of 2, 3, or 4? | | X | |
| Are there any other indications that a child from this family has been abused or neglected in the past? | | X | |
| Does the physical condition of the home pose a danger to any child's health or safety? | | X | |
| Has any caretaker in this home ever had a child who was abused or neglected, or who died of unexplained or suspicious causes?   If yes, which caretaker(s)? | | X | |
| Other (specify): | | | |

**CURRENT RISK: The Children**–In the blanks on the right, enter the child(ren)'s name(s) and age(s). Then respond to each item below by checking YES, NO, or UNK.

| | | Child's Name Yokamn | | | Child's Name | | | Child's Name | | | Child's Name | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Age 16 | | | Age | | | Age | | | Age | | |
| | | YES | NO | UNK | YES | NO | UNK | YES | NO | UNK | YES | NO | UNK |
| Psychological or Behavior Problems: | Does this child display hostile or aggressive behavior? | | X | | | | | | | | | | |
| | Does this child display disturbed or unusual behavior? | | X | | | | | | | | | | |
| | Does this child sexually act out? | | X | | | | | | | | | | |
| | Other (specify): | | | | | | | | | | | | |
| Has this child been diagnosed as mentally retarded? | | | X | | | | | | | | | | |
| Does either parent find this child's behavior provoking? | | | X | | | | | | | | | | |
| Does this child have any physical impairments (*examples:* a developmental delay, a chronic physical illness, a physical disability)? | | | X | | | | | | | | | | |
| Has this child ever been placed outside the home? | | | X | | WITHOUT | | | | | | | | |
| Other (specify): | | | | | | | | | | | | | |
| Other (specify): | | | | | | | | | | | | | |

Case Name **Hearn, Susan**

Form 2603
Page 2

**CURRENT RISK: Parents and Caretakers**–In the blanks on the right, enter the names of all parents and caretakers. Then respond to each item below by checking YES, NO, or UNK (unknown).

| | Name Susan | | | Name | | | Name | | | Name | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | YES | NO | UNK | YES | NO | UNK | YES | NO | UNK | YES | NO | UNK |
| Was this person abused or neglected as a child? | | | X | | | | | | | | | |
| Has this person recently experienced significant stress? | | | X | | | | | | | | | |
| Is this person unable to cope with stress? | | | X | | | | | | | | | |
| Does this person exhibit a significant lack of parenting skills? | | | X | | | | | | | | | |
| Does this person have unrealistic expectations of any child? | | | X | | | | | | | | | |
| Is this person socially isolated? | | | X | | | | | | | | | |
| Does this person refuse to cooperate with essential aspects of the investigation or case plan? | | | X | | | | | | | | | |
| Does this person refuse to disclose important information? | | | X | | | | | | | | | |
| Has this person ever been a perpetrator of spouse or partner abuse? | | | X | | | | | | | | | |
| Has this person ever been a victim of spouse or partner abuse? | | | X | | | | | | | | | |
| Does this person have a history of drug or alcohol abuse? | X | | | | | | | | | | | |

*CASES WITH NO INDICATIONS OF ABUSE OR NEGLECT AND NO SIGNIFICANT INDICATIONS OF RISK*–Answer each question below:

1. **Nature and Extent of the Abuse or Neglect:** Did you enter a rating of 1 or higher for any type of abuse or neglect? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No

2. **Past Abuse, Neglect, and Risk:** Did you check YES or UNK for any question? . . . . . . . . □ Yes  ☒ No

3. **Current Risk:** Did you find any significant indications of risk? . . . . . . . . . . . . . . . . . . □ Yes  ☒ No

If the answers to all three questions are NO, you may close the case by completing the section, *Risk Assessment Finding, Conclusion, and Case Action*, on page 4. If the answer to ANY of the three questions is YES, complete the rest of this form.

**CURRENT RISK (continued)**

| | YES | NO | UNK | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Has this person ever been convicted of a criminal offense? | | X | | | | | | | | | | |
| Does this person have a significant history of depression? | | X | | | | | | | | | | |
| If so, has this person ever attempted suicide? | | X | | | | | | | | | | |
| Has this person recently divorced or separated from his or her spouse or partner? | | X | | | | | | | | | | |
| Are this person's social relationships primarily negative? | | X | | | | | | | | | | |
| Are this person's relationships with extended family members unsupportive or conflictive? | X | | | | | | | | | | | |
| Does this person take the apparent abuse or neglect less seriously than CPS does? | | X | | | | | | | | | | |
| Is this person unaware of, or does he or she deny, the factors placing the child(ren) at risk? | | X | | | | | | | | | | |
| Is this person unmotivated or unrealistic about change? | | X | | | | | | | | | | |
| Other (specify): | | | | | | | | | | | | |

CONFIDENTIAL
DO NOT RELEASE WITHOUT AUTHORIZATION FROM TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES

Does the alleged perpetrator currently have access to any child in the family? . . . . .  . . .  □ Yes  ☒ No  □ Unknown

Case Name

Hearn, Susan

Form 2603
Page 3

**INDIVIDUAL AND FAMILY STRENGTHS AND RESOURCES:** Ms Hearn was residing at the Presbyterian Shelter with her sixteen year old son. She has family in close proximity but none of the family is willing to help her anymore. She has abandoned her son and her whereabouts are unknown.

**ANALYSIS**

1. Discuss the significant risk factors and how they affect the safety of the child(ren). Be sure to include the nature and extent of the abuse or neglect.

2. Assess the family's ability to use its strengths and resources to manage the risk factors.

Ms Hearn has a history of drug and alcohol abuse. She is using crack. She was arrested for public intoxication and failed to contact her son after her release. She has not been located at the present time. Yokamon appears to be friendly and well adjusted to the shelter. He does not like his mother and he wants to live with his Aunt. His Aunt will not take him because of his mothers drug use and violent behavior. The family is tired of taking care of Mrs Hearns child. Yokamon has been in

Case Name     Hearn

Form 2603
Page 4

**ANALYSIS (continued)**

Trouble with the police twice
for stealing.

**RISK-ASSESSMENT FINDING, CONCLUSION, AND CASE ACTION**—Check only one of the three possible findings, then check the appropriate case action and other related boxes, as applicable.

| NO RISK INDICATED: Based on the finding checked below, CPS concludes that, for the foreseeable future, there is not a reasonable likelihood of child abuse or neglect as defined in the Texas Family Code, §34.012. | RISK INDICATED: Based on the finding checked below, CPS concludes that, in the foreseeable future, there is a reasonable likelihood of child abuse or neglect as defined in the Texas Family Code, §34.012. |
|---|---|

☐ 1. **Finding–No Significant Factors.** The disposition of the investigation is ruled out; there is no abuse or neglect; and no significant risk factors were identified.

Case Action: ☐ CLOSE CASE.

☐ 2. **Finding–Risk Controlled.** Significant risk factors were identified; but family strengths and available resources are sufficient to provide for the child(ren)'s safety in the foreseeable future.

Case Action: ☐ CLOSE CASE.

☒ 3. **Finding–Risk Present.** Risk factors were identified, and there are NOT sufficient family strengths and available resources to provide for the child(ren)'s safety for the foreseeable future.

Case Action:

☐ Family Preservation ) Is a safety plan needed to control risk in the home? ) ☐No ☐Yes*
*If yes, complete Form 2604-A&B.

☒ Removal ) Complete Form 2604-A.

☐ CLOSE CASE ) ☐ Family moved after the investigation.
(check one):
☐ Family refused services, and intervention is not legally possible.

Note: If risk is indicated and the case is being closed, document the efforts made to locate the family, or to involve the family in services or legally intervene.

**Was a safety plan completed during the investigation?** ) ☐Yes ☐No

*Reminder:* If a contracted service was provided during the investigation, document the need for it in the case narrative or on Form 2604-B.

Comments: ...........................................................

CONFIDENTIAL
DO NOT RELEASE WITHOUT

Date the results of the investigation and assessment were explained to:

| Parents/Alleged Perpetrators | Victims | Reporter | Absent Parents |
|---|---|---|---|
| whereabouts unknown | 4-25-95 | 4-25-95 | deceased |

Lanetta Haven   4-26-95     Signature–Supervisor     5-15-95
Signature–Caseworker   Date                              Date

Texas Dept. of Protective
and Regulatory Services

**CHILD SAFETY EVALUATION AND PLAN**
Evaluation of Immediate and Short-Term Child Safety

Form 2604-A
September 1992

Family Name
Hearn, Susan

**THE SOURCES OF CONCERN**–Check each box that represents a clear threat to the immediate or short-term safety of the child(ren).

☐ A parent's or a child's psychological, emotional, or behavioral problems.

☑ A parent's or a child's substance abuse.

☐ A parent's or a child's impaired physical condition.

☐ A parent's perception that a child is a burden, or a parent's experience of life and parenting as an overwhelming stress.

☑ A parent's lack of social support.

☑ A parent's lack of parenting skills.

☑ A lack of money, or a parent's inability to manage money well enough to meet the child(ren)'s basic needs.

☐ A crisis which results in disorganization and emotional upheaval.

☐ Other ....................................................................................................................

....................................................................................................................

**AVAILABLE RESPONSES**–For each condition identified above, consider the resources available in the family and the community that might help to keep the child safe and prevent CPS removal. Check each response needed to protect the child.

☐ Use family resources, neighbors, or other individuals in the community as safety resources.

☐ Use community agencies or services as safety resources.

☐ Petition the court to order the parents to participate in the plan for immediate and short-term safety.

☐ Have the maltreating parent leave the home, either voluntarily or in response to legal action.

☐ Have the nonmaltreating parent move to a safe environment with the child.

☐ Have the parent(s) place the child outside the home.

Are these actions sufficient, and can they be done soon enough, to protect the child(ren)? ...................... ☐ Yes  ☐ No

Is the family willing and able to participate in these actions at a level sufficient to protect the child(ren)? ............... ☐ Yes  ☐ No

Comments: _Removal was conducted on an emergency basis. OV was abandoned & no services could be offered before emergency situation._

....................................................................................................................

If the answer to both of the above questions is YES, skip to the next page. If either answer is NO, check one of the following responses and explain in the Conclusion section on the next page.

☑ Take legal action to place the child(ren) outside the home.

☐ Legal action is not possible or appropriate at this time. (Indicate case action in the Conclusion section on the next page.)

If CPS is initiating legal action and placing the child, describe your discussion with the parent(s) and their expectations of the placement.

_placement will be discussed with parents when one or both is located. Both parents whereabouts are unknown at the present time._

Texas Dept. of Protective
and Regulatory Services

**CHILD SAFETY EVALUATION AND PLAN**
Evaluation of Immediate and Short-Term Child Safety

Form 2604-A
September 1992

Family Name
Hearn, Susan

**THE SOURCES OF CONCERN**–Check each box that represents a clear threat to the immediate or short-term safety of the child(ren).

- [ ] A parent's or a child's psychological, emotional, or behavioral problems.
- [x] A parent's or a child's substance abuse.
- [ ] A parent's or a child's impaired physical condition.
- [ ] A parent's perception that a child is a burden, or a parent's experience of life and parenting as an overwhelming stress.
- [x] A parent's lack of social support.
- [x] A parent's lack of parenting skills.
- [x] A lack of money, or a parent's inability to manage money well enough to meet the child(ren)'s basic needs.
- [ ] A crisis which results in disorganization and emotional upheaval.
- [ ] Other .......................................................................................................

**AVAILABLE RESPONSES**–For each condition identified above, consider the resources available in the family and the community that might help to keep the child safe and prevent CPS removal. Check each response needed to protect the child.

- [ ] Use family resources, neighbors, or other individuals in the community as safety resources.
- [ ] Use community agencies or services as safety resources.
- [ ] Petition the court to order the parents to participate in the plan for immediate and short-term safety.
- [ ] Have the maltreating parent leave the home, either voluntarily or in response to legal action.
- [ ] Have the nonmaltreating parent move to a safe environment with the child.
- [ ] Have the parent(s) place the child outside the home.

Are these actions sufficient, and can they be done soon enough, to protect the child(ren)? .................... [ ] Yes [ ] No

Is the family willing and able to participate in these actions at a level sufficient to protect the child(ren)? .............. [ ] Yes [ ] No

Comments: Removal was conducted on an emergency basis. DV was abandoned and no services could be offered before emergency situation

If the answer to both of the above questions is YES, skip to the next page. If either answer is NO, check one of the following responses and explain in the Conclusion section on the next page.

- [ ] Take legal action to place the child(ren) outside the home.
- [ ] Legal action is not possible or appropriate at this time. (Indicate case action in the Conclusion section on the next page.)

If CPS is initiating legal action and placing the child, describe your discussion with the parent(s) and their expectations of the placement.

Ms Hearn stated that she was unable to provide for Yokamon. She admitted a drug and alcohol problem. She stated she wants Yokamon to be happy and safe
Ms Noonn. would like to work towards Yokamon's

Texas Dept. of Protective
and Regulatory Services

**CHILD SAFETY EVALUATION AND PLAN**
Plan for Immediate and Short-Term Child Safety

Form 2604-B
November 1993

| Family Name |
|---|

**TASKS AND SERVICES**–List all tasks and services needed to provide for the child's immediate and short-term safety.

| Family Task | CPS/Other Service |
|---|---|
| *Placement precluded Services* | |
| Beginning and Ending Dates (and/or Frequency) | Beginning and Ending Dates (and/or Frequency) |
| Method of Evaluation | |

| Family Task | CPS/Other Service |
|---|---|
| | |
| Beginning and Ending Dates (and/or Frequency) | Beginning and Ending Dates (and/or Frequency) |
| Method of Evaluation | |

**CONCLUSION**–Identify plans for further services. When appropriate, describe the possible consequences if the family does not carry out this plan successfully. If the case is to be closed, explain why.

..........................................................................................................................................................

..........................................................................................................................................................

..........................................................................................................................................................

**SIGNATURES**–By signing this form, the parents are agreeing to perform the tasks specified in this plan, and applying for Title IV-A emergency assistance to help cover the cost of CPS's services. *Note:* To function as an application for Title IV-A emergency assistance, this form must be signed by at least one parent or relative of the child.

The parents may request a review of this plan at any time. They may also request an administrative review or a fair hearing if CPS denies, reduces, or terminates any protective services or emergency assistance that they have requested, or does not act promptly on their request for services.

| Signature–Parent | Date | Signature–Worker | Date |
|---|---|---|---|
| | | *Annette Lewis*  4-21-95 | |
| Signature–Parent | Date | Signature–Supervisor | 4-21-95  Date |

**NOTICE OF FINDINGS**
**CHILD PROTECTIVE SERVICES INVESTIGATION**
AVISO DE SERVICIOS PROTECTORIOS DE NIÑOS (CPS)
SOBRE LAS CONCLUSIONES DE SU INVESTIGACION

Case Name
_H-rn, Susan_

TO/A: _Susan Hearn_

The Texas Department of Human Services has found that there is reason to believe that you are responsible for the

_Physical Supervision_ of _Solomon Hearn_

(See definition on back of this letter/Vea la definición al otro lado de esta hoja.)

El Departamento de Servicios Humanos de Texas (DHS) encontró que hay razón para creer que usted es responsable de

child(ren).
niños.

This decision was made in an investigation which began

Esta decisión es el resultado de una investigación que comenzó

_4-24-95_

AS A RESULT OF THE INFORMATION GATHERED DURING THE INVESTIGATION:

DEBIDO A LA INFORMACION REUNIDA DURANTE LA INVESTIGACION:

[ ] We plan to take no further action about you unless we receive another report.

No pensamos tomar ninguna acción adicional con respecto a usted a menos que se reciba otro reporte.

[X] We plan to offer services to the family to remedy the problems resulting in the abuse/neglect that was found in the investigation. I or

_Caseworker_

will contact the family by

_30 days_

to begin planning for these services.

Pensamos ofrecer servicios a la familia para resolver los problemas que resultaron en el maltrato/descuido que se descubrió durante la investigación.

o yo nos comunicaremos con la familia para

para comenzar a planear estos servicios.

You have the right to request an administrative review of the investigation findings.

Prior to requesting the review, you must discuss your concerns with the caseworker and supervisor. You may obtain from DHS a form letter to request the review. You must request the review in writing and within 15 calendar days after you receive this notice. The review will be postponed if court proceedings relating to the investigation are pending.

Other rights are explained on the back of this letter.

You may contact me during regular work hours if you want to discuss this letter. Thank you for your cooperation during the investigation.

Office Address and Telephone No./Oficina y Teléfono

Tiene derecho a pedir una revisión administrativa de las conclusiones de la investigación.

Antes de pedir la revisión, tiene que discutir sus desacuerdos con el trabajador y su supervisor. Puede obtener de DHS una forma para pedir la revisión. Tiene que pedir la revisión por escrito y dentro de los 15 días de la fecha que reciba este aviso. La revisión será postergada si quedan pendientes procedimientos judiciales relacionados con la investigación.

Otros derechos se explican al otro lado de esta hoja.

Si quiere hablar de este aviso, puede comunicarse conmigo durante las horas regulares de trabajo. Le agradecemos su colaboración durante la investigación.

DO NOT RELEASE WITH[...]
[...]MENT OF PROTECTIVE[...]
TEXAS

Name of Investigating Caseworker/
Nombre del Trabajador Investigador

_Suzette Ramos_

Date/Fecha

_4-26-95_

Form 2233/10-88

## HOME STUDY OF WANDA BELL
### 5166 BURNSIDE ST. DALLAS, TEXAS 75241  214-374- 1301

### I. IDENTIFYING DATA:

Wanda  Mae Bell
D.O.B. ████
SS# ████

### II. PURPOSE AND MOTIVATION:

The purpose of this Home Study is to determine whether or not Ms. Bell is an appropriate placement for her nephew, Yokamon Hearn, who was removed from the Presbyterian Night Shelter on April 24, 1995 due to his mother's arrest resulting in the Neglectful Supervision of Yokamon. Yokamon  is currently in the care of his paternal grandmother.  With the approval of this home study, the child may be moved into a permanent placement with his maternal aunt, which the Department believes is in the best interest of the child.

### III. BACKGROUND INFORMATION:

Ms. Bell  is a  5'4,  250 pound black women with black hair and brown eyes and a medium complexion.

Ms. Bell was born on ████ in Dallas, Texas. Both of her parents are deceased. Ms. Bell is 38 years old and her health is good .  She has never suffered from a serious illness and is not on any medication.   Ms. Bell is  currently separated from  her husband  Marshall  Bell.  Ms. Bell received her G.E.D. in 1978 and has completed a job training program in Dallas.  She received an accounting certification in 1994.  In the past Ms. Bell has Been Employed by Haggar Apparel and Lincoln Funeral Services.  Ms. Bell is an active member at her church Precept Missionary Baptists Church.

Ms. Bell has  three sisters , Pearly Mike, Diane Susan Hearn and Oweta McCreary.   Ms. Mike resides in Fort Worth .  Ms Bell and her exchange letters and visit once or twice a year.  Ms. McCreary resides in Dallas and  has a close relationship with Ms. Bell and Yokamon.

Ms. Bell describes her relationship with her parents as a  typical 60's family.  She was raised by both of her parents .  she was spanked as a child but  she was never abused or neglected. she was extremely close to her mother and took care of her before her death.   Ms. Bell had a happy childhood and  a very good relationship with her parents.

Ms. Bell has three children, two boys and one girl.  La min Bell was born ████ she attends tenth grade at Macio High School. She enjoys school choir, volleyball and fashion.  Assyrian Bell was born ████ He attends sixth grade at R.L. Thorton.  He likes to play basketball and clean the house.   Darius Bell was born on ████  He also attends sixth grade at R.L. Thorton.  His interest include basketball and nintendo.

### IV. FINANCIAL INFORMATION:

Ms. Bell is not currently employed. She receives  $ 226.00 a month in  AFDC allotment. Her house is paid for and she also receives a food stamp allowance of $380.00.  Her expenses are minimal,  utilities and car maintenance.  She feels confident  that she can provide for Yokamon.

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTH... FROM TEXAS
...
AN...

## V.  HOME AND NEIGHBORHOOD:

Ms. Bell lives in a three bedroom house in South Oakcliff in Dallas, Texas.  Yokamon will share a bedroom with one of her sons. The house is well kept and furnished adequately.

## VI.  OTHERS IN THE HOME:

Ms. Bell and her three children are the only people residing in the home.

## VII.  FAMILY INTEREST AND COMMUNITY INVOLVEMENT:

Ms. Bell is an active member in her church.  Her children are involved in school activities, such as  sports and choir.  Ms. Bell is involved in her children's education.

## VIII.  EXPECTATIONS OF PLACEMENT:

Ms. Bell is aware this placement is permanent.  She wants Yokamon to complete his education.  She also wants to provide a safe and stable home environment for Yokamon.  She and Yokamon have always had a close relationship and she feels capable of raising and caring for him.

It was explained to Ms. Bell that the Department expects her to provide basic food, clothing, shelter, love, security, and other basic necessities for Yokamon.  Ms. Bell is certain that she has the ability to provide for and deal with Yokamon.

## IX.  ATTITUDE TOWARD CHILD'S PARENTS:

Ms. Bell expresses no negative hostility toward Yokamon's mother.  Ms. Bell feels very strongly that Yokamon has the right to visit and talk to his mother.  Ms. Bell would like for Ms. Hearn to receive help for her drug and alcohol addiction  and then resume her parental responsibilities.

## X.  CHILDREN'S SPECIAL NEEDS:

Yokamon does not appear to have any special needs.

## XI.  ATTITUDE TOWARD AGENCY:

Ms. Bell has been very cooperative with the Department.  She was not negative or hostile toward the agency.  She is grateful that the Department is considering her for a placement for Yokamon.

## XI:  REFERENCES:

Andrew Lane

███████████

214-224-7341

Mr. Lane has known Ms. Bell for eleven years. He is Ms. Bell's pastor at church. He describes Ms. Bell as a very helpful and happy person.  He feels confident in Ms. Bell's capabilities to raise Yokamon. He stated that Ms. Bell has helped raise Yokamon since his birth and that he is already a part of the family. He feels that Ms. Bell would be an excellent selection for a placement.

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES



Lula Mae Daniels

214-225-1411

Ms. Lane is Ms. Bell's cousin.  They have had a very relationship all of their lives.   Ms. Lane stated that
Ms. Bell had basically raised Yokamon from birth.  She feels that Ms. Bell will take wonderful care of him
and give him the love he needs.  Ms. Lane helps Ms. Bell with her family close and is intending to help
with Yokamon also.  She stated that Yokamon is a good child, he just needs a good environment and Ms.
Bell can provide that for him.

## XIII. EVALUATION AND RECOMMENDATIONS:

Based on the information obtained and after visiting with Ms. Bell, I believe that Ms. Bell is willing and
capable to provide a safe, secure and healthy environment for Yokamon

CPSS INVESTIGATOR, LANETTE GARCIA
6743 CAMP BOWIE, FT. WORTH, TX 76116 735-9381, EXT2062.

DATE

UNIT 98 SUPERVISOR,  JENNIFER CRUZ

6-22-95
DATE

DO NOT ... ... ... WITHOUT
AU... ... ... ...OM TEXAS
... ... ... PROTECTIVE
AND REG... ...ORY SERVICES

Texas Department of
Protective and Regulatory Services

**FAMILY SERVICE PLAN**
**Cover Sheet I: Substitute Care**

Form 2622-A1
September 1994
Page 1

:ASE PLAN - PART ONE

| Case Name |
|---|
| Susan Hearn |

**IDENTIFYING INFORMATION**

| Name(s) of Parents | | |
|---|---|---|
| Susan Hearn | **Date of Participation** 05/25/95 | **Date Plan Completed** 06/02/95 |
| **Child(ren)'s Name(s)** Yokaman Hearn | | **Month/Year of Next Review** 12/95 |

**PURPOSE OF THIS PLAN**

To the Parent: This is a very important document. Its purpose is to help you provide your child with a safe environment within the reasonable period specified in the plan. If you are unwilling or unable to provide your child with a safe environment, your parental and custodial duties and rights may be restricted or terminated or your child may not be returned to you. There will be a court hearing at which a Judge will review this service plan.

**LONG-RANGE GOAL FOR PERMANENCY**

| ☐ Return to Parents | ☒ Place with Relatives | ☐ Adoption | ☐ Alternative Long-Term Care | ☐ Adult Living | Target Date for Achieving Permanency ➡ |
|---|---|---|---|---|---|

If any of the children have different permanency plans, explain:

**EVALUATION OF PROGRESS** - CPS will evaluate your progress with you on the basis of
- your successful achievement of the goals stated in this plan;
- your successful completion of the tasks in this plan; and
- your ability to provide for the ongoing safety and well-being of your child(ren).

Information for this evaluation may come from any of the following sources:
- you and members of your family;
- CPS staff who have worked with you;
- the initial report or future reports of child abuse or neglect; and
- other agencies, individuals, and community professionals.

**Parents' Comments:**

| **Contact Person-** For information about your children, please contact �),| **Name of Contact Person** Trecia DeBaun | **Telephone** 735-9381 ext. 2055 |
|---|---|---|

_____     _____     _Trecia DeBaun_     _6-6-95_
Signature - Parent                    Date            Signature - Worker            Date

_____     _____     _Jennifer Cru_     _6-6-95_
Signature - Parent                    Date            Signature - Supervisor            Date

If the parents did not participate in developing this plan, explain:

Date CPS gave or mailed a copy of this plan to the parents: _Mailed to Ms. Hearn on 9-18-95 after learning her whereabouts on a 9-6-95 phone conversation._

**YOUR RIGHT TO REQUEST A REVIEW** - You may request a review of this plan at any time. You may also request an dministrative review or a fair hearing if CPS denies, reduces, or terminates protective services that you have requested, or does not act promptly on your request for protective services.

DO NOT RELEASE WITHOUT AUTHORIZATION FROM TEXAS DEPARTMENT OF PROTECTIVE SERVICES

Texas Department of
Protective and Regulatory Services

**FAMILY SERVICE PLAN**
Family Problems, Strengths, and Changes Needed

Form 2622-B
September 1994
Page 2

:ASE PLAN - PART ONE

| Family Name | Date Completed |
|---|---|
| Susan Hearn | 06/02/95 |

## LIST THE REASONS FOR CPS INVOLVEMENT:

Ms. Hearn has been unable to provide for her son for the past 15 months due to alleged drug and alcohol addiction.

## LIST THE UNDERLYING PROBLEMS CONTRIBUTING TO THE RISK OF ABUSE OR NEGLECT:

Ms. Hearn has left her son with relatives and friends to provide for him. Ms. Hearn then returns for her son, disrupting his placement causing conflict within extended family.

## LIST THE FAMILY STRENGTHS AND RESOURCES:

Ms. Hearn raised her son for 13 years in a somewhat stable environment. Ms. Hearn also has an extended history of maintaining employment and home.

**SERVICE-PLAN GOALS:** CHANGES NEEDED TO REDUCE RISK - What specific behavior(s) and condition(s) will demonstrate that the problems contributing to risk have been satisfactorily addressed and that the risk has been reduced?
Ms. Hearn will need to participate in an alcohol and drug screening, follow through and complete recommended treatment. Ms. Hearn will need to locate and maintain a stable living environment sufficient to meet Yokaman's and her needs. Ms. Hearn will need to seek, obtain and maintain employment with sufficient income to provide for herself and Yokaman.

... ... ... ... ITHOUT
AU... ... ... ... ... TEXAS
DEFA... ... ... ... ... FECTIVE
AND ... ... ... ... ... :RVICES

Texas Department of
Protective and Regulatory Services

**FAMILY SERVICE PLAN**
**Tasks and Services for the Family**

Form 2622-C
September 1994
Page 3

:ASE PLAN - PART ONE

| Family Name | Date Completed |
|---|---|
| Susan Hearn | 6/2/95 |

| Family Task (Note: Asterisk tasks that are court-ordered.) | CPS/Other Service (Note: Asterisk services that are court-ordered.) |
|---|---|
| Ms. Hearn will participate in an alcohol and drug screening. She will also participate and complete any recommended treatment. | Assist with necessary referrals to rehabilitive facilities. |
| **Beginning and Ending Dates (and/or Frequency)** 06/95 to 12/95 | **Beginning and Ending Dates (and/or Frequency)** 06/95 to 12/95 |
| **Method of Evaluation** Monthly reports from facility and certification of completion. | |

| Family Task (Note: Asterisk tasks that are court-ordered.) | CPS/Other Service (Note: Asterisk services that are court-ordered.) |
|---|---|
| Ms. Hearn will locate and maintain a stable living environment sufficient to meet Yokamon's and her needs. | Assist with referral to housing or other agencies upon request. |
| **Beginning and Ending Dates (and/or Frequency)** 06/95 to 12/95 | **Beginning and Ending Dates (and/or Frequency)** 06/95 to 12/95 |
| **Method of Evaluation** Home visits | |

DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES

Texas Department of
Protective and Regulatory Services

**FAMILY SERVICE PLAN**
**Tasks and Services for the Family**

Form 2622-C
September 1994
Page 4

`ASE PLAN - PART ONE

| Family Name | Date Completed |
|---|---|
| Susan Hearn | 6/2/95 |

| Family Task (Note: Asterisk tasks that are court-ordered.) | CPS/Other Service (Note: Asterisk services that are court-ordered.) |
|---|---|
| Ms. Hearn will keek, obtain, and Maintain employment with sufficient income to provide for Yokaman and herself. | None |
| **Beginning and Ending Dates (and/or Frequency)** 06/95 to 12/95 | **Beginning and Ending Dates (and/or Frequency)** 06/95 to 12/95 |
| **Method of Evaluation** Income stubbs | |

| Family Task (Note: Asterisk tasks that are court-ordered.) | CPS/Other Service (Note: Asterisk services that are court-ordered.) |
|---|---|
| **Beginning and Ending Dates (and/or Frequency)** to | **Beginning and Ending Dates (and/or Frequency)** to |
| **Method of Evaluation** | |

| Family Task (Note: Asterisk tasks that are court-ordered.) | CPS/Other Service (Note: Asterisk services that are court-ordered.) |
|---|---|
| **Beginning and Ending Dates (and/or Frequency)** to | **Beginning and Ending Dates (and/or Frequency)** to |
| **Method of Evaluation** | |

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND REGULATORY SERVICES

Texas Department of
Protective and Regulatory Services

Family Service Plan
PARENT-CHILD CONTACT AND FINANCIAL SUPPORT

Form 2623
September 1994

## CASE PLAN - PART ONE

| Name(s) of Parent(s) |
|---|
| Susan Hearn |

| Name(s) of child(ren) |
|---|
| Yokaman Hearn |

While your children are away from home, you are expected to have contact with them according to the plan outlined below.

## VISITS

| Frequency | Day and Time |
|---|---|
| Upon request by parent | |

| Location |
|---|
| |

## TELEPHONE CALLS

| Parent to Child | Day and Time | Child to Parent | Day and Time |
|---|---|---|---|
| ☒ Yes ☐ No ➜ | As requested through relatives | ☐ Yes ☒ No ➜ | |

## LETTERS

| Parent to Child | Through Caseworker | Child to Parent | Through Caseworker |
|---|---|---|---|
| ☒ Yes ☐ No ➜ | ☒ Yes ☐ No | ☒ Yes ☐ No ➜ | ☒ Yes ☐ No |

Stipulations (Specify all court-ordered stipulations and any additional CPS restrictions, including supervision requirements.)

## FINANCIAL SUPPORT

While your children are away from home, you must provide the financial support specified below (check and complete all that apply):

| | | | |
|---|---|---|---|
| ☐ Child Support: | _____ per _____ | Court-Ordered? ☐ Yes ☐ No |
| ☐ Allowance: | _____ per _____ | Court-Ordered? ☐ Yes ☐ No |
| ☐ Medical Insurance | _____ | Court-Ordered? ☐ Yes ☐ No |
| ☐ Clothing (specify): | _____ | Court-Ordered? ☐ Yes ☐ No |
| ☐ Other (specify): | _____ | Court-Ordered? ☐ Yes ☐ No |

| Signature - Parent | Date | Signature - Worker | Date |
|---|---|---|---|

The pamphlet, "While Your Child is in Care," outlines other rights and responsibilities of parents whose children are in foster care.

| Signature - Parent | Date |
|---|---|

CONFIDENTIAL
DO NOT RELEASE WITHOUT
AUTHORIZATION FROM TEXAS
DEPARTMENT OF PROTECTIVE
AND ... SERVICES

# EXHIBIT 11



**Texas Department of Criminal Justice**

**Brad Livingston**
**Executive Director**

March 10, 2005

Naomi E. Terr
Attorney at Law
P.O. Box 421398
Houston, Tx   77242


**RE: Massingill, Tony Lee**                    **TDCJ# 243999 & #284635**


Ms. Terr:

Our review indicates there are approximately 18 pages of documents within your central file.

The billing rate for documents is .10 cents for each page. If you require certified documents, the rate is $2.20 per page. There are additional expenses relating to a personnel charge of $15.00 per hour, an overhead charge which is 20% of the personnel charge, and the expense relating to registered mail delivery of the documents requested, which is dependent on the weight. Please note the personnel charge and overhead charge are applicable when the documents are more than 50 pages.

Current review indicates the estimated cost of providing the documents you have requested is $1.80 for uncertified documents, personnel charges, plus $.63 for postage. Please forward a check/money order in the amount of $2.43 for uncertified documents to the office of Classification and Records, Attn: Thomas Warren, P.O. Box 99, Huntsville, Texas 77342-0099.


Sincerely,

THOMAS WARREN
Open Records Coordinator
(936) 437-8696
(936) 437-6227 FAX

TW/sc
cc: file

62/401

**JUDGMENT AND SENTENCE – PLEA OF GUILTY OR NOLO CONTENDERE – JURY WAIVED – NON-CAPITAL**

MINUTES OF THE ___Criminal___ DISTRICT COURT No. 3 OF DALLAS COUNTY, TEXAS

THE STATE OF TEXAS              No. C74-6616-ILJ  ___July___ Term, A.D. 19 74

VS.                                                    ___September 30___ A.D. 19 74

TONY LEE MASSINGILL

### JUDGMENT

The defendant having been indicted in the above entitled and numbered cause for the felony offense of _____
~~are~~ of a Child younger than 17 years, a Second-Degree Felony, as _____ and this cause being this day called for trial, the State
~~charged in the Indictment~~

appeared by her assistant Criminal District Attorney ___Gary Noble___ and the Defendant ___Tony Lee Massingill___

appeared in person and his counsel ___W.E. Walton___ also being present and both parties announced ready for
trial, and the Defendant in person and in writing in open Court having waived his right of trial by jury, such waiver being with the consent and
approval of the Court and now entered of record on the minutes of the Court and such waiver being with the consent and approval of the
Criminal District Attorney of Dallas County, Texas, in writing, signed by him, and filed in the papers of this cause before the Defendant

entered his plea herein, the defendant was duly arraigned and in open Court pleaded ___guilty___ to the
charge contained in the indictment; thereupon the defendant was admonished by the Court of the consequences of the said plea and the
defendant persisted in entering said plea, and it plainly appearing to the Court that the defendant is mentally competent and that he is
uninfluenced in making said plea by any consideration of fear, or by any persuasion, or delusive hope of pardon prompting him to confess his
guilt, the said plea was accepted by the Court and is now entered of record as the plea herein of the Defendant. The defendant in open Court, in
writing, having waived the reading of the indictment, the appearance, confrontation, and cross-examination of witnesses, and agreed that the
evidence may be stipulated and consented to the introduction of testimony by affidavits, written statements of witnesses and any other
documentary evidence, and such waiver and consent having been approved by the Court in writing and filed in the papers of the cause; and, the
Court having heard the Defendant's waiver of the reading of the indictment, the defendant's plea thereto, the evidence submitted, and the
argument of counsel, is of the opinion from the evidence submitted that the defendant is guilty as charged.

IT IS THEREFORE CONSIDERED AND ADJUDGED BY THE COURT, that the said Defendant is guilty of the felony offense of
Rape of a Child younger than 17 years, a Second-Degree Felony, as
charged in the Indictment
and that the said Defendant committed said offense on the ___21st___ day of ___June___ 19 74 , and that he be punished

by confinement in the Texas Department of Corrections for ___5 years___ and that the State of Texas do have and recover of the said
defendant all costs in this prosecution expended, for which execution will issue; and that said defendant be remanded to the Sheriff of Dallas
County, Texas, to await the further order of the Court herein.

### SENTENCE

THE STATE OF TEXAS
VS.

_____ No. _____ 19 ___

THIS DAY this cause being again called, the State appeared by her Criminal District Attorney, and the Defendant.

_____ appeared in open Court in person, his counsel _____
also being present, for the purpose of having sentence of the law pronounced in accordance with the judgment herein rendered and entered
against him at a former time, and thereupon the said Defendant was asked by the Court whether he had anything to say why said sentence
should not be pronounced against him, and he answered nothing in bar thereof, and it appearing to the Court that the Defendant is mentally
competent and understanding of the English language, the Court proceeded, in the presence of said Defendant, to pronounce sentence against
him, as follows:

IT IS THE ORDER OF THE COURT, that the said Defendant, who has been adjudged to be guilty of _____

and whose punishment has been assessed by the Court at confinement in the Texas Department of Corrections for

_____ , be delivered by the Sheriff of Dallas County, Texas, immediately to the Director of the Texas Department of
Corrections or other person legally authorized to receive such convicts, and said Defendant shall be confined in said Texas Department of

Corrections for _____
in accordance with the provisions of the law governing the Texas Department of Corrections, and the said Defendant is remanded to jail until
said Sheriff can obey the direction of this sentence.

It is further ADJUDGED and DECREED by this Court that the sentence pronounced herein shall begin this date, and that the Defendant

is granted credit for time served beginning on date of _____

**MINUTES OF THE ___Criminal___ DISTRICT COURT No. 3 OF DALLAS COUNTY, TEXAS**

THE STATE OF TEXAS
VS.

No. _____ _____ Term, A.D. 19____
_____ A.D. 19____

**JUDGMENT**

The defendant havng been indicted in the above entitled and numbered cause for the felony offense of _____

_____ and this cause being this day called for trial, the State

appeared by her assistant Criminal District Attorney_____ and the Defendant _____

appeared in person and his counsel_____ also being present and both parties announced ready for trial, and the Defendant in person and in writing in  pen Court having waived his right of trial by jury, such waiver being with the consent and approval of the Court and now entered of record on the minutes of the Court and such waiver being with the consent and approval of the Criminal District Attorney of Dallas County, Texas, in writing, signed by him, and filed in the papers of this cause before the Defendant

entered his plea herein, the defendant was duly arraigned and in open Court pleaded _____ to the charge contained in the indictment; thereupon the defendant was admonished by the Court of the consequences of the said plea and the defendant persisted in entering said plea, and it plainly appearing to the Court that the defendant is mentally competent and that he is uninfluenced in making said plea by any consideration of fear, or by any persuasion, or delusive hope of pardon prompting him to confess his guilt, the said plea was accepted by the Court and is now entered of record as the plea herein of the Defendant. The defendant in open Court, in writing, having waived the reading of the indictment, the appearance, confrontation, and cross-examination of witnesses, and agreed that the evidence may be stipulated and consented to the introduction of testimony by affidavits, written statements of witnesses and any other documentary evidence, and such waiver and consent having been approved by the Court in writing and filed in the papers of the cause; and, the Court having heard the Defendant's waiver of the reading of the indictment, the defendant's plea thereto, the evidence submitted, and the argument of counsel, is of the opinion from the evidence submitted that the defendant is guilty as charged.

IT IS THEREFORE CONSIDERED AND ADJUDGED BY THE COURT, that the said Defendant is guilty of the felony offense of

and that the said Defendant committed said offense on the_____day of_____, 19____, and that he be punished

by confinement in the Texas Department of Corrections for _____, and that the State of Texas do have and recover of the said defendant all costs in this prosecution expended, for which execution will issue; and that said defendant be remanded to the Sheriff of Dallas County, Texas, to await the further order of the Court herein.

**SENTENCE**

THE STATE OF TEXAS
VS.

___TONY LEE MASSINGILL___ No. C74-6616-ILJ ___October 30___ 19_74_

THIS DAY this cause being again called, the State appeared by her Criminal District Attorney, and the Defendant,

___Tony Lee Massingill___ appeared in open Court in person, his counsel ___W.E. Walton___ also being present, for the purpose of having sentence of the law pronounced in accordance with the judgment herein rendered and entered against him at a former time, and thereupon the said Defendant was asked by the Court whether he had anything to say why said sentence should not be pronounced against him, and he answered nothing in bar thereof, and it appearing to the Court that the Defendant is mentally competent and understanding of the English language, the Court proceeded, in the presence of said Defendant, to pronounce sentence against him, as follows:

IT IS THE ORDER OF THE COURT, that the said Defendant, who has been adjudged to be guilty of _____
rape of a child younger than 17 years-a 2nd degree felony as charged in the indictment

and whose punishment has been assessed by the Court at confinement in the Texas Department of Corrections for

___5 years___, be delivered by the Sheriff of Dallas County, Texas, immediately to the Director of the Texas Department of Corrections or other person legally authorized to receive such convicts, and said Defendant shall be confined in said Texas Department of

Corrections for ___not less than 2 years nor more than 5 years and until $25.00 Court___ costs are paid in accordance with the provisions of the law governing the Texas Department of Corrections, and the said Defendant is remanded to jail until said Sheriff can obey the direction of this sentence.

It is further ADJUDGED and DECREED by this Court that the sentence pronounced herein shall begin this date, and that the Defendant

is granted credit for time served beginning on date of ___October 30, 1974___

## CLERK'S CERTIFICATE

THE STATE OF TEXAS

COUNTY OF DALLAS

I, BILL SHAW, Clerk of the _____ Criminal _____

District Court __No.3__ of Dallas County, Texas, do hereby certify

that the above and foregoing is a true and correct copy of _____

_____ Judgment and Sentence _____

in Cause No. C74-5616-ILJ _____, entitled THE STATE OF TEXAS VS.

_____ Tony Lee Massingill _____

as the same appears on record in my office in Vol.__ 62/63 _____

page __ 401/122 __ Minutes of the __ Criminal _____

District Court __No.3__ of Dallas County, Texas.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Dallas,

Texas, this __11__ day of __ November _____, A.D. 19_74_.

BILL SHAW
Clerk of the Criminal District
Courts of Dallas County, Texas

By _____

Deputy

# TEXAS DEPARTMENT OF CORRECTIONS

## RELEASE NOTICE AND RECEIPT

WARDEN:                                                                      HUNTSVILLE, TEXAS

Insert date released and return to the Record Office.

NAME   MASSINGILL, Tony Lee                                           NO.   243999

DISCHARGE DATE WITH COMMUTATION TIME

CONDITIONAL PARDON TO

　　　　　PAROLE                Dallas Co.

　　　　　　　　REPRIEVE TO

DATE RELEASED                           11-17-76

　　　　　　　　　　　　　HHH            WARDEN

RO-4                                        By        RC

Texas Department of Corrections

Ferguson UNIT

## OFFENSE REPORT

6-2-75
Date

Name MASSINGILL, Tony                                        Number 243999

Assignment Laundry                                          Cell or Wing 10-37B

Officer Making Report T.D. Tucker                            Title coII

Charge: #48  3.11.H  FAILURE TO OBEY ORDERS

Offense in Detail:     At approximately 11:00 am this date 6-1-75, officer
Spivey observed inmate MASSINGILL, Tony #43999 holding the cell doors.

I am placing this inmate before the unit Disciplinary Committee.

Inmate MASSINGILL admitts the above statement is correct. He is capable
of representing himself and did not request any witnesses.

T.D. Tucker
Signature of Officer Making Report

Statement of Inmate to Committee:

Tony Massingill
Tony Massingill #243999
Signature of Inmate

X **Guilty**
Attitude of Inmate:
     fair

Unit Committee                     Case # 621934

W.H. Doyle              E.O. Blair              M.C. Brodegaard
Committee Decision:   Guilty   (YES)   (NO)
Punishment Assessed:
                       Cancel SAT 3, reassign to hoe squad

T.D.C. Disciplinary Report to be Filed: __yes__
The above information is true and correct to the best of my knowledge.

Original to Unit File
Duplicate to Record Office — Huntsville            Signature of Warden or Assistant Warden
I-47B

**Texas Department of Corrections**

**Ferguson** _____ **UNIT**

## OFFENSE REPORT

9-10-76
Date

Name **MASSINGILL, Tony** _____ Number **243999**

Assignment **Laundry** _____ Cell or Wing **10-53B**

Officer Making Report **F. Starns** _____ Title **COII**

Charge: **TDC 3.11.H LAZINESS:FAILURE TO WORK**

Charge: **TDC 3.11.H FAILURE TO OBEY ORDERS**

Offense in Detail: At approximately 5:00 pm this date 9-8-76, I noticed inmate clothing mixed together from the North and South Showers. After investigation I found that inmate MASSINGIL, Tony #243999 had mixed the clothes together. The reason for this is because if the clothing is mixed, it confuses the inmates who work in the showers, and delays the pressers.

I am placing this inmate before the Unit Disciplinary Committee.

Inmate MASSINGILL admits the above statement is correct. He is capable of representing himself and did not request any witnesses.

_C.E. Sowell_
For **F. Starns**
Signature of Officer Making Report

Statement of Inmate to Committee:

_Tony Massingill_ 243999
**Tony Massingill #243999**
Signature of Inmate

X _guilty_
Attitude of Inmate:

**fair**

Unit Committee _____ Case # **9-8930**

_R.W. Andrews_ _____ _W.H. Doyle_ _____ _M.C. Brodsgard_
**R. W. Andrews** _____ **W. H. DOYLE** _____ **M. C. BRODSGARD**

Committee Decision: Guilty (YES) (NO)

Punishment Assessed:

**7 days cell lockup**

T.D.C. Disciplinary Report to be Filed: **no**
The above information is true and correct to the best of my knowledge.

_W.S. Minee_
Signature of Warden or Assistant Warden

Original to Unit File
Duplicate to Record Office — Huntsville
L-47B

## Texas Department of Corrections

Ferguson _____ UNIT

### OFFENSE REPORT

6-30-75
Date

Name __MASSINGILL, Tony__                     Number __243999__

Assignment __12 Hoe__                          Cell or Wing __11-6__

Officer Making Report __J.R.Randall__           Title __Field Major__

Charge: __#46 3.11.H LAZINESS:FAILURE TO WORK__

Offense in Detail:
At approximately 3:00 pm this date 6-30-75, while officer Fraley was working with 12 Hoe he noticed inmate MASSINGILL,Tony 243999 not doing his work properly. He counseled with this inmate several times but to no avial.

I am placing this inmate before the Unit Disciplinary Committee.

Inmate MASSINGILL admitts the above statements correct. He is capable of representing himself and did not request any witnesses.

_J.R.Randall_
Signature of Officer Making Report

Statement of Inmate to Committee:

243999

_Tony Massingill_
Tony Massingill 243999
Signature of Inmate

X __Guilty__
Attitude of Inmate?

__Fair__
Unit Committee                     Case # __7-2352__

_M.N.Adams_                         _H.L.Manning_

__D.D.Rodgers__      __M.N.Adams__   __H.L.Manning__
Committee Decision:     Guilty   (YES)   (NO)

Punishment Assessed:

__15 days cell lock up__

T.D.C. Disciplinary Report to be Filed:___No___
The above information is true and correct to the best of my knowledge

Original to Unit File                    Signature of Warden or Assistant Warden
Duplicate to Record Office — Huntsville
I- 67B

**Texas Department of Corrections**

Ferguson _____ UNIT

**OFFENSE REPORT**

Name: MASSINGILL, Tony          Number: 249900          Date: 7-13-75

Assignment: 12 Hoe          Cell or Wing: 11-G16

Officer Making Report: J.R. Randall          Title: ?*.M. Major

Charge: Rule 3, 11, H (AUTHORIZED)DEPARTURE TO WORK.

Offense in Detail: At approximately 3:00 p.m. this date 7-13-75, while officer Williams was working with 12 Hoe he noticed inmate MASSINGILL, Tony 249900 not doing his work properly. He counseled with this inmate several times but to no avail.

I am placing this inmate before the unit Disciplinary Committee.

Inmate MASSINGILL admits the above statement is correct. He is capable of representing himself and did notrequest any witnesses.

_____
J.R. Randall
Signature of Officer Making Report

Statement of Inmate to Committee:

_____
Tony Massingill 249900
Signature of Inmate

_____
Tony Massingill 243999
Signature of Inmate

Attitude of Inmate:

Plea: Guilty

Unit Committee:
_____
M.M. Walker          Case 47-2720
_____
V.N. Adams          M.I. Manning
Committee Decision: Guilty (YES) SNO
Punishment Assessed:
7 days cell lock up

AUG 6 1975

_____
Signature of Warden or Assistant Warden

T.D.C. Disciplinary Report to be Filed:    NO
The above information is true and correct to the best of my knowledge.

Original to Unit File
Duplicate to Record Office — Huntsville
I-472

**Texas Department of Corrections**

_____ **UNIT**

## OFFENSE REPORT

| | 1-23-75 |
|---|---|
| | Date |

Name_____ MASSINGILL, Tony Leo_____ Number_ 243999_

Assignment_____ #13 hoe squad_____ Cell or Wing_____ 11-40_

Officer Making Report___ J. H. Adams_____ Title___ Field Lieutenant_

Charge: FIGHTING WITHOUT WEAPON (29)3.11D

**Offense in Detail:**

At approximately 4:00pm. this date 1-23-75, while Officer Oliphant
was working #13 hoe squad he observed inmate MASSINGILL, Tony Lee
#243999 fighting with inmate SMITH, Jim #243661. Officer Oliphant
immediately had these inmates seperated and sent them ack to work
without any further mishap. Inmate MASSINGILL, Tony #243999 is be-
placed by me before the Unit Disiplinary Committee.

Inmate MASSINGILL, Tony is capable of representing himself and admits
that the a o e statement is correct. He did not request any witnesses.

_J. H. Adams_
Adams, Field Lieutenant
Signature of Officer Making Report

**Statement of Inmate to Committee:**

_MASSINGILL Tony 23999_

MASSINGILL, Tony #243999
Signature of Inmate

_G. 14_

**Attitude of Inmate:** fair

**Unit Committee**

_Randall_                    Case #___ 1-457_

_B D Hodges_

D. Randall            B. D. Hodges            K. L. Manning

**Committee Decision:** Guilty (YES) (NO)

**Punishment Assessed:**

15 days cell lock up.

T.D.C. Disciplinary Report to be Filed:_____

The above information is true and correct to the best of my knowledge.

**Original to Unit File**
**Duplicate to Record Office — Huntsville**            Signature of Warden or Assistant Warden
**I- 47B**

# TEXAS DEPARTMENT OF CORRECTIONS DISCIPLINARY REPORT

Name __MASSINGILL, Tony__ ........ Number __243999__ ...... ... ... Unit __Ferguson__ ...... ...

**CHARGE AGAINST INMATE:** __#48  3.11.a   FAILURE TO OBEY ORDERS__

**DETAILED STATEMENT OF OFFENSE (Including date):** __At approximately 11:00 am__
this date 6-1-75, officer Spivey observed inmate MASSINGILL, Tony #243999
holding the cell doors.

I am placing this inmate before the Unit Disciplinary Committee.
Inmate MASSINGILL admits the above statement is correct. He is capable of
representing himself and did not request any witnesses.

_T.D. Tucker coII_      6-2-75
Signature of Employee reporting     Date

**Unit Committee**      Previous Disciplinary Reports UDC:1     3D: 0

_W.H. Doyle_     _E.D. Blair_     _M.C. Brodaghard_

**Committee Decision:**    **Guilty (YES) XXXXXXX**

**PUNISHMENT ASSESSED:** Cancel SAT 3, reassign to hoe squad.

**RECOMMENDED FORFEITURE OF COMMUTATION TIME (OR OVERTIME):** _____

                 6-3-75
Signature of Warden Bobby D. Morgan    Date

**DISCIPLINARY COMMITTEE'S RECOMMENDATION:**

Forfeiture of commutation time (or overtime):   Cancel SAT III; reassign to hoe squad

5 26 77
10-18-77      Chairman's Signature  H. H. Husbands  Date 6-13-75

**DIRECTOR'S ORDER:**

The above-named inmate shall forfeit the following commutation time (or overtime):

_____

Director, Texas Department of Corrections    Date  Feb-16-75

BO-62  (Revised 9-29-72)

JUN 1 6 1975

## INMATE CONDUCT RESUME

NAME: **Hassingill, Tony Lee** _____ CAUSE # _____

R/S **o/m** DOB: _____ BOOK-IN # **692375** _____ · CAUSE # _____

DSO# **249803** ___ DPS# _____ FBI# _____ PRIOR TDC# _____

[X] I CERTIFY THE ABOVE CAPTIONED SUBJECT HAS COMMITTED NO SERIOUS ACTS OF MISCONDUCT WHILE IN MY CUSTODY.

[ ] I CERTIFY THE ABOVE CAPTIONED SUBJECT COMMITTED THE FOLLOWING SERIOUS ACTS OF MISCONDUCT WHILE IN MY CUSTODY.

DATE                                     INCIDENT

**10-30-74**              **Placed in 11-s-13 per Smith to Bradfield
                          per Charge on him.**

CLARENCE JONES, SHERIFF

_Sherma_

THIS FORM WILL ACCOMPANY ALL INMATES BEING TRANSFERRED TO THE TEXAS DEPARTMENT OF CORRECTIONS. ADDITIONAL INFORMATION ON REVERSE SIDE.

MINIMUM SECURITY PRISONER

☐ YES  ☐ NO  AREA ASSIGNED _____

PARTICIPATION IN G.E.D. PROGRAM

☐ YES  ☐ NO  _____ TO _____
             - DATES -

PARTICIPATION IN JUNIOR COLLEGE PROGRAM

☐ YES  ☐ NO  _____ TO _____
             - DATES -

COURSES: _____
_____
_____

PARTICIPATION IN ADULT BASIC EDUCATION

☐ YES  ☐ NO  _____ TO _____
             - DATES -

☐ TUTOR        ☐ PUPIL

JUDGMENT    D SENTENCE – PLEA OF GUILTY – JURY    \IVED – NON-CAPITAL

MINUTES OF THE ___Criminal___ ___ DISTRICT COURT ____ OF DALLAS COUNTY, TEXAS

No. F7896650-IH    October ___ Term, A.D. 19 78

THE STATE OF TEXAS

vs.
Tony Lee Massingill    October 9,    A.D. 19 78

**JUDGMENT**    2nd Reindictment

The defendant havng been indicted in the above entitled and numbered cause for the felony offense of **Rape, a Second Degree Felony as charged in the indictment ** ** and this cause being this day called for trial, the State

appeared by her assistant Criminal District Attorney ___Ron Poole___ and the Defendant ___Tony Lee Massingill___

appeared in person and his counsel ___Lorenzo Brown___ also being present and both parties announced ready for trial, and the Defendant in person and in writing in open Court having waived his right of trial by jury, such waiver being with the consent and approval of the Court and now entered of record on the minutes of the Court and such waiver being with the consent and approval of the Criminal District Attorney of Dallas County, Texas, in writing, signed by him, and filed in the papers of this cause before the Defendant

entered his plea herein, the defendant was duly arraigned and in open Court pleaded ___GUILTY___ to the charge contained in the indictment; thereupon the defendant was admonished by the Court of the consequences of the said plea and the defendant persisted in entering said plea, and it plainly appearing to the Court that the defendant is mentally competent and that he is uninfluenced in making said plea by any consideration of fear, or by any persuasion, or delusive hope of pardon prompting him to confess his guilt, the said plea was accepted by the Court and is now entered of record as the plea herein of the Defendant. The defendant in open Court, in writing, having waived the reading of the indictment, the appearance, confrontation, and cross-examination of witnesses, and agreed that the evidence may be stipulated and consented to the introduction of testimony by affidavits, written statements of witnesses and any other documentary evidence, and such waiver and consent having been approved by the Court in writing and filed in the papers of the cause; and, the Court having heard the Defendant's waiver of the reading of the indictment, the defendant's plea thereto, the evidence submitted, and the argument of counsel, is of the opinion from the evidence submitted that the defendant is guilty as charged.

IT IS THEREFORE CONSIDERED AND ADJUDGED BY THE COURT, that the said Defendant is guilty of the felony offense of **Rape a Second Degree Felony as charged in the 1st paragraph of the indictment**

and that the said Defendant committed said offense on the ___23rd___ day of ___March___, 19 78, and that he be punished by confinement in the Texas Department of Corrections for ___5 years___, and that the State of Texas do have and recover of the said defendant all costs in this prosecution expended, for which execution will issue; and that said defendant be remanded to the Sheriff of Dallas County, Texas, to await the further order of the Court herein.

**State's Motion to strike the Second Count of the indictment granted.**

**SENTENCE**

THE STATE OF TEXAS
VS.

___Tony Lee Massingill___    No. ___F78-6650-IH___    ___October 9,___    19 78

THIS DAY this cause being again called, the State appeared by her Criminal District Attorney, and the Defendant,

___Tony Lee Massingill___ appeared in open Court in person, his counsel ___Lorenzo Brown___

also being present, for the purpose of having sentence of the law pronounced in accordance with the judgment herein rendered and entered against him at a former time, and thereupon the said Defendant was asked by the Court whether he had anything to say why said sentence should not be pronounced against him, and he answered nothing in bar thereof, and it appearing to the Court that the Defendant is mentally competent and understanding of the English language, the Court proceeded, in the presence of said Defendant, to pronounce sentence against him, as follows:

IT IS THE ORDER OF THE COURT, that the said Defendant, who has been adjudged to be guilty of ___Rape, a Second Degree Felony as charged in the 1st paragraph of the indictment___

and whose punishment has been assessed by the Court at confinement in the Texas Department of Corrections for ___5 years___, be delivered by the Sheriff of Dallas County, Texas, immediately to the Director of the Texas Department of Corrections or other person legally authorized to receive such convicts, and said Defendant shall be confined in said Texas Department of Corrections for ___not less than 2 years nor more than 5 years and until Court Cos of $26.00 are paid___ in accordance with the provisions of the law governing the Texas Department of Corrections, and the said Defendant is remanded to jail until said Sheriff can obey the direction of this sentence.

It is further ADJUDGED and DECREED by this Court that the sentence pronounced herein shall begin this date, and that the Defendant is granted credit for time served beginning on date of ___March 23, 1978___

## CLERK'S CERTIFICATE

THE STATE OF TEXAS

COUNTY OF DALLAS

I, BILL SHAW, Clerk of the _____Criminal_____

District Court _____-----_____ of Dallas County, Texas, do hereby certify

that the above and foregoing is a true and correct copy of _____

Judgment and Sentence

in Cause No. _____F78-6650-IH_____, entitled THE STATE OF TEXAS VS.

Tony Lee Mass ngill

as the same appears on record in my office in Vol. _____117_____

page _____46_____ Minutes of the _____Criminal_____

District Court _____-----_____ of Dallas County, Texas.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Dallas,

Texas, this _____9th_____ day of _____October_____, A.D. 19_78_.

BILL SHAW
Clerk of the Criminal District
Courts of Dallas County, Texas

By _____
Deputy

**Gearldine L. Flowers**



# CARL THOMAS

### SHERIFF

**DALLAS COUNTY GOVERNMENT CENTER**

**DALLAS, TEXAS 75202**

REPORT OF INMATE CONDUCT

NAME: *Massengill Tony Lee*          INMATE NUMBER *7808675*      *632/8883*

                                                   (B.I. #)            (I.D. #)

_____  I CERTIFY THAT THE ABOVE NAMED INMATE HAS COMMITTED NO SERIOUS ACT
OF MISCONDUCT WHILE IN THE CUSTODY OF THE DALLAS COUNTY SHERIFF'S
DEPARTMENT.

___✓___  I CERTIFY THAT THE ABOVE NAMED INMATE HAS COMMITTED SERIOUS ACTS OF
MISCONDUCT AS FOLLOWS: (NO DISCIPLINARY HEARING PROCEDURES HELD)

_____  I CERTIFY THAT THE ABOVE NAMED INMATE HAS COMMITTED SERIOUS ACTS OF
MISCONDUCT AS FOLLOWS: (IN ACCORDANCE WITH WOLFF VS. MCDONNELL)

| INCIDENT OR OFFENSE | DATE |
|---|---|
| *Destroying Property within County Jail* | *16-8-78* |
| *Fighting* | *9-8-78* |
| *Turned in using his own cell confiscated* | *16-8-78* |

REMARKS: _____

_____

_____

DATE RECEIVED IN DSO CUSTODY _____*3-17-78*_____

TRANSFERRED TO TEXAS DEPARTMENT OF CORRECTIONS  *16-12-78*


CARL THOMAS, SHERIFF
DALLAS COUNTY, TEXAS



BY: *T. Gibson #665*
    DEPUTY SHERIFF



SHER/JAIL/12

# TEXAS DEPARTMENT OF CORRECTIONS

### RELEASE NOTICE AND RECEIPT

**WARDEN:**                                                          **HUNTSVILLE, TEXAS**

Insert date released and return to the Record Office.

NAME____MASSINGILL, Tony Lee_____NO. _____284635_____

DISCHARGE DATE WITH COMMUTATION TIME _____

CONDITIONAL PARDON TO _____

PAROLE _____

_____MANDATORY SUPERVISION ___10-25-80 to Dallas County___

DATE RELEASED_____OCT 2 4 1980_____

JBP / RC ——— **WARDEN**

By_____

RO-4

# BOARD OF PARDONS AND PAROLES

## ROOM 711 STEPHEN F. AUSTIN BLDG.

### AUSTIN, TEXAS  78701

DATE: 10-20-1978

DIRECTOR
TEXAS DEPARTMENT OF CORRECTIONS
HUNTSVILLE, TEXAS

IN RE:  MASSINGILL, TONY LEE
284635

THE ABOVE NAMED INMATE WILL BE INITIALLY ELIGIBLE FOR PAROLE
CONSIDERATION DURING *SR*.  IF ELIGIBILITY IS REACHED EARLIER
BY THE ADDITION OF LAWFUL TIME CREDITS, THE TEXAS DEPARTMENT OF
CORRECTIONS WILL NOTIFY THIS BOARD OF THE CHANGE AND THE PROCESS
WILL BE INITIATED EARLIER.  THIS PROCESS IS AUTOMATIC — THE INMATE
NEED NOT NOTIFY THIS BOARD NOR DOES HE OR SHE NEED TO APPLY FOR
PAROLE IN ANY MANNER.

PERSONAL APPEARANCES BEFORE THE BOARD BY FAMILY, FRIENDS, OR
OTHER INTERESTED PARTIES ARE NOT REQUIRED.  AT ANY TIME, HOW-
EVER, INFORMATION MAY BE SUBMITTED CONCERNING THE INMATE'S
CASE IN WRITING OR IN PERSON TO THE BOARD OR ITS REPRESENTATIVE
AT ITS ADDRESS IN AUSTIN, TEXAS.

THE INMATE MAY BE INTERVIEWED BY A BOARD REPRESENTATIVE PRIOR
TO THE MONTH SET FOR REVIEW.  IN THE EVENT OF SUCH INTERVIEW THE
REPRESENTATIVE WILL BE PARTICULARLY INTERESTED IN A RELEASE PLAN
TO SUBMIT TO THE PAROLE PANEL.  IF FAVORABLE ACTION IS NOT TAKEN
BY THE PAROLE PANEL UPON REVIEW, YOU WILL BE NOTIFIED OF THE NEXT
REVIEW DATE.  IF THE ACTION IS FAVORABLE, THE BOARD WILL NOTIFY
THE TRIAL OFFICIALS OF EACH COUNTY OF CONVICTION.  A FINAL
DECISION WILL BE MADE BY A PAROLE PANEL WHEN THE ENTIRE INVESTIGA-
TION IS COMPLETED.  THE INMATE WILL RECEIVE NOTIFICATION OF ANY
ACTION TAKEN.

A PAROLE IS NOT A RIGHT.  THE LAW STATES, 'A PAROLE SHALL BE
ORDERED ONLY FOR THE BEST INTERESTS OF SOCIETY, NOT AS AN AWARD
OF CLEMENCY; IT SHALL NOT BE CONSIDERED TO BE A REDUCTION OF
SENTENCE OR PARDON.'  AN INMATE IS PLACED ON PAROLE ONLY WHEN
THE BOARD BELIEVES HE IS ABLE AND WILLING TO MEET THE OBLIGA-
TIONS OF A LAW ABIDING CITIZEN, WHEN THE FACTS IN HIS CASE
WARRANT IT, AND WHEN ARRANGEMENTS HAVE BEEN MADE FOR HIS PROPER
EMPLOYMENT AND CARE.

*SR* MEANS SPECIAL REVIEW.  ACTION WILL BE INITIATED IMMEDIATELY.
RELEASE, IF ORDERED, WILL NOT OCCUR PRIOR TO LEGAL ELIGIBILITY
FOR PAROLE.

BOARD OF PARDONS AND PAROLES

CC:  INMATE
     FILE

OCT 2 6 1978

## HOW TO CHANGE YOUR CORRESPONDENCE LIST

In order to consider changes in a Correspondence List, it is necessary that the Bureau of Classification receive certain types of information about the person with whom you wish to correspond.

To have changes in your Correspondence and Visitors List approved as quickly as possible, listed below are points to keep in mind when you write the Bureau of Classification:

ONLY FIVE NAMES can appear on your list. If you wish to replace one person with another, be sure to indicate the person you wish removed from your list. Use the space provided on the reverse side of this page.

WHEN LISTING WOMEN RELATIVES, give their first and maiden name in order that we may identify that person if her name appears in our records. Example: Mrs. John Jones would be listed as Mrs. John (Mary Brown) Jones.

MARRIED MEN may not write to women other than wives, mothers, sisters, or in some cases, other close relatives.

CORRESPONDENCE WITH MARRIED WOMEN, other than relatives, will not be approved except in unusual circumstances.

CHANGES IN YOUR MARITAL STATUS since you were admitted require verification. For example, if your wife has obtained a divorce and you wish to write another woman, it will be necessary for you to furnish verifiable information regarding the divorce.

CORRESPONDENCE WITH MINORS, other than members of your immediate family, requires written permission from a parent or guardian. The Bureau of Classification will obtain this permission for you. However, receipt of this permission does not necessarily mean that correspondence will be approved.

CORRESPONDENCE WITH EX-INMATES is not generally approved. However, if our investigation shows that person has maintained a clear record for a reasonable length of time, such correspondence may be approved.

# EXHIBIT 12

Name _____

## OBJECTIVE TEST DATA

### SCHOLASTIC APTITUDE TESTS

| Date | Readiness Test | P. R. | Read. | Number | Total |
|------|------|------|------|------|------|
| 19__ | Metropolitan | 1 | E | E | E |

| Date | Grade | Name of Test | Total IQ | Lang. IQ | Non-Lang. IQ | P. R. |
|------|------|------|------|------|------|------|
| | 3E | M.M. | 4 | | 77 | |
| 4A | C.M.M. | 75 | 82 | 69 | | |

| | Algebra Aptitude | Total Score | P. R. |
|------|------|------|------|

| Date | Grade | Name of Test | | | | |
|------|------|------|------|------|------|------|

### EDUCATIONAL ACHIEVEMENT TESTS

| Date | Grade | Name of Test | Read G. P. Voc. | Comp. | Arith. G. P. Reas. | Fund. | Lang. G. P. | Spell. G. P. | Total Battery |
|------|------|------|------|------|------|------|------|------|------|
| 4A | California Achievement | 3.0 | 2.9 | 2.7 | 3.1 | 2.8 | 2.8 | 2.9 |
| 4A | " | " | 2.5 | 2.0 | 0 | 0 | 2.0 | 0 | 2.0 |
| 3B | California Achievement Test | 20 | 20 | 24 | 3b | 32 | 74 | 23 |
| 1168 | 62 | California Achievement Test | 20 | 27 | 25 | 41 | 30 | 20 | 25 |

### SCHOLARSHIP — COLLEGE ENTRANCE TESTS

## TEACHER CONFERENCE NOTES (PARENT, NURSE, VISITING TEACHER)

| Date | | Date | |
|------|------|------|------|

DALLAS INDEPENDENT SCHOOL DISTRICT
DALLAS, TEXAS
HIGH SCHOOL PERMANENT RECORD

MASSINGILL TONY

MADISON H.S.

# EXHIBIT 13

FINAL SUMMARY

**DALLAS COUNTY HOSPITAL DISTRICT**
**DALLAS, TEXAS**

**NAME:**  MASSINGILL, Tony

**UNIT #:**  00 80 86 73

DATE OF ADMISSION:  06/07/89
DATE OF EXPIRATION:  07/14/89

**SERVICE:**  Medicine

**PHYSICIAN:**  David McGinnis, M.D.

FINAL DIAGNOSES:
1. Recurrent oral ulcerations secondary to vasculitis, partial Behcet's syndrome.
2. Chronic granulomatous leukemia with blastic transformation.

OTHER MORBID CONDITIONS AND/OR COMPLICATIONS:
1. Anemia.
2. Thrombocytopenia.
3. Methicillin-resistant Staphylococcus infection.
4. Malnutrition.
5. Perirectal abscess.
6. Chronic nonhealing oral ulcerations.
7. Aspiration pneumonitis.

PROCEDURES PERFORMED:
1. Hydrotherapy.
2. Colostomy.
3. Bronchoscopy.
4. Percutaneous esophageal gastrostomy tube placement.
5. Left subclavian central venous line placement.
6. Lymph node biopsy.
7. Bone marrow biopsy.
8. Intravenous antibiotic therapy.
9. Skin biopsy x 3.

SERVICES CONSULTED:
1. Infectious Disease.
2. General Surgery.
3. Hematology-Oncology.
4. Nutrition.
5. Psychiatry.
6. Rheumatology.
7. Dermatology.
8. Gastroenterology.
9. Physical Medicine & Rehabilitation.
10. Pulmonary Medicine.

HOSPITAL COURSE: The patient was an unfortunate 31 year old black male with no significant past medical history until 5/87 when he presented to the Surgery Emergency Room with a .22 caliber gunshot wound to his left chest. He did well with chest tube drainage of hemothorax and observation. His white count at that time was 34.7 with a hematocrit of 37.5. He was noted to have a differential of 13 metamyelocytes, 2 myelocytes, 26 polymorphonuclears, 29 lymphocytes, 13 monocytes and 1 eo with no diagnosis at that time. He returned in 3/89 after a seizure at home with a temperature in the Emergency Room of 37.7. He was alert and oriented x 2. His physical exam and neurological exam were unremarkable. Lumbar puncture was also unremarkable. CSF glucose was 105 and protein was 66. CSF VDRL was nonreactive.

CONTINUED ON PAGE 2

**TRANSCRIPTION FORM**   A14

FINAL SUMMARY
Page 2

**NAME:**      MASSINGILL, Tony

**UNIT #:**      00 80 86 73

**SERVICE:**

**PHYSICIAN:**

Culture and cytology were negative.  AFB stain and culture were negative.
Cryptococcal antigen was negative.  ESR was 43.  He was admitted and started
on Dilantin IV load and p.o. maintenance.  CT and MRI with contrast were
negative.  Chest x-ray was clear.  CBC at that time revealed a white count of
48,700 with a hematocrit of 43.7.  He was felt to be volume depleted at that
time, however, with a differential consistent with chronic granulomatous
leukemia.  His creatinine was 1.8.  An EEG was performed which showed temporal
swelling.  He spiked a fever on the second day of hospitalization.  Blood
cultures were negative and urinalysis was negative as was urine culture.
Serum protein electrophoresis showed an acute phase response.  A bone marrow
biopsy was performed which showed an 1:20 erythroid to myeloid ratio
consistent with CGL and was notable for the presence of Philadelphia
chromosome positive leukemia.

He was treated with cefataxime and gentamicin, and remained febrile.
Ulcerations of the oral mucosa were noted shortly thereafter and this was felt
at that time to be secondary to a Dilantin drug reaction.  The Dilantin was
stopped and he was switched to phenobarbital.  Peripheral blood VDRL was
reactive at 1:1 with MHA-TP reactive and he was treated with penicillin
appropriately.  Cultures of the oral ulcers were negative for herpes simplex
virus.  Multiple KOH preparations were negative.  He was treated with Maalox
and viscous lidocaine with IV acyclovir without any evidence of improvement.
He was evaluated by Hematology and the Infectious Disease Service but no
etiology for ongoing fever and ulcerations could be discerned.  All
antibiotics were stopped and his fever decreased.  He defervesced off
antibiotics and the ulcers healed to a significant degree.  He was appointed
to the Hematology Clinic and Dermatology Clinic but did not return for
follow-up.

The patient presented again on 6/04/89 with penile, scrotal and oral
ulcerations, and asked for a phenobarbital refill in the Ambulatory Care
Clinic.  His temperature was 36.6 and he was noted to have some rectal pain.
He was referred to the Surgery ACC where he was found to have a perirectal
abscess.  He was admitted to the Surgery Service and the oral ulcerations
progressed on the first day of admission.  He underwent debridement of the
perirectal abscess with a large ulcer being present.  He had an increased
temperature and was started on vancomycin, Flagyl, erythromycin and IV
acyclovir without improvement.  The oral ulcerations became more extensive and
general ulcerations with kissing ulcers appeared.  Multiple blood and urine
cultures were negative.  He developed chronic aspiration syndrome based on his
chronic poor handling secretions secondary to difficulty swallowing.  He was
started on tobracmyin for gram-negative rod coverage although blood cultures
remained negative.  His HIV status was negative.  Repeat VDRLs were negative.
Sputum was consistently contaminated.  Cultures for herpes simplex virus were
repeated on multiple occasions from the scrotal and oral ulcers which were

CONTINUED ON PAGE 3

**TRANSCRIPTION FORM**      **A14**

FINAL SUMMARY
Page 3

**DALLAS COUNTY HOSPITAL DISTRICT**
DALLAS, TEXAS

**NAME:**   MASSINGILL, Tony

**UNIT #:**   00 80 86 73

**SERVICE:**

**PHYSICIAN:**

negative. No Hemophilus ducreyi could be isolated. He had a negative darkfield exam for syphilis. Infectious Disease was consulted and Dermatology was consulted for biopsy of the lesions, and he was transferred to the Medicine Service for further care. Blood cultures were again obtained and he was maintained on broad spectrum antibiotics with IV vancomycin, Flagyl, acyclovir, erythromycin and tobramycin with no change in his fever status and the antibiotics were eventually discontinued. Biopsy of the lesions revealed a leukocyte classic vasculitic reaction in the base of the oral ulcers and genital ulcers felt consistent with vasculitic syndrome. Ophthalmology was consulted to examine the patient for the presence of iritis which was not found. Therefore, he did not meet the full criteria for a Behcet's type syndrome but was felt to have a "partial" type of vasculitic seronegative syndrome. He had a negative ANA, normal RF, and normal complement levels.

The patient's nutritional status was poor and a diverting colostomy was placed to divert stool around the perirectal abscess area. Aggressive oral nutrition was persued and aggressive local care of the ulcers was persued with hydrotherapy. His ulcers did slowly improve and eventually a trial of pulse steroid therapy with IV Solu-Medrol on three successive days was given with remarkable improvement of the ulcerations. However, during the hospital course, he underwent blast transformation with an increase in his white cell count which went from approximately 20,000 to 180,000 over time with multiple blasts on peripheral smears. Repeat bone marrow biopsy showed bone marrow filled with blast cells and lymph node biopsies of large nodes which appeared in the neck were consistent with large blastic cells. Cytogenetics showed up to 50 chromosomes with Philadelphia chromosomes and multiple double minute chromosomes also present.

Because of the risk of severe infection that would be posed by persuing aggressive chemotherapy, the chemotherapy was withheld for some time while we attempted to heal the large ulcers in his mouth and perirectal area. Eventually, the patient developed a sluggish mental status although he was alert and oriented, and mild respiratory discomfort which was felt secondary to a leukostatic syndrome. Chemotherapy was to be offered with Cytosine arabinoside and he was transferred to the 5-North unit for the administration of chemotherapy. He also had a percutaneous gastrostomy placed for aggressive enteral nutrition which was delivered. However, prior to chemotherapy being given, the patient developed marked respiratory distress with respirations in the 40's and obtundation. Due to wishes of the family that further aggressive management not be persued because of a humanitarian basis, the patient was made DNR and he expired shortly after the onset of respiratory failure. He was pronounced dead on 7/14/89 at 1715 with his mother in attendance. The chaplain was summoned for assistance in the arrangements and an autopsy was not requested.

David McGinnis, M.D.   /D15

D: 07/14/89 M: 07/14/89 T: 07/17/89 1478z

**TRANSCRIPTION FORM**   | A14 |

FORM NO. 58005

# EXHIBIT 14

**DALLAS COUNTY HOSPITAL DISTRICT**

DALLAS, TEXAS

~~DIAGNOSIS AND SUMMARY RECORD~~

Unit # _____

Name __H-778_____

Address _____ 0373-457

Birthdate __b7 10 82__

Classification __HEARN   B/N  11-09-78__

OP ☐  E78 F ☐ I SP ☐ N Sd SUSAN

067 _____ 858674   TCI

| SERVICE | CODE NO. | DIAGNOSIS AND OPERATIONS |
|---------|----------|--------------------------|
|  | 760.22 | Postterm Appropriate for Gestational Age Infant — 43 weeks |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DISCHARGE DATE  11/9/78                                      3 days

NO. OF SERVICES CONSULTED:

EXPIRED ☐          HOSPITAL AUTOPSY ☐          MEDICO-LEGAL AUTOPSY ☐    | A10 |

FORM NO. 50936

**DALLAS COUNTY HOSPITAL DISTRICT**
Dallas, Texas

**DEPARTMENT OF PEDIATRICS**

**NEWBORN DISCHARGE SUMMARY**

11·779     0333-457

67 10 82     11-06-78
HEARN   B/M
23-C15     NB SUSAN
067     858674   TCL

ADMITTED: 11-6-78   DISCHARGE: 1/9/78

FAMILY:
1. MOTHER'S UNIT #: 54   55   85
2. MOTHER'S FULL NAME: Hearn, Susan D.
3. MOTHER'S ADDRESS:   APT.
4. MOTHER'S TELEPHONE: 374-5275
5. NAME, ADDRESS, AND TELEPHONE OF CONTACT IF MOTHER HAS NO PHONE:

SUMMARY:   THE INFANT WAS A 3385 GM., 50.1 CM. IN LENGTH, FOC 35 CM.
EGA 42-43 WKS., APGAR 2/9, BLOOD TYPE B RH +, DIRECT COOMBS ⊖, RACE
B, SEX M, DELIVERED OF A 18 Y.O., G 1 P 0 A 0 BLOOD TYPE A
RH +, SEROLOGY NR, CLINIC ☑ NONCLINIC ☐, RACE B PER: VAGINA ☑
OR C-SECTION ☐ RESUSCITATION bagged with O₂ for 1 min.; DeLee suction below cords
IF PREGNANCY, LABOR AND DELIVERY WERE COMPLICATED, DESCRIBE: Preg. uncomp. AROM 2 hrs
PTD revealed thin meconium. Resusc. as above.

THE IMMEDIATE NEWBORN PHYSICAL EXAMINATION WAS NORMAL. IF ABNORMAL, DESCRIBE: poor moro-
minimal abduction, no cry.

THE HOSPITAL COURSE WAS UNCOMPLICATED. IF COMPLICATIONS ENCOUNTERED, DESCRIBE:

DISCHARGE PHYSICAL EXAMINATION WAS NORMAL OR DEMONSTRATED: Head lag c̄
catch up, good moro.

**A14**

FORM NO. 55416 REV. 11/76     **MEDICAL RECORD**
SPEEDIPLY® Patent Pending; MCP® Patented 3,429,827;3,016,308; Moore Business Forms, Inc., A

**DALLAS COUNTY HOSPITAL DISTRICT**
**Dallas, Texas**

**DEPARTMENT OF PEDIATRICS**

**NEWBORN DISCHARGE SUMMARY**

**CONTINUATION SHEET**

11·778 0398-457

67 10 82
HEARN B/H
23-C1S NB SUSAN
067 856674 TC;

DISCHARGE FOC 34.5 CM., WEIGHT 3380 GM.

**DISPOSITION:**

1. DISCHARGE TO PARENTS: ☑ YES ☐ NO IF "NO" STATE NAME AND

RELATIONSHIP: _____

REASONS: _____

_____

② WELL BABY CLINIC, 2 MONTHS

3. _____

4. _____

5. _____

6. CMC APPOINTMENT ☐ YES ☒ NO DATE: _____

**FORMULA**
**(CIRCLE)**
① STOCK FORMULA WITH IRON.
2. EVAPORATED MILK 12:19:2.
3. BREAST MILK.

**MEDICATIONS**
**(CIRCLE)**
1. MULTI-VITAMINS, 0.6 ml QD
2. FeSO4, 0.6 ml BID

3. _____

**DIAGNOSIS**
1. TERM, *Appropriate* FOR GESTATIONAL AGE, LIVING INFANT.

2. _____

3. _____

4. _____

**OPERATIONS**
1. _____

2. _____

DATE: 1/5/78

W. Wilson
(PHYSICIANS SIGNATURE)

**A14**

FORM NO. 55417 REV. 11/76 MEDICAL RECORD
SPEEDIPLY® Patent Pending; MCP® Patented 3,429,827;3,016,308; Moore Business Forms, Inc., A

# DALLAS COUNTY HOSPITAL DISTRICT
## ADMITTING SUMMARY

671082 | 858674

**PATIENT**

| NAME LAST / FIRST / MIDDLE | MAIDEN | SERVICE | NURSING STATION | ROOM NO. | TIME ADMIT | DATE ADMIT |
|---|---|---|---|---|---|---|
| HEARN, BABY (SUSAN) | 545585 | 067 | N657 | 2988 | 20:21 | 11/06/78 |

| STREET ADDRESS | CITY | STATE | ZIP CODE | PHONE | COUNTY | MAR. STAT | TYPE PAY | STATUS |
|---|---|---|---|---|---|---|---|---|
| [redacted] | | [redacted] | | 214-374-5275 | 057 | S | 23 | C1S |

| PREVIOUS ADDRESS | SOCIAL SECURITY NUMBER | BIRTH DATE | AGE | BIRTH PLACE (CITY & STATE) |
|---|---|---|---|---|
| | 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 | [redacted] | 00 | PMH DALLAS TX |

| PREVIOUS ADMISSION AT DCHD - (NAME AND DATE) | SEX | RACE | RELIGION | NAME OF CHURCH | NO. OF CHILDREN IN HOME |
|---|---|---|---|---|---|
| | M | B | BAP | | 01 |

| ATTENDING PHYSICIAN(S) | ADMITTING DIAGNOSIS | ARRIVED BY |
|---|---|---|
| MANROE, BARBARA L. | NEWBORN 7-7 40WKS | |

| LOCATION OF ACCIDENT | OCCUPATION | SALARY | CODE | PHONE NO. |
|---|---|---|---|---|
| | | 0000 | | 000-000-0000 |

| EMPLOYER | ADDRESS | STATE | ZIP CODE |
|---|---|---|---|
| | | | 00000 |

**EMER. NOT.**

| PERSON TO NOTIFY | REL. | EMPLOYER | PHONE |
|---|---|---|---|
| HEARN, SUSAN D. | 2 | | 000-000-0000 |

| ADDRESS | CITY | STATE | ZIP CODE | PHONE |
|---|---|---|---|---|
| 5166 BURNSIDE, DALLAS | | TX | 75241 | 214-374-5275 |

**LEGAL**

| LEGAL NEXT OF KIN | REL. | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| HEARN, SUSAN D. | 2 | [redacted] | | [redacted] | |

**RESPONSIBLE PARTY**

| RESPONSIBLE PARTY'S NAME | RESPONSIBLE PARTY'S ADDRESS | STATE | ZIP CODE |
|---|---|---|---|
| HEARN, SUSAN D. | [redacted] | [redacted] | |

| RESPONSIBLE PARTY'S EMPLOYER | OCCUPATION | SALARY | CODE | PHONE |
|---|---|---|---|---|
| UNEMPLOYED | | 0000 | | 000-000-0000 |

| RESPONSIBLE PARTY'S EMPLOYERS ADDRESS | CITY | STATE | ZIP CODE | SOCIAL SECURITY NO. | PHONE |
|---|---|---|---|---|---|
| | | | 00000 | [redacted] | 214-374-5275 |

**INSURANCE**

| P/S | BLUE CROS | CO. NO. | PLAN NO. | GROUP NO. | CERTIFICATE NO. | CONTRACT NO. | NAME OF INSURED |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| CHAM PUS | CO. NO. | PLAN NO. | MILITARY I.D. NO. | SPONSOR NAME | EFFECTIVE DATE | EXPIRATION DATE | RANK | BRANCH OF ARMED FORCE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| SPONSOR S.S. NO. | DUTY STATION | MEDICARE NO. | MEDICAID NO. | NAME OF INSURED |
|---|---|---|---|---|
| | | | | |

| INSURANCE CO. NAME | CO. NO. | PLAN NO. | POLICY NO. | GROUP NO. | NAME OF INSURED |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**PRE-ADMISSION NON-RESIDENT DATA**

| REFERRAL | REASON | REFERRED BY - NAME |
|---|---|---|
| | | |

| REFERRED BY ADDRESS | TRANSFERRED FROM HOSPITAL | CITY |
|---|---|---|
| | | |

| DATE TO BE ADMITTED | CLEARANCE - BUSINESS OFFICE (YES / NO / NAME) | CLEARANCE - ADMINISTRATION (YES / NO / NAME) |
|---|---|---|
| | | |

| NAME OF PERSON INTERVIEWED | RELATION TO PATIENT | PHONE NO. |
|---|---|---|
| MOTHER'S ADMIT | | 000-000-0000 |

**PARTY RESPONSIBLE MUST SIGN**

I AGREE TO BE RESPONSIBLE FOR ALL MONIES DUE AS A RESULT OF THIS CONFINEMENT & FURTHER AGREE TO MAKE ARRANGEMENTS SATISFACTORY TO THE DALLAS COUNTY HOSPITAL DISTRICT FOR PAYMENT OF ALL BILLS PRIOR TO THIS PATIENT BEING DISCHARGED.

SIGNATURE

ADDRESS | DATE | RELATION TO PATIENT

| TYPE OF ADMISSION | ADMITTED BY | LOCATION OF OLD CHART |
|---|---|---|
| EMERGENCY | SPIVEY | NEWBORN |

FORM NO. 68001 REV. (10/77) CHART-ADMITTING SOCIAL HISTORY A20

DALLAS COUNTY Hospital District

C 858674    U 67/0 8

Age  18                                          Hospital Number

Blood Group                                      Prenatal Serology

LABOR                                            Other _____ 4  then
       Ruptured                                  Prior to Delivery  1735  6  (hrs.)(min.)(hrs.)

DELIVERY  Spontaneous _____  Induced _____  Operative _____
          Complications _____

IP AHR   Apgar Total  2  9
         Resuscitation:  Yes  No ____  Describe  Bulb Suction Ambu bag

         Abnormalities Noted _____

         Prophylactic Eye Care:  Yes ____  No ____  Cord Blood Sent:  Routine ____  Stat ____

         Private Obstetrician _____

         Private Pediatrician _____                     Staff Pediatrician _____

| IDENTIFICATION BAND | | |
|---|---|---|
| SIGNATURE, PERSON APPLYING  N 750 | Cynthia Lee RN | Infant's Birth Date: ▮▮▮  Time: 2071 |
| | | Infant's Sex  boy  Race ___ W ___ N  I.A  3.385 |
| PRINTS | | |
| SIGNATURE, PERSON TAKING  Cynthia Lee RN | | Birth Weight  7  lbs.  7  ozs. |
| | | Infant Not Weighed At Birth: ☐  4:00 W |

| Mother's Right Index Fingerprint | Infant's Left Footprint (or Palmprint) | Infant's Right Footprint (or Palmprint) |
|---|---|---|

A40

## NEWBORN DISCHARGE

DATE: 11-9-78

I have examined the baby being released to me by the Dallas County Hospital District and have identified him/her as my child.

✓ SUSAN HEARN

Mother's Signature (or qualified representative)

I have checked the bracelets of the Mother _Susan Ybarra_ and of her
Baby _M. Ybarra_, and have found them to have matching numbers or her
representative specified above.
Alternate Mode of Identification: _____

Parent or Qualified Representative

Maria Jane Jones-na

Hospital Employee's Signature

M. bea Hearn, Susan
11-6-78 2021

Mary Hearn, Susan
11-6-78 2021

M. bea Hearn, Susan
11-6-78 2021

Staple Baby's Bracelet Here

### Discharge Instructions

A. The Newborn Discharge Section of the Newborn Identification Form is to be completed on each infant at discharge.

B. Discharge will be made to:

1. The mother or her representative who properly identifies himself (herself) and who presents the mother's identification arm band. Failing this, the mother will be contacted and her wishes verified. The person contacting the mother will note and sign evidence of such contact.
2. The legal guardian or person acting under court order who will properly identify himself and present evidence of his authority. The number of title and instruments of authority will be noted on this form.
3. Escorts from other hospitals or agencies who will identify themselves and sign for the infant.

C. A registered nurse or LVN will check all instruments of identification and authority required above.

**DALLAS COUNTY HOSPITAL DISTRICT**

DALLAS, TEXAS

~~WORKSHEET FOR~~

CERTIFICATE OF BIRTH

PATIENT
ID FILE

FOR INFANT'S ADDRESSOGRAPH PLATE

Unit # 671082

Name _____

Address _____

Birthdate _____

Classification _____

OPD   ERD   IPD   Admit # _____

DUPLICATE

TO BE FILED WITH MEDICAL RECORD

STATE OF TEXAS                                          BIRTH NO.

| 1. PLACE OF BIRTH | | 2. USUAL RESIDENCE OF MOTHER (Where does mother live?) | |
|---|---|---|---|
| a. COUNTY *Dallas* | | a. STATE *Texas* | b. COUNTY *Dallas* |
| b. CITY OR TOWN (If outside city limits, give precinct no.) *Dallas* | | c. CITY OR TOWN (If outside city limits, give precinct no.) *Dallas* | ZIP CODE *75241* |
| c. NAME OF (If not in hospital, give street address) HOSPITAL OR INSTITUTION *Parkland Memorial* | | d. STREET ADDRESS (If rural, give location) ▬▬▬▬ | |
| d. IS PLACE OF BIRTH INSIDE CITY LIMITS?   YES ☑  NO ☐ | | e. IS RESIDENCE INSIDE CITY LIMITS?   YES ☑  NO ☐ | f. IS RESIDENCE ON A FARM?   YES ☐  NO ☑ |

**CHILD**

| 3. NAME (Type or Print) | (a) First *Yokarion* | (b) Middle *Daneal* | (c) Last *Hearn* | 4. DATE OF BIRTH ▬▬▬▬ |
|---|---|---|---|---|
| 5. SEX *Male* | 6a. THIS BIRTH   SINGLE ☑  TWIN ☐  TRIPLET ☐ | | 6b. IF TWIN OR TRIPLET, WAS CHILD BORN   1st ☐  2nd ☐  3rd ☐ | |

**FATHER**

| 7. NAME | (a) First *Narran* | (b) Middle *Earl* | (c) Last *Hearn* | 8. COLOR OR RACE *Black* |
|---|---|---|---|---|
| 9. AGE (At time of this birth) *21* YEARS | 10. BIRTHPLACE (State or foreign country) *Texas* | 11a. USUAL OCCUPATION *Truck driver* | 11b. KIND OF BUSINESS OR INDUSTRY *US Army* | |

**MOTHER**

| 12. MAIDEN NAME | (a) First *Susan* | (b) Middle *Diane* | (c) Last *Ross* | 13. COLOR OR RACE *Black* |
|---|---|---|---|---|
| 14. AGE (At time of this birth) *18* YEARS | 15. BIRTHPLACE (State or foreign country) *Texas* | 16. CHILDREN PREVIOUSLY BORN TO THIS MOTHER (Do NOT include this child) | | |
| | | a. How many OTHER children are now living? *0* | b. How many OTHER children were born alive but are now dead? *0* | c. How many children were born dead (fetal deaths after 20 weeks pregnancy)? *0* |

| 17. INFORMANT *Susan Hearn* | | |
|---|---|---|
| 18. I hereby certify that this child was born alive on the date stated above   at *8:21P* m. | 19a. ATTENDANT'S SIGNATURE | 19b. ATTENDANT AT BIRTH   M.D. ☐  D.O. ☐  MIDWIFE ☐  OTHER ☐ |
| | 19c. ATTENDANT'S ADDRESS | 19d. DATE SIGNED *November 6, 1978* |
| 20a. REGISTRAR'S FILE NO. | 20b. DATE REC'D BY LOCAL REGISTRAR | 20c. REGISTRAR'S SIGNATURE |

**FOR MEDICAL AND HEALTH USE ONLY (This Section MUST be filled out)**

| 21. LEGITIMATE? *Yes* | 22. LENGTH OF PREGNANCY *40* COMPLETED WEEKS | 23. WEIGHT AT BIRTH *7* LB *7* OZ. | 24. WAS EYE PROPHYLAXIS USED?   YES ☑  NO ☐ |
|---|---|---|---|
| 25. WAS SEROLOGIC TEST MADE?   YES ☑  NO ☐ | 26. WAS PRENATAL CARE GIVEN? IF YES, CIRCLE MONTH OF PREGNANCY OF FIRST VISIT FOR PRENATAL CARE.   YES ☑  NO ☐   ①  2  3  4  5  6  7  8  9  10 | | |
| 27. CONGENITAL OR OTHER ABNORMALITY?   NO ☐  YES ☐ | IF YES, DESCRIBE | | |

COMPLETED BY *Jimmie Waltmore*

A43

**DALLAS COUNTY HOSPITAL DISTRICT**

DALLAS, TEXAS

**CONSENT FOR TREATMENT OF NEWBORN**
**AND CIRCUMCISION**

Unit # 11 - 7 79

Name _____ 0778-457

Address _____

Birthdate 67 10 82   HEARN  B/N

Classification 23 CIS   NB SUSAN   858674  TC

OP ☐   ER ☐   IP ☐   Admit # _____

_____        _____
Mother's Name                    Unit No.

I, hereby authorize the hospital staff and the medical staff of the Dallas County Hospital District to administer any treatment as may be deemed necessary or advisable in the diagnosis and treatment of my child which is expected to be delivered during this hospital stay.

SIGNED: _____
                          Father

or

SIGNED: X SUSAN HEARN _____
                          Mother

WITNESS: Carla Cauntern _____

If the baby is a boy, I hereby authorize a physician at the Dallas County Hospital District to circumcise my baby.

SIGNED: _____
                          Father

or

SIGNED: _____
                          Mother

WITNESS: _____

DATE: 11/6/78 _____

E15

FORM NO. 50470

## DALLAS COUNTY HOSPITAL DISTRICT
### DALLAS, TEXAS
### PHYSICIAN'S ORDER SHEET

11·7 78

0338-657

**DOCTOR:** Your orders are being automatically copied.
Please write or print legibly. USE A BLACK BALLPOINT PEN.
**NURSE:** If the Doctor did not use all the lines in a
segment, mark thru blank lines.
For non-floor stocked drugs indicate in the X column.
**CLERK:** Addressograph all four spaces before placing
in the charts.

67 10 82
HEARN  B/M
23-CIS    NB SUSAN
858674   TC;

| DATE TIME | ALLERGIES: | CHARGE CODE | QTY. | X | DATE: 07-6-78 |
|---|---|---|---|---|---|
| | Aqua Mephyton 1mg. IM | | | X | |
| 11-6-78 | Aq. Na. Penicillin 50000 u. IM | | | | |
| | Jerry MD | | | | |
| | Chr Strudd RN. 215 | | | | |
| | | | | | |
| 11/9 | 1) Discharge Home | | | | DATE: |
| | 2) $S_{2O}$ c̄ Fe | | | | |
| | 3) RTC WB in 2 mos | | | | |
| | upsa | | | | |
| | Steven Bundewalt RN/1230 | | | | |
| | | | | | DATE: |

67 10 82
HEARN B/M
23-CIS   NB SUSAN
TC;

67 10 82
HEARN B/M
23-CIS   NB SUSAN
067  11-6-78 858674  TC;

003

FORM NO. 55970 (REV. 6-77)

**DALLAS COUNTY HOSPITAL DISTRICT**

DALLAS, TEXAS

**NEWBORN ADMISSION RECORD**

Unit # 11-778
Name 0393-457
Address
Birthdate 7-10-82
Classification HEARN   B/H
23-CIS   NB SUSAN
-OP ... VER ... 11+RD(-78A00674   TC

| | | **DELIVERY ROOM INFORMATION** | |
|---|---|---|---|

**MOTHER:**

NAME: Hearn, Susan     DATE 11/6/78   AGE 18

CLINIC ✓  NON-CLINIC _____ PRIVATE _____  *IF PRIVATE PATIENT – DESIGNATE DOCTOR FOR BABY*

GRAVIDA 1  PARA 0  E.D.C. Nov 13, 1978

PREGNANCY COMPLICATIONS none

BLOOD GROUP A  RH +  ANTIBODY TITER(S) _____

PRENATAL SEROLOGY NN  DATE _____

TREATMENT _____

(DELIVERY SEROLOGY) neg

**LABOR:**

PRESENTATION C  MEMBRANES RUPTURED 2  HOURS BEFORE DELIVERY

ANALGESIA – ☒ NARCOTIC Demerol  DOSE 25 mg IV  LAST DOSE GIVEN 1840

ANESTHESIA – ☒ LOCAL  ☐ CONDUCTION  ☐ GENERAL

DURATION OF LABOR 17 hrs 21 min  DELIVERY TIME 2021

ACCIDENTS OF LABOR none   DELIVERY { SPONTANEOUS ✓ / OPERATIVE (SPECIFY) _____

PLACENTA & CORD ABNORMALITIES 3 vessels

SEX male  WEIGHT 7 LBS. 7 OZS. 3385 GRAMS

| APGAR RATING | 0 | 1 | 2 | |
|---|---|---|---|---|
| HEART RATE | | 0 | X | VERNIX (QUANTITY, STAINING) meconium stained |
| RESPIRATORY EFFORT | | 0 | X | RESPIRATION: IMMEDIATE _____ DELAYED ✓ INTERVAL 1 min |
| MUSCLE TONE | 0 | | X | RESUSCITATION: DESCRIBE bagged with O₂ |
| REFLEX | 0 | | X | and DeLee suction below cords |
| COLOR | 0 | X | | |
| TOTAL: | | | | |

ABNORMALITIES DETECTED none

Left margin notations:
DATE
DATE/REQU
DIAG:
PHYSICI
DATE/TIME/MT:
IN LAB
DATE/TIME
REPORTED
REMARKS
X SERVI
X Group &
Rh Ge:
Antibc
Antibc
Antiboo
Eluate
X Direct C
Hepatitis
Confirmate
Other

CORD BLOOD OBTAINED: YES ☐  NO ☐
EMERGENCY COOMBS & TYPING ☐
ROUTINE COOMBS & TYPING ☐
PROPHYLACTIC EYE CARE ☐

SIGNATURE Steve M Alley MSIV/Welsh M.D.   049

FORM NO. 40900 (REV. 2/70)

"B" D                    **PROGRESS NOTES**

| DATE | TIME | |
|------|------|---|
| 11/7 | 3320 | |
| | | 98 |
| | | Doing well |
| | | Wilson |
| | | |
| 11/8 | 3340 (82o) | |
| | | 98+ |
| | | Doing well |
| | | Wils— |
| | | |
| 11/9 | 3340 (840) | |
| | | 98 |
| | | Stable |
| | | Wilson |

**ADMISSION NOTE**

| DATE | TIME | |
|------|------|---|
| 11/6/78 | 2040 | 3385 gm Apgar 2/9 ♂ infant, product of an 18 y/o BF, |
| | | G₁P₀, EDC 10/23, EGA 40 wks by 1ˢᵗ exam & 39 wks by FHTs |
| | | AROM 2 hrs. PTD revealed thin meconium. Mother received |
| | | 50 mg Demerol IV over 2 hrs PTD. Pregnancy was uncomplicated. |
| | | Infant has poor initial respiratory effort associated with |
| | | bradycardia and was bagged with O₂. DeLee suction was |
| | | performed; no meconium below the cords. After ~1 min. of |
| | | resuscitation heart rate increased to 150/min. EGA by |
| | | exam 42-43 wks. |
| | | Steve B. Alley, MS IV |
| | | Wilson |

| DATE | TIME | ADMISSION ORDERS |
|------|------|------------------|
| 11/6/78 | 2040 | 1) Admit to NBN |
| | | 2) Routine care. |
| | | 3) Observe for respiratory distress. |
| | | Steve B. Alley, MS IV |
| | | Wilson |

## NEWBORN PHYSICAL EXAMINATION

Date of Examination: 11/7/78    Time: 1045    Age at Examination: 16 hrs.

Weight: 3385 gm   Head Circumference: 35 cm   Anterior Fontanel: 1.5 x 1.5 cm   Resp. Rate: 32

Length: 50.1 cm   Chest Circumference: 34 cm   Posterior Fontanel: closed   Heart Rate: 148

**GENERAL APPEARANCE:** (maturity, activity, cry, nutrition, obvious abnormalities, etc.)
quiet but alert & active post-term infant; infant did not cry during exam

**SKIN:** (rashes, vernix, dryness, birth marks, trauma, edema, petechiae, freckles, pigmentation, etc.)
dry, extensive desquamation over hands, feet & trunk; faint Mongolian spot over buttocks pigmented pinnae genitalia, axilla

**COLOR:** (pallor, cyanosis, flushing, plethora, jaundice, etc.)
no jaundice or cyanosis

**HEAD:** (describe fontanels, shape, caput, craniotabes, cephalhematoma, dermal sinus, etc.)
AF Flat; no cephalhematoma or craniotabes

**EYES:** (abnormalities, trauma, conjunctivitis, edema, pupil size, red reflexes, etc.)
sclera clear; PERRL; + red reflex blat.

**ENT:** (anomalies, nasal congestion or obstruction, infection, etc.)
no obstruction or cleft

**NECK:** (mobility, masses, etc.; include CLAVICLES.)
no masses, clavicles intact

**THORAX:** (shape; respiratory rate, rhythm and depth; signs of respiratory distress, etc.; include examination of BREASTS.)
symmetrical, regular resp, no retractions or grunting breast 8 mm bilat.

**LUNGS:** (rales, rhonchi, dullness, etc.)
clear bilat.

**HEART:** (PMI, size, heart rate and rhythm, murmurs, heart tones, etc.)
PMI LLSB, RR $S_1, S_2$, no (m) or gallop + femoral pulses bilat.

**ABDOMEN:** (masses, size, peristalsis, etc.; include hernias)
liver ↓ 2 cm; no spleen or other masses

**UMBILICAL CORD:** (describe appearance and color, odor, infection, hernia, pulsations, cord vessels, etc.)
WNL

**GENITALS:** { Male - undescended testes, hydrocele, etc. / Female - discharge, etc. }
testes ↓↓ upper scrotum; rugae cover

**TRUNK AND SPINE:** (abnormalities including pilonidal dimple or sinus, etc.)
no dimple or sinus

**EXTREMITIES:** (abnormalities, positional defects, edema, muscle tone, staining of the nails, mottling, cyanosis, etc.)
hypertonic; nails past finger tips ankle flexion 0°, square window 0°

**REFLEXES:** (moro, hand grasp, toe grasp, root, suck, swallow, gag, DTR's, etc.)
poor moro: minimal abduction without cry + weak cry good hand & toe grasp; good suck DTR; 2+ patellar bilat

**ANUS:**
patent

AGA
**IMPRESSION:** 42-43 wk infant with poor moro - fair moro

Steve B. Alley, MS IV / Wilson M.D.

11·7 78

0338-657

·DALLAS COUNTY HOSPITAL DISTRICT
DALLAS, TEXAS
DEPARTMENT OF NURSING SERVICE
MEDICATION PROFILE
DATE: 11-6-78
ALLERGIES:

67 10 82
HEARN   B/M   11-06-78
23-CIS   NB SUSAN

067   11-06-78 858624  TC

| REQNO: | DOSE 1mg | RT III | FREQ once | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |

aqua Mephyton

19 20 21 22 23 24 01 02 03 04 05 06

| REQNO: | DOSE 50,000U. | RT III | FREQ once | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |

aq Na Penicillin

19 20 21 22 23 24 01 02 03 04 05 06

| REQNO: | DOSE | RT | FREQ | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |
| | | | 19 20 21 22 23 24 01 02 03 04 05 06 | |

| REQNO: | DOSE | RT | FREQ | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |
| | | | 19 20 21 22 23 24 01 02 03 04 05 06 | |

| REQNO: | DOSE | RT | FREQ | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |
| | | | 19 20 21 22 23 24 01 02 03 04 05 06 | |

| REQNO: | DOSE | RT | FREQ | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |
| | | | 19 20 21 22 23 24 01 02 03 04 05 06 | |

| REQNO: | DOSE | RT | FREQ | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |
| | | | 19 20 21 22 23 24 01 02 03 04 05 06 | |

| REQNO: | DOSE | RT | FREQ | BD _/_/_ED _/_/_ |
|---|---|---|---|---|
| | | | 07 08 09 10 11 12 13 14 15 16 17 18 | |
| | | | 19 20 21 22 23 24 01 02 03 04 05 06 | |

SIGNATURES: C.S. Chester

2004

## PARKLAND MEMORIAL HOSPITAL

### NEWBORN GRAPHIC SHEET

67 10 82
HEARN B/M
23-CIS   NB SUSAN
867           838674   TCL

| Date | | | 11-6-78 | | | | 11-7-78 | | | | 11-8-78 | | | | 11-8-78 | | | | 11-10-78 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hospital Day | | | adm | | | | 1 | | | | 2 | | | | 3 | | | | 4 | | | |
| Hours | | | 0200 | 0800 | 1400 | 2000 | 0200 | 0800 | 1400 | 2000 | 0200 | 0800 | 1400 | 2000 | 0200 | 0800 | 1400 | 2000 | 0200 | 0800 | 1400 | 2000 |
| Resp. | Pulse | Temp. | | | | | | | | | | | | | | | | | | | | |
| 100 | 200 | 100° | | | | | | | | | | | | | | | | | | | | |
| 90 | 190 | 99° | | | | | | | | | | | | | | | | | | | | |
| 80 | 180 | 98° | | | | | | | | | | | | | | | | | | | | |
| 70 | 170 | 97° | | | | | | | | | | | | | | | | | | | | |
| 60 | 160 | 96° | | | | | | | | | | | | | | | | | | | | |
| 50 | 150 | 95° | | | | | | | | | | | | | | | | | | | | |
| 40 | 140 | 94° | | | | | | | | | | | | | | | | | | | | |
| 30 | 130 | 93° | | | | | | | | | | | | | | | | | | | | |
| 20 | 120 | 92° | | | | | | | | | | | | | | | | | | | | |
| | | Bed Temp. | | | | | | | | | | | | | | | | | | | | |
| Formula | | 07-1500 | | | | | | | | | | | | | | | | | | | | |
| | | 15-2300 | | | | | | | | | | | | | | | | | | | | |
| | | 23-0700 | | | | | | | | | | | | | | | | | | | | |
| Voided | | 07-1500 | | | | | | | | | | | | | | | | | | | | |
| | | 15-2300 | | | | | | | | | | | | | | | | | | | | |
| | | 23-0700 | | | | | | | | | | | | | | | | | | | | |
| Stools | | 07-1500 | | | | | | | | | | | | | | | | | | | | |
| | | 15-2300 | | | | | | | | | | | | | | | | | | | | |
| | | 23-0700 | | | | | | | | | | | | | | | | | | | | |
| Weight | | | 3350 | | | | 3320 | | | | 3340 | | | | 3380 | | | | | | | |

MEDICATIONS

11·7 78

0393-657

**DALLAS COUNTY HOSPITAL DISTRICT**

**DALLAS, TEXAS**

67 10 82
HEARN   B/H
23-C15   NB SUSAN
857        858674   TC12

**DEPARTMENT OF NURSING SERVICE**

**NURSES NOTES**

Hearn Susan

| DATE | TIME | NOTES |
|------|------|-------|
| 11/7 | 7-3 | Color appears Pink, cry strong Active. Helen & Sherry C nA fe's nursA aide. |
| 11/7/78 | 2000 | Feeding well. Active + alert. Strong cry. Color appears to be pink. Freddie Brenda Head Aide. |
| 11-8 | 11-7 | Active. Aluh cry strong feds firm. Shirley Coleman - nurse aide |
| 11/8 | 7-3 | Fed ○ air + ○. Pink c dry peeling hand's + body. Fairly active. Barbara Jake, nurse aid |
| 11/8/1 | 2000 | Feeding well. Active + alert. Strong cry. Color appears to be pink. Freddie Brenda Head aide. |
| 11/9/78 | 11-7 | Color seem Pink Active Alert Nsg. Care given strong cry. feed well. Beulah Tyler. n. aide. |
| 11-9 | (1345) | B/m discharged to mother. Thisreceipts checked. Care of the penis + Cord explained. Formula, feeding care + readings for mothers reviewed. mother instructed that Person is to take her Downstairs Merie ann Jones - no |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

280

# PARKLAND MEMORIAL HOSPITAL
REPORT OF EMERGENCY ROOM ADMISSION

16599043 2 | E2647 | 01/10/89 | 18:09 | 671082

| LAST / FIRST / MIDDLE | MAIDEN | AGE | SEX | MARITAL STATUS | RACE | DATE OF BIRTH | PREV. ADM. | TYPE PAY | STATUS |
|---|---|---|---|---|---|---|---|---|---|
| HEARN, YOKAMON LANEAL | 545585 | 010 | M | S | B | [redacted] | N | 10F | |

| ARRIVED BY | LOCATION & NATURE OF ACCIDENT AND CHIEF COMPLAINT | OPC NO. REGISTER |
|---|---|---|
| CAR | 2 N P CONSULT | |

| PATIENT ADDRESS | STATE | PATIENT PHONE | BIRTH PLACE-CITY-STATE | EMERGENCY NOTIFICATION PHONE |
|---|---|---|---|---|
| [redacted] | TX | 214-000-0000 | PMH DALLAS, TX | 214-374-8707 |

| PERSON TO NOTIFY | EMERGENCY NOTIFICATION ADDRESS / CITY | STATE | E NOT REL. | GUARANTOR PHONE |
|---|---|---|---|---|
| HEARN, SUSAN | DALLAS | TX | 2 | 214-000-0000 |

| GUARANTOR NAME | GUARANTOR ADDRESS | STATE | ZIP CODE | RELATION TO PATIENT |
|---|---|---|---|---|
| HEARN, SUSAN DIANA | [redacted] | TX | 75203 | 3 |

| GUARANTOR EMPLOYER | GUARANTOR EMPLOYER ADDRESS | STATE | GUARANTOR EMPLOYER PHONE |
|---|---|---|---|
| | | | |

| INSURANCE CO NAME | CO NO | PLAN NO | GROUP NO | POLICY-CERTIFICATE NO | NAME OF INSURED |
|---|---|---|---|---|---|
| | | | | | HEARN, SUSAN DIANA |

| MEDICARE NO | MEDICAID NO | NAME OF INSURED | EMPLOYER OF INSURED |
|---|---|---|---|
| | | | |

| ALLERGIES | GUAR. CTY. | POLICE NOTIFIED BY | SERVICE | COUNTY | RELIGION |
|---|---|---|---|---|---|
| NKA | | | PSY1 | 057 | BAP |

I GRANT PERMISSION TO THE MEDICAL STAFF OF DALLAS COUNTY HOSPITAL DISTRICT TO PERFORM ANY MEDICAL OR SURGICAL TREATMENT AND TO ADMINISTER SUCH ANESTHETICS AND/OR DRUGS AS MAY BE DEEMED NECESSARY IN THE DIAGNOSIS AND TREATMENT OF SAID PATIENT. FURTHERMORE I STATE THAT THE ABOVE AND FOREGOING FACTS AND INFORMATION ARE TRUE AND CORRECT TO MY PERSONAL KNOWLEDGE.

SIGNED X Susan D. Hearn
RELATIONSHIP IF SIGNING FOR PATIENT
WITNESS [signature]

**PRIOR TREATMENT**

TREATMENT RENDERED PRIOR TO ARRIVAL AT HOSPITAL:

I.V.'S

MEDICATIONS AND TIME OF ADMINISTRATION

DEFIBRILLATION AND TIME

DEPOSITED IN SAFE: ☐ WATCH ☐ RINGS ☐ WALLET ☐ KEYS $______ CASH ☐ ______
DEPOSITED BY: DATE BY

OTHER PROPERTY: ☐ UNDER WEAR ☐ SOCKS ☐ SHOES ☐ OVERALLS COVERALLS ☐ HAT ☐ SHIRT BLOUSE ☐ SKIRT PANTS ☐ SUIT DRESS ☐ JACKET ☐ TOP COAT OVERCOAT
CHECKED BY: DATE RELEASED BY

DEPOSITED IN SECURITY: ☐ GLASSES ☐ DENTURES
BY:

LABORATORY: SERVICES RENDERED - (PLEASE CIRCLE)

4639 CBC-DIFF, 4600 CBC, 2957 $SMA^6$, 2954 $SMA^{12}$, T & C:______, 4875 BLOOD GASES, TOXICOLOGY, FBS:, 4692 ART SEROLOGY, 6283 CARDIAC ENZYMES

4515 AMYLASE:, 4707 URINALYSIS:, 4859 LIVER BATTERY, 4031 SGOT, 6277 PROTIME & PTT, CULTURE

OTHER — X-RAY ORDERED

TRAYS ORDERED: FOLEY CATH, DRAINAGE BAG, URIMETER, VEN, L P, C D, PAR, LEVIN TUBE, ASEPTO, SUTURE, I & D, TRACH

$O_2$ MASK, CANNULA, IPPB, RESPIRATOR EKG, CVP, SUTURE REMOVAL SET, REQUEST CHART

ORDERS & TREATMENTS — NURSE MUST INITIAL & RECORD TIME WHEN ORDER OR TREATMENT IS COMPLETED

| TIME ORDERED | | | CHARGES |
|---|---|---|---|
| | B/P 110/70 T. 36.5 P. 76 R. 12 TIME TAKEN 1840 | NURSING PERSONNEL INITIALS [initials] | LABORATORY $ |
| | TETANUS TOXOID ______ DIPTHERIA/TETANUS TOXOID ______ | | DRUGS $ |
| | | | X-RAYS $ |
| | | | CENTRAL SUPPLY $ |
| | | | TREATMENTS $ |
| | | | REGISTRATION $ |
| | | | PATIENT ALLOWANCE $ |
| | | | CASH PAYMENT $ |

PRIMARY DIAGNOSIS: Adjust Rx — NO. SUTURES — NET TOTAL $

DISPOSITION: D/C H — APPOINTMENT TO.

PHYSICIAN'S SIGNATURE / TIME DISCHARGED: [signature] — INSTRUCTIONS GIVEN? ☐ YES — PATIENT SIGNATURE IF INSTRUCTIONS GIVEN X

005

MEDICAL RECORD

**DALLAS COUNTY HOSPITAL DISTRICT**

**DALLAS, TEXAS**

**EMERGENCY ROOM RECORD**

**CONTINUATION**

5  1 6,

00 67 10 82   410
1/10/89  C 1-599043
HEARN, YOKANON LAMEAL
SCF ████████  B.N ███

| NAME: | Last | First | Middle |
|-------|------|-------|--------|

| Emergency Room Number: | Date |
|------------------------|------|

| Time Ordered | Medications and Treatments (continued) |
|--------------|----------------------------------------|
| 1-10-89 1905 | 10 y/o BM who lives w/ mother brought by mother to YER after at the suggestion of school counselor today. Pt wrote a note stating "I wish to die tonight and never see the world again". Pt states that he wrote this letter in response to the news that his teacher was leaving his class. Pt later identified his teacher as his "best friend". Pt states that he no longer wants to die + that this was resolved by a talk that he had w/ his school counselor. Mother states that pt has not demonstrated any other unusual behavior in past recently. States that pt has no prev ↑ a MR conditions. States that pt does well in school (A's + B's). Plays well w/ peers, no conduct problems @ school. |

FORM NO. 55090 (REV. 2/77)

006

MEDICAL RECORDS

**DALLAS COUNTY HOSPITAL DISTRICT**

**DALLAS, TEXAS**

**EMERGENCY ROOM RECORD**

**CONTINUATION**

00 67 10 82    71
01/10/29  C 1-599043
HEARN, YOKAMON LANEAL
1 CF                B/M  52447

| NAME: | Last | First | Middle |
|---|---|---|---|

| Emergency Room Number: | | Date | |
|---|---|---|---|

| Time Ordered | Medications and Treatments (continued) |
|---|---|
| 1-10-89 1920 | Moth stats that pt attds school during the day while she works + that pt is kept by his grandmother after school until she picks him up. Moth cannot identify any problem w/ child + stats that prior to this event had no concerns about him. Pt + moth deny nervous/other sxs |
| | MSE → Appears well dressed clean neat in good eye contact. Speech → nl rate + volume goal directed. Mood euthym. Affect → Appropriate. Sens ok y. Good fd of knowledge. behav 3 obj; immd. + 2 out 3 min. similar abs concrete. T-cntnt → ⊖ A/V hallucations ⊖ Delusions. ⊖ S/H ideations at present |
| | A/P → Case discussed w/ Dr Sue Moss who concurred w/ Adjustment Rx. No evidence of psychosis @ this time |

006

## DALLAS COUNTY HOSPITAL DISTRICT

### DALLAS, TEXAS

### EMERGENCY ROOM RECORD

#### CONTINUATION

| NAME: | Last | First | Middle |
|---|---|---|---|

| Emergency Room Number: | | Date |
|---|---|---|

| Time Ordered | Medications and Treatments (continued) |
|---|---|
| | Pt *denies* cnt suicd idea |
| | Does not appr in acut dng of |
| | hm to self |
| | Plan ① CICI appt f. 1-16-89  8:30 |
| | f fat follow up |
| | ② mother giv # f family sucide |
| | lng tm follow up if indicatd |
| | ③ suicide crss #s giv |
| | ④ instructd to ret to ЧSR |
| | ⌐ |
| | *[signature]* |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**006**

FORM NO. 55090 (REV. 2/77)

MEDICAL RECORDS

**DALLAS COUNTY HOSPITAL DISTRICT**
**DALLAS, TEXAS**

**PSYCHIATRIC EMERGENCY SERVICES**
**NURSING ASSESSMENT**

```
00 67 10 82    41C
01/10/89  C 1.599C43
HEARN, YOKAMON LANEAL
ICF  ████████   B/M  E2647
```

ARRIVED VIA:  MIW _____  DPD _____  (NPC) _____  ANOTHER AREA _____  OTHER _____  TIME/ 335

LAW OFFICER'S REPORT: _____ None _____

NAME OF M.D. INFORMED: _____ Dr. Collins _____

SYSTEM ASSESSMENT:  SKIN COLOR:  PALE _____ FLUSHED _____ MOTTLED _____ OTHER Normal

SKIN TEMP:  COOL _____ DRY _____ WARM ✓ HOT _____ DIAPHORETIC _____

PULSES:  STRONG ✓ WEAK _____ THREADY _____ BOUNDING _____

RESP:  REGULAR ✓ SHALLOW _____ TACHYPNEA _____ BRADYPNEA _____

NEURO:  ORIENTED TO TIME: _____ PLACE _____ PERSON _____

OBEYS COMMANDS ✓ REFUSES COMMANDS _____

VERBALIZES APPROPRIATELY ✓ CONFUSED _____

GENERAL DESCRIPTION OF PATIENT: 10 B/m, wearing blue jeans
(To aid in escapes)  and green Tshirt.

BEHAVIOR ON ADMISSION: _____ Cooperative _____

PATIENT SEARCHED: YES _____ NO ✓ BY WHOM: _____

VALUABLES ON PATIENT: $ NA _____  DISPOSITION: _____
JEWELRY: _____  DISPOSITION: _____
MEDICATIONS: _____  DISPOSITION: _____
WEAPONS: _____  DISPOSITION: _____
OTHER: _____  DISPOSITION: _____

PATIENT SECLUDED:  YES/NO  REASON FOR SECLUSION _____

ASSISTED BY SECURITY: YES/NO  TIME:  #1 _____ #2 _____ #3 _____ #4 _____ #5 _____

MIW PATIENT RIGHTS GIVEN:  YES: N/A  TIME: _____ INTERPRETER USED: YES/NO  NAME _____

FAMILY CONTACTED: YES/NO  TIME _____ PERSON CONTACTED _____

RELATIONSHIP: _____  TELEPHONE: _____

PLACED UNDER OPC:  YES/NO  REASON: _____

| MEDICATION | DOSAGE | TIME | ROUTE | SITE | INIT. | RESPONSE TO MEDICATION V.S.30 |
|---|---|---|---|---|---|---|
| ∅ | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

MIW — MENTAL ILLNESS WARRANT   DPD—DALLAS POLICE DEPT.   NPC— NEURO/PSYCH. CONSULT   **005A**

# VITAL SIGNS c̄ 4 HOURS

| TIME | BP | HEART RATE | RESPIRATIONS | TEMPERATURE | SIGNATURE |
|------|-----|------------|--------------|-------------|-----------|
| 1840 | 110/70 | 76 | 12 | 98 | AJ |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

ISCHARGED TO: MDC_____ HOME __ WITH FAMILY YES/NO OTHER_____ TIME 2001

/UP APPT YES/NO LOCATION M HMR _____ DATE_____ TIME_____

.A. COUNSELOR: YES/NO   CLOTHING/VALUABLES: TO PATIENT _____ FAMILY _____ OTHER _____

ENGTH OF TIME IN E.R. 2⁰ _____

|  | 7-3 | 3-11 | 11-7 |
|---|-----|------|------|
| IGNATURE OF R.N. _____ |  | Eulala Chapman RN |  |

ADDITIONAL NURSES' NOTES: _Pt cooperative Mother present._
_Mother stated she found a "suicide note"_
_written by "my boy" today. Eulala Chapman_
_DK c̄ follow-up to Crisis Intervention_
_E. Chapman_

EXHIBIT 15

2

3

# Assessment of Yokamon Hearn
# for Fetal Alcohol Syndrome

by

**PABLO STEWART, M.D.**
**824 Ashbury Street**
**San Francisco, California 94117**
**415-753-0321**
**415-753-5479**

Counsel for Yokamon Hearn, a prisoner on death row in Texas, have asked me to review historical data concerning Mr. Hearn to determine whether he suffers from Fetal Alcohol Syndrome.

I am Board Certified Psychiatrist who has over 25 years of experience in the diagnosis and treatment of individuals who suffer from Fetal Alcohol Syndrome (FAS) and Fetal Alcohol Effects (FAE). I am licensed to practice medicine in the states of California and Hawaii. I am an Associate Clinical Professor of Psychiatry at the University of California, San Francisco School of Medicine, where I have been on the faculty since 1986. I have served as the Director of Forensic Psychiatric Services for the City and County of San Francisco as well as the Director of the Substance Abuse Inpatient Unit at the San Francisco Veterans Hospital. Serving in these capacities, I have diagnosed and treated at least 1000 patients with FAS/FAE. I currently serve as the Psychiatric Consultant for the Hawaii Department of Human Services. In this capacity, I am responsible for setting policy as well as evaluating both adults and children who suffer from FAS/FAE. My CV is attached for your review.

The information I have reviewed is the following:

1.      The medical record of Mr. Hearn's birth.

2.      The records of Susan Diane (Hearn) Johnson, Mr. Hearn's biological mother, concerning Ms. Johnson's history of and treatment for drug and alcohol abuse.

3.      A memorandum of an interview with Ms. Johnson conducted March 4, 2004, by Randi Wall Chavez.

4.      Four childhood photographs of Mr. Hearn, depicting him at approximately two years of age.

5.      Two adult photographs of Mr. Hearn, depicting him at the time he was admitted to death row in Texas.

The information I have reviewed suggests very strongly that Mr. Hearn has Fetal Alcohol Syndrome.

Fetal Alcohol Syndrome (FAS) is a pattern of mental and physical defects which develops in some unborn babies when the mother drinks alcohol during pregnancy. A baby born with FAS may be seriously handicapped and require a lifetime of special care. Some babies born with alcohol-related birth defects, including smaller body size, lower birth weight, and other impairments, do not have all the classic FAS symptoms. These symptoms are sometimes referred to as Fetal Alcohol Effects (FAE). Researchers do not necessarily agree on the precise distinctions between FAS and FAE. There is agreement, however, on the cause of FAS/FAE. Alcohol in a pregnant woman's bloodstream circulates to the fetus by crossing the placenta. There, the alcohol interferes with the ability of the fetus to receive sufficient oxygen and nourishment for normal cell development in the brain and other organs.

The data concerning Mr. Hearn strongly supports a diagnosis of FAS:

a.    By her own account, Mr. Hearn's mother drank alcohol regularly and excessively during the first six months of her pregnancy with Mr. Hearn. She drank nearly every day until she passed out, or until she was able to suppress the voices that she was hearing. (Ms. Johnson has recently been diagnosed with Bipolar Disorder and Paranoid Schizophrenia, so the voices were likely from an ongoing psychotic illness.)

b.    At birth, Yokamon's records reveal that his reflexes were impaired. According to the birth records he had "poor moro-minimal abduction without cry." This neurological abnormality reflects underlying central nervous system defects associated with FAS.

c.    Yokamon's birth records also reveal that his respiration – breathing – was delayed for one minute. In addition, his initial Apgar score, a quick test performed at one minute after birth to determine the physical condition of a newborn, was extremely low – 2 out of a possible score of 10. An Apgar score below 5 indicates that the infant needs immediate assistance in adjusting to his or her new environment. These signs reflect the kind of problematic birth that is consistent with FAS.

d.    Yokamon's childhood photographs reveal classic signs that are uniquely characteristic of FAS. His nasal bridge is sunken or concave rather than convex. His filtrum, the vertical groove that is normally present between the nose and upper lip, is absent. His upper lip is thin.

In my opinion, Mr. Hearn suffers from Fetal Alcohol Syndrome.

One of the frequently occurring consequences of FAS is mental retardation. Indeed, FAS is the most commonly-identified cause of mental retardation. I have been informed by counsel for Mr. Hearn that other experts have determined that Mr. Hearn has mental retardation. Since he has FAS, it is likely that the major contributing factor of mental retardation in Mr. Hearn is FAS.

May 20, 2005

_Pablo Stewart_

Pablo Stewart, MD

# EXHIBIT 16

**Dale G. Watson, Ph.D.**

*Clinical & Forensic Neuropsychology*
*2160 Appian Way, Suite 105*
*Pinole, CA 94564*
*Office: 866-536-5301, Fax: 925-757-3690*
*Email: watson.dale@comcast.net*

May 19, 2007

Richard Burr, Esq.
906 East Jackson
Hugo, OK 74743

Re: Yokamon Hearn

Dear Mr. Burr:

As you are aware I was initially retained by you and Naomi Terr as the attorneys for Yokamon Hearn to review previous test results obtained with Mr. Hearn. Specifically, I reviewed the test results obtained with Mr. Hearn by Mary Alice Conroy, Ph.D., Randall Price, Ph.D., and Thomas G. Allen, Ph.D.

Focusing on the measures of intellectual abilities completed by Drs. Conroy, Price and Allen, I determined that, in my professional judgment, there were errors in the scoring completed by each of the evaluators. On the Wechsler Adult Intelligence Test - 3rd Revision (WAIS-III) protocol completed by Dr. Conroy there were scoring errors on items 4 and 9 of the Vocabulary subtest that had the effect of lowering the Verbal and Full Scale IQs by one point each to 72 and 73 respectively. The Performance IQ remained unchanged at 78. The WAIS-III protocol prepared by Dr. Price contained a scoring error on item 20 of the Vocabulary subtest with a resulting change in the Verbal IQ from 80 to 79 and in the FSIQ from 88 to 87. The Performance IQ remained unchanged at 99. Finally, on the Stanford Binet Intelligence Scales – Fifth Revision (SB-V) Dr. Allen appears to have made a simple addition error on the sum of the Nonverbal Scaled Scores with the corrected score resulting in a change in the Nonverbal IQ from 91 to 92. In addition, there was an error in translating the raw score of the Verbal Fluid Reasoning score to a Scaled Score. The resulting change in the Verbal IQ was from 96 to 95. There was no change in the SB-V Full Scale IQ which remained 93.

In addition to the analysis reported above, I administered the Woodcock-Johnson III Tests of Cognitive Abilities (WJ-III) to Mr. Hearn. The WJ-III is a measure of intelligence widely used in the school psychology community. The measure was recently re-normed on a large sample of individuals (8,782) matched to the 2005 U.S. census.[1] In addition, the measure is based upon the most comprehensive model of intellectual functioning known as the Cattell-Horn-Carroll (CHC) model. On the WJ-III Mr. Hearn obtained a General Intellectual Ability (GIA) of 87.[2] This score marks limited proficiency levels on measures of intellectual functioning and suggests that Mr. Hearn would find similar tasks that would be performed readily by others of his age to be very difficult. His intellectual functioning is consistent with the average 11 year old child (age range = 8 years 8 months to fourteen years two months). In particular, Mr. Hearn has moderately impaired Processing Speed abilities. He is thus seen to be slow in the completion of relatively easy cognitive tasks, to be slow in learning new information, to be troubled by becoming overwhelmed by complex events, to need extra time to complete even routine tasks, and to have difficulties making decisions quickly.

The following chart summarizes the intellectual test findings of the various professionals who have examined Mr. Hearn[3]:

---

[1] The data for the WJ-III Normative Update was originally collected between 1996 to 1999.

[2] The GIA is a measure of global intelligence equivalent to a Full Scale IQ score.

[3] Scores are corrected as noted in the text above.

*Re: Yokamon Hearn*
*Dale G. Watson, Ph.D.*
*May 19, 2007*
*Page 2 of 4*

| Measure | Conroy WAIS-III 5/2005 | Price WAIS-III 11/2006 | Allen Stanford Binet-V 11/2006 | Watson Woodcock Johnson-III NU 2007 |
|---|---|---|---|---|
| Verbal IQ | 72 | 79 | 95 | -- |
| NonVerbal IQ | 78 | 99 | 92 | -- |
| Full Scale IQ | 73 | 87 | 93 | 87 |

Based on these findings I would conclude that Mr. Hearn's intellectual functioning falls above the range required by the first prong of the definition of mental retardation.

Nonetheless, a review of materials related to Mr. Hearn's adaptive functioning suggests that he does have significant deficits in adaptive functioning. James Patton, Ed.D. completed an evaluation of Mr. Hearn's adaptive functioning and concluded that Mr. Hearn does have such deficits. He based this judgment on the results of a quantitative and qualitative evaluation. Dr. Patton noted, "Based on [the results of the Adaptive Behavior Assessment System – II (ABAS-II)), Mr. Hearn clearly meets both of the adaptive behavior criteria of the 2002 AAMR for significant limitations in adaptive behavior. He has scores in two adaptive domains (Conceptual and Practical) that are more than two standard deviations below the mean and he has an overall score (General Adaptive Composite) that is more than two standard deviations below the mean. Furthermore, taking into consideration the standard error of measurement, the third adaptive domain (Social) also can be considered a significant limitation." Dr. Patton's evaluation does suggest the presence of adaptive functioning deficits.

In order to further understand Mr. Hearn's deficits in adaptive functioning in the face of IQ scores generally above the range associated with Mental Retardation/Intellectual Disabilities additional neuropsychological measures were completed with Mr. Hearn. The battery of tests was built around an Expanded Halstead-Reitan Neuropsychological Battery (xHRB). The specific tests administered included: the *Test of Memory Malingering (TOMM)*, the *Portland Digit Recognition Test, Green's Medical Symptom Validity Test (MSVT), Green's Non-Verbal Medical Symptom Validity Test,* the *Word Memory Test (WMT),* the *Validity Indicator Profile (VIP)(Verbal Subtest),* the *Wechsler Test of Adult Reading (WTAR),* the *Wide Range Achievement Test - 3rd Revision (WRAT-3), Conners' Continuous Performance Test - II (CPT II V.5), California Verbal Learning Test (CVLT), Figure Memory Test, Wechsler Memory Scale - 3rd Revision (WMS-III), Seashore Rhythm Test, Speech Sounds Perception Test, Dichotic Word Listening Test, Boston Naming Test,* the *Aphasia Screening Test,* the *Sensory Perceptual Exam, Tactile Form Recognition Test, Pocket Smell Test, Lateral Dominance Examination, Dynamometer, Finger Tapping Test, Grooved Pegboard Test, Tactual Performance Test (TPT), Digit Vigilance Test, Trail Making A & B,* the *H-Words Test, Wisconsin Card Sorting Test (WCST),* the *Booklet Category Test,* and the *Delis-Kaplan Executive Function System (D-KEFS) (selected subtests).*

An examination of the neuropsychological test findings revealed a pattern of strengths and weaknesses in Mr. Hearn's neuropsychological profile. On the General Neuropsychological Deficit Scale (GNDS) (Reitan and Wolfson), a measure summarizing the results of the Halstead Reitan Battery, Mr. Hearn obtained a raw score of 32 - falling within the mild neuropsychological deficit range. In addition, measures of lateralized brain dysfunction, showed a predominance of impairment associated with the left hemisphere of the brain. The left hemisphere, in most right-handed individuals such as Mr. Hearn, is dominant for verbal abilities. The right hemisphere is dominant generally for visual-spatial abilities. On the Left Neuropsychological Deficit Scale Mr. Hearn's score was elevated at 13 in comparison to the Right Neuropsychological Deficit Scale where his score was only 3.[4] In contrast to the GNDS, the Global Deficit Scale GDS (Heaton et al.), which makes corrections for scores based on the individual's age, education, gender and race, Mr. Hearn's score fell within the Below Average range but not in the clearly impaired range. A controversy exists in the literature regarding the necessity of making such demographic adjustments with some arguing that such adjustments simply disguise the presence of brain-related disabilities. This may particularly be the case when adjustments are made for education; dropping out of school may be the consequence of impaired cognitive and

---

[4] Elevations on these scales represent greater levels of impairment. These are raw scores where clinically scores of about 10 or above are frequently associated with structural brain damage.

neuropsychological abilities rather than the cause of poor test scores. As Golden noted, "In some cases . . . age and education corrections can lead to serious problems when the age or education correction corrects for brain injury itself. . . a group of individuals with only a sixth grade education may have been unable to go any further because of a neurological disorder, while others dropped out for economic reasons. The overall effect is that the test is less sensitive to actual (although preexisting) disorders."[5]  For this reason, demographic corrections are perhaps most appropriate in cases of brain injury acquired following the developmental period.  In Mr. Hearn's case, where his limitations appear to be developmental in nature, I would conclude that Reitan and Wolfson's GNDS likely most accurately characterizes Mr. Hearn's abilities and that he does show evidence of brain dysfunction.

Further analysis of the neuropsychological test findings shows a pattern of impairments consistent with a predominance of verbal compared to non-verbal limitations, auditory processing problems, academic skills deficits, auditory memory problems, limitations in his speed of information processing, impulsivity and deficits in verbal problem solving.  For example, Dr. Price's WAIS-III protocol completed with Mr. Hearn revealed a marked discrepancy between an index of Verbal Conceptual abilities (Index Score = 80) and an index of Perceptual Organization (Index Score = 103).  A discrepancy of this magnitude (23 points) was rare at Mr. Hearn's level of intellectual ability within the normative sample, occurring in only two percent of individuals and represents an abnormality in his profile of abilities.[6]  In addition, on the Wechsler Memory Scale - 3rd Revision (WMS-III) Mr. Hearn obtained an Auditory Immediate Memory Index score of 71 − 20 points below his Immediate Visual Memory Index score, which was 91.  The results of the WMS-III suggest that he is likely a poor auditory learner and is slow to learn though he is able to retain information once learned.  The finding of poor auditory processing ability was confirmed by the results of the Dichotic Word Listening Test where his performance fell below the 5th percentile cutoff for impairment bilaterally.  This task required him to identify different words presented simultaneously to the left and right ears via stereo headphones.  This result suggests that he has marked problems in auditory processing particularly on tasks that require him to divide his attention.  Academic skills are also limited with his performance on the Wide Range Achievement Test - 3rd Revision (WRAT-3) demonstrating limitations in reading, spelling and arithmetic.  On the Reading subtest his performance was at the 7th grade level (Standard Score = 82; percentile rank = 12), on the Spelling subtest it was at the 5th grade level (Standard Score = 76; percentile rank = 5) and on the Arithmetic subtest his performance was at the 4th grade level (Standard Score = 70; percentile rank = 2).  These findings were consistent with the findings of Dr. Price who administered the Kaufman-Functional Academic Skills Test with a resulting composite score of 76 falling at the 5th percentile rank and in the Well-Below Average range.  Additionally, referring back to the results of the Woodcock-Johnson − III findings, Mr. Hearn is notably slow in processing speed.  Adding to this finding, the results of the Conners' Continuous Performance Test - II (CPT II V.5) found Mr. Hearn overall to not have a visual attention disorder but he did have an impulsive style so that his responses were fast but inaccurate.  Further, on the Delis-Kaplan Executive Function System (D-KEFS), a battery of tests designed to identify deficits in executive functions, Mr. Hearn demonstrated limitations in verbal (but not non-verbal) problem solving including concrete thinking, poor deductive verbal reasoning abilities, cognitive inflexibility, and problems with verbal inhibition.  Finally, on the Wisconsin Card Sorting Test (WCST), another measure of executive functions, Mr. Hearn exhibited limited problem solving abilities and specific problems in the "Learning to Learn" ability.  In other words, he was slow to understand the underlying requirements of the task despite ongoing feedback designed to allow him to learn the sorting principles.

The implications of these deficits are consistent with an individual with a history of school failure, difficulties paying attention to conversations, poor problem solving, concrete verbal thinking, who is slow to learn from experience and despite an impulsive style displays a slowness in processing information.  Many of his difficulties are so verbally mediated tasks so he will face challenges in his daily life when confronted with tasks that require complex communications, verbal reasoning and verbal learning.  He will perform more

[5] Golden, C.J., Espe-Pfeifer, P. & Wachsler-Felder, J. (2000). Neuropsychological Interpretation of Objective Psychological Tests. New York: Kluwer Academic / Plenum Publishers, pps. 5-6.
[6] Hawkins, K.A. & Tulsky, D.S. (2003). *WAIS-III WMS-III Discrepancy Analysis: Six-Factor Model Index Discrepancy Base Rates, Implications, and a Preliminary Consideration of Utility.* In David S. Tulsky, Donald H. Saklofske, Gordon J. Chelune, Robert K. Heaton, Robert J. Ivnik, Robert Bornstein, Aurelio Prifitera, Mark F. Ledbetter (Eds.) Clinical Interpretation of the WAIS-III and WMS-III. New York: Academic Press, pps. 211-272.

*Re: Yokamon Hearn*
*Dale G. Watson, Ph.D.*
*May 19, 2007*
*Page 4 of 4*

efficiently on tasks that are visual in nature. Mr. Hearn's neuropsychological deficits appear to underlie the previous findings of deficits in adaptive functions particularly in the area of Conceptual functioning. Conceptual functions involve the areas of language abilities (receptive and expressive), reading and writing, and self-direction. These deficits are likely developmental in nature.

If you have questions regarding this brief summary of these evaluation findings please do not hesitate to contact me.

Respectfully submitted,

Dale G. Watson, Ph.D.
Clinical and Forensic Neuropsychologist

# EXHIBIT 17

PRINT
USE BLACK INK

**CUMUL** (Grades K

250-773749-MB05
YOKAMON L HEARN
SSN - 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
STATE ID -

773749

Name: Hearn (Last) Yokamon (First) Laneal (Middle) Sex (M) F

Authority for Birth Record: B.C. # 22673

las Texas (City, State)

Father ______ (Last, First, Middle)

Mother's Maiden Name: Ross Susan (Last, First, Middle)

Mother's Present Name: Hearn Susan (Last, First, Middle)

Guardian / With Whom Does Child Live? Mother

Relation ______ Father's Birthplace ______ Mother's Birthplace ______

Last School Attended Before Coming to Dallas ______ (Name, City, State)

Years in School Before This Year ______

85
88-89

[redacted]

[redacted]

| | Kindergarten | First Grade | Second Grade | Third Grade | Repeat 1st |
|---|---|---|---|---|---|
| Address | | [redacted] | | [redacted] | [redacted] |
| Telephone | | | | 374-9161 | 371-6529 |
| Date Entered | | 9/2/85 | 9/1 | 9-1-98 | 9/2/86 |
| Teacher | | 1B 1B 1B 1B | | 3A 3A 3A 3A 3A 3A | 1C 1C |
| School Name | | | | PC PC PC PC PC PC | White |
| School Code | | 512 512 512 512 | | 132 132 132 132 132 132 | 132 132 |
| | | | | Dorrell BFD BFD BFD BFD | Rogers Durell |
| Days Present | | 26 35 28 29 | | 30 31 28 24 30 25 | 29 32 27 30 30 28 |
| Days Absent | | 2 0 2 1 | | 0 0 0 2 0 4 | 0 0 1 0 0 0 |

| Instructional Levels | Third Grade | |
|---|---|---|
| Reading | 31 31 31 32 32 | |
| Mathematics | 31 31 31 31 31 | |

| Curriculum Areas | Third Grade Ratings | Repeat Ratings |
|---|---|---|
| Reading Readiness | | 80 |
| Eng. L.A. (Total) | 86 88 90 90 92 89 | 80 94 89 82 83 89 |
| Mathematics | 85 92 89 87 89 88 | 98 98 94 100 89 86 |
| Social Studies | 90 90 90 95 90 91 | 85 100 90 88 83 83 |
| Science Health | 85 90 90 90 95 89 | 92 55 43 82 100 85 |
| Fine Arts | 85 90 90 90 90 89 | 90 90 91 72 80 83 |
| Piano Orchestra | 95 | |
| Physical Education | 95 85 87 80 80 84 | 82 35 35 85 80 80 |

*State overall rating for "Language Arts" at K level. Specify individual ratings for Oral Language, Reading, Handwriting, etc. at 1-3 levels

**Readiness, 1, 2, 3, 4

Revised Sept. 1981

25 × [ ]  32 × [ ]

NORM-REFERENCED ASSESSMENT PROGRAM FOR TEXAS
CONFIDENTIAL STUDENT LABEL

HEARN YOKAMON L
TEST DATE APRIL 1993 SPRING 1992
BASE NORMS
FORM 2
GRADE 7 SEX M
BIRTHDATE [redacted]
STUDENT-ID [redacted]
CAMPUS: ZUMWALT MIDDLE
DISTRICT: DALLAS ISD

Printed by TPC © 1993 The Riverside Publishing Co. and Texas Education Agency

| SCORE TYPE | Reading Comprehension | Mathematics Concepts | Mathematics Problem Solving | Total Mathematics | Reading Mathematics Composite | Language | Reading Math Lang Composite | Social Studies | Science |
|---|---|---|---|---|---|---|---|---|---|
| RS | 27 | 36 | 12 | | | 18 | | | |
| SS | 241 | 220 | 196 | 208 | 224 | 211 | 220 | | |
| GE | [illegible] | [illegible] | 4.6 | [illegible] | [illegible] | 5.5 | [illegible] | | |
| N/PR-S | [illegible] | [illegible] | 14-3 | 20-3 | 35-4 | 26-4 | 31-4 | | |
| N/NCE | 51.4 | 38.9 | 27.6 | 32.5 | 41.9 | 36.2 | 39.5 | | |

EDUCATIONAL ACHIEVEMENT TESTS

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Work Study | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|---|
| GRD EQV | K.0 | P.8 | K.2 | | 1.5 | | | K.7 | K.4 |
| NAT %ILE | 14 | 9 | 15 | | 69 | | | 47 | 28 |

GRD KN, DATE TESTED 05 0485, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|
| GRD EQV | K.9 | 1.8 | 1.5 | 1.1 | 2.0 | 1.9 | 2.0 | 1.6 |
| NAT %ILE | 10 | 32 | 25 | 11 | 44 | 39 | 38 | 22 |
| LC %ILE | 21 | 50 | 44 | 20 | 59 | 52 | 54 | 41 |

GRD 02, DATE TESTED 07 1087, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|
| GRD EQV | | 1.3 | K.8 | 1.7 | 2.7 | K.3 | K.8 | 1.4 |
| NAT %ILE | | 31 | 10 | 47 | 75 | 2 | 4 | 31 |
| LC %ILE | | 49 | 18 | 64 | 85 | 3 | 3 | 52 |

GRD 01, DATE TESTED 07 0486, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|
| GRD EQV | | K.8 | 1.0 | 1.0 | 1.1 | 1.9 | 1.7 | 1.1 |
| NAT %ILE | | 14 | 18 | 16 | 22 | 54 | 40 | 17 |
| LC %ILE | | 23 | 35 | 25 | 28 | 69 | 58 | 29 |

GRD 01, DATE TESTED 07 0487, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|
| GRD EQV | | 3.7 | | 2.5 | 3.7 | 3.2 | 3.1 | 3.2 |
| NAT %ILE | | 45 | | 15 | 44 | 31 | 23 | 29 |
| LC %ILE | | 62 | | 23 | 59 | 43 | 31 | 44 |

GRD 03, DATE TESTED 09 0489, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|
| GRD EQV | | 4.8 | | 2.8 | 3.7 | 2.2 | 3.0 | 3.6 |
| NAT %ILE | | 50 | | 5 | 21 | 2 | 3 | 16 |
| LC %ILE | | 65 | | 7 | 30 | 4 | 5 | 25 |

GRD 04, DATE TESTED 10 0480, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

| ITBS | Listening | Vocabulary | Word Analysis | Reading | Language | Math Problems | Math Total | Composite |
|---|---|---|---|---|---|---|---|---|
| GRD EQV | | 5.1 | | 3.8 | 4.7 | 4.2 | 4.8 | 4.3 |
| NAT %ILE | | 32 | | 10 | 28 | 15 | 21 | 13 |
| LC %ILE | | 49 | | 16 | 34 | 23 | 28 | |

GRD 05, DATE TESTED 11 0591, NAME HEARN YOKAMON, I.D. NO. 773749, BIRTH DATE 11/06/78

**CONFIDENTIAL**

TEAMS GRADE 3 TEST DATE 02/89
BIRTH DATE 11/06/78
STUDENT HEARN YOKAMON L
I.D. NO. 773749 (DISTRICT)
DISTRICT 057-905 DALLAS ISD
CAMPUS 132 DARRELL EL

| | SCALED SCORE | SUBJECT MASTERY |
|---|---|---|
| MATHEMATICS | 737 | YES |
| READING | 870 | YES |
| WRITING | 823 | YES |

**TAAS CONFIDENTIAL**

TEST DATE: 10/90
STUDENT: HEARN YOKAMON L
BIRTH DATE: [redacted]
STUDENT ID (PEIMS): 449495456
DISTRICT: 057-905 DALLAS ISD
CAMPUS: 250 YOUNG EL

| | SCALE SCORE | SUBJECT MASTERY |
|---|---|---|
| WRITING | 1590 | YES |
| READING | 1400 | NO |
| MATHEMATICS | 1360 | NO |

NORM-REFERENCED ASSESSMENT PROGRAM FOR TEXAS
CONFIDENTIAL STUDENT LABEL

HEARN YOKAMON
TEST DATE APRIL 1992
BASE NORMS SPRING 1991
FORM 1
GRADE 6 SEX M
BIRTHDATE 11/06/78
STUDENT-ID (PEIMS): UNKNOWN

Printed by TPC. © 1990, The Riverside Publishing Co. and Texas Education Agency

| SCORE TYPE | Vocabulary | Reading Comp. | Total Reading |
|---|---|---|---|
| RS | 14 | 12 | |
| SS | [illegible] | [illegible] | 116 |
| GE | [illegible] | [illegible] | [illegible] |
| N/PR-S | [illegible] | [illegible] | [illegible] |
| N/NCE | 33.4 | 13.6 | 21.4 |

| SCORE TYPE | Spelling | Capitalization | Punctuation | Usage & Express. | Total Language | Concepts | Problem Solving | Computation | Total Math | Social Studies | Science | Composite |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RS | 10 | 16 | 12 | 21 | | 22 | 14 | [illegible] | | 16 | [illegible] | |
| SS | [illegible] | [illegible] | [illegible] | [illegible] | 125 | [illegible] | [illegible] | [illegible] | 135 | [illegible] | [illegible] | 124 |
| GE | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| N/PR-S | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| N/NCE | 22.8 | 27.7 | 29.7 | 37.5 | 33.0 | 37.8 | 40.4 | 40.8 | 39.2 | 48.0 | 34.4 | 27.9 |

14 09A9-0084
Form C 66MS (Rev 1-30)I — 346 — M-E

Name **Hearn, Yokamon** _____ I. D. Number _____

Date of Birth _____ Sex ____ Race _____

Address _____ Telephone _____

Parent/Guardian _____

Middle School _____

High School (Home) _____

**Middle School Cumulative Record**

dallas independent school district

| Transcripts Sent |
|---|

| I.D. NO: 072 773749 | | | | | | | I.D. NO: 072 773749 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NAME: HEARN, YOKAMON L | | | GRADE 07 RACE B | | | | NAME: HEARN, YOKAMON L | | | GRADE 07 RACE B | | | |
| SCHOOL SARAH ZUMWALT M | | | SCHOOL YR 92/93 | | | | SCHOOL SARAH ZUMWALT M | | | SCHOOL YR 92/93 | | | |
| SEMESTER FALL | | | | | | | SEMESTER SPRG | | | | | | |
| SUBJECT | 1 | 2 | 3 | EXAM | SEM | CRED | TEACHER | SUBJECT | 1 | 2 | 3 | EXAM | SEM | CRED | TEACHER |

Data rows (left side):

| SUBJECT | 1 | 2 | 3 | EXAM | SEM | CRED | TEACHER |
|---|---|---|---|---|---|---|---|
| LANG ARTS 7 | | | 70 | | 76 | NO | HOLLON |
| READING IMPRV | 73 | 73 | 70 | 67 | 73 | NO | CAMERON |
| TEX HST-GE07 | 80 | 83 | 85 | 63 | 82 | NO | DISMUKE |
| MATH 7 PH | 71 | | 70 | 51 | 71 | NO | LEWIS |
| COMP LITERACY | | 70 | 70 | 63 | 70 | NO | LEWIS |
| LIFE SCI 7 | 60 | 50 | 73 | 50 | 61 | NO | HAMILTON |
| MATH 7/MASTERY | 70 | 72 | 80 | 70 | 74 | NO | MCLAUGHLI |

Data rows (right side):

| SUBJECT | 1 | 2 | 3 | EXAM | SEM | CRED | TEACHER |
|---|---|---|---|---|---|---|---|
| LANG ARTS 7 | 70 | 70 | 50 | UE | 50 | NO | HOLLON |
| READING IMPRV | 74 | 70 | 73 | U | 55 | NO | CAMERON |
| TEX HST-GE07 | 70 | 75 | 65 | UE | 55 | NO | DISMUKE |
| MATH 7 PH | 70 | 80 | 72 | U | 55 | NO | LEWIS |
| LIFE SCI 7 | 80 | 50 | 70 | U | 50 | NO | HAMILTON |
| PE-AEROBICS 7 | 70 | 90 | 90 | U | 60 | 78 | NO MCWILLIAM |
| MATH 7/MASTERY | 81 | 50 | 74 | I | 51 | NO | MCLAUGHLI |

| ENTERED | SEM END WO | ABS | SEM GPA | SEM CR | CUM GPA | CUM CR | ENTERED | SEM END WO | ABS | SEM GPA | SEM CR | CUM GPA | CUM CR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/18 | 12/17 | 06 | | | | | 08/18 | 05/26 | 14 | | | | |

8th

Repeat

Name _____   I. D. Number _____

Referral for Special Services

| Date | ARD Team | Student Service Number | Recommendations |
|------|----------|------------------------|-----------------|
|      |          |                        |                 |

Objective Test Data

7th

CONFIDENTIAL

8th

Additional

### STATE OF TEXAS
### ACADEMIC ACHIEVEMENT RECORD
### (ACCREDITED)

YOKAMON L HEARN
Student ID:  773749
SSN       :
DOB       :
Male
Black

Parents/Guardians
WANDA HEARN

DISD 2004 - 2005 SCHOOL YEAR
A. MACEO SMITH HIGH SCHOOL
3030 S STAG RD
DALLAS TX 75216
302-2030
CBCC: 441742 TEA code:  057-905-003

TAAS MASTERY
Reading    :
Mathematics :
Writing    :

END OF COURSE
Algebra 1 :
Biology 1 :
English II:
US History:

Schools Awarding Credit
92/93 057-905-072/057-905-072    95/96 057-905-003/057-905-003
94/95 OUT-OF -DIS/OUT-OF -DIS    96/97 057-905-003
94/95 OUT-OF -DIS/OUT-OF -DIS

| | S1 | S2 | Av | Cr | | | S1 | S2 | Av | Cr |
|---|---|---|---|---|---|---|---|---|---|---|
| Language Arts | | | | | | 96/97 FSN: | 50 | | | 0.0 |
| 94/95 ENG 1:@ | 50 | 50 | | 0.0 | | 96/97 CSG: | 50 | | | 0.0 |
| 94/95 READIMP1:@ | 50 | 50 | | 0.0 | Other Electives | | | | | |
| 95/96 ENG 1: | 71 | | | 0.5 | | 94/95 ROTC 1:@ | 78 | | | 0.5 |
| 95/96 ENG 1: | | 77 | | 0.5 | | 95/96 ROTC 1: | 81 | 76 | | 1.0 |
| 95/96 READIMP1: | 78 | 79 | | 1.0 | | 96/97 ROTC 2: | 62 | | | 0.0 |
| 96/97 ENG 2: | 50 | | | 0.0 | Local Credit | | | | | |
| Mathematics | | | | | | 95/96 TAAS  TU:L | 70 | 67 | | 0.5 |
| 94/95 ALG 1:@ | 50 | 52 | | 0.0 | | 96/97 TAAS  TU:L | 53 | | | 0.0 |
| 95/96 ALG 1: | 78 | | | 0.5 | | | | | | |
| 95/96 ALG 1: | | 74 | | 0.5 | | | | | | |
| 96/97 GEOM: | *49 | | | 0.0 | | | | | | |
| Science | | | | | | | | | | |
| 94/95 PHYS SCI:@ | 64 | 70 | | 0.5 | | | | | | |
| 95/96 BIO: | 71 | | | 0.5 | | | | | | |
| 95/96 BIO: | | 76 | | 0.5 | | | | | | |
| 96/97 SCI 3: | 50 | | | 0.0 | | | | | | |
| Social Studies | | | | | | | | | | |
| 94/95 W HIST:@ | | 50 | | 0.0 | | | | | | |
| 94/95 W GEO:@ | 76 | | | 0.5 | | | | | | |
| 95/96 US HIST: | 70 | | | 0.5 | | | | | | |
| 95/96 US HIST: | | 70 | | 0.5 | | | | | | |
| Health | | | | | | | | | | |
| 94/95 HLTH ED:@ | 70 | | | 0.5 | | | | | | |
| Fine Arts | | | | | | | | | | |
| 96/97 MUS1BAND: | 80 | | | 0.5 | | | | | | |
| Career & Technology | | | | | | | | | | |
| 95/96 TS: | 70 | 72 | | 1.0 | | | | | | |

Credit Totals:    State   9.50   Local  0.50

Date of Class Rank: 03/08/1997    Date of Graduation:
Rank            : 174             HIGH SCHOOL PROGRAM
Class Size      : 200
Average         : 64.8300
Collegiate GPA  : 1.1700
Quartile        : 4

70-100=passing grades
W = PE Waiver
* = credit denied due to excessive
    absences (TAC 166, FDD(local));
$ = credit based on full year average

NOTE: A=Tech-Prep;C=Correspondence;D=Dual Credit; E=Credit by Exam;
G=Gifted/Talented;H=Honors;I=IB Course;J=HS course completed prior to
Grade 9; K=Pre IB Course; L=Local Credit Course; M=Magnet Course;
N=Night School Course; P=AP Course; Q=Pre AP Course; R=Summer;
S=Content modified by ARD; T=Credit Verification; X=Innovative Course;
Z=Distance Learning; @= Received from Another District

Texas Grant
Academic Eligibility:

Date Printed: 01/07/2005

YOKAMON L HEARN
Student ID:  773749

DISD 2004 - 2005 SCHOOL YEAR
A. MACEO SMITH HIGH SCHOOL

## College Entrance Exams

| PSAT | DATE | LEV | VERB | VPCT | MATH | MPCT | SEL | |
|------|------|-----|------|------|------|------|-----|---|

| SAT | DATE | LEV | VERB | MATH | TOTAL |
|-----|------|-----|------|------|-------|

| ACT | DATE | LEV | E | % | M | % | S | % | N | % | C | % |
|-----|------|-----|---|---|---|---|---|---|---|---|---|---|

| SAT-ACH | DATE | ACH1 | ACH2 | ACH3 |
|---------|------|------|------|------|

(1st TAAS    :  Rd TLI -      Mth TLI -      Writ Scl -        )

## Test of Achievement and Proficiency

## Immunization Records

| RUBEOLA | 1V 02/01/91 | | HEP B |
|---------|-------------|---|-------|
| MUMPS | 1V 02/01/91 | | HEP A |
| | | | VARICELLA |
| RUBELLA | 1V 02/01/91 | | |
| DPT | 1V 11/14/95 | | |
| POLIO | 1V 08/10/84 | | |

## Honors & Activities

## Special Comments

*[handwritten: 2. Thompson 1-7-05 Data mgr]*

## Distinguished Achievement Measures

GPA is based on all courses taken in the 9th grade or above. Final rank in class is computed by totaling the weighted rank points of eligible courses representing the highest 24 credits taken and earned in grades 9 - 12.  Course credit earned through credit by examination or credit for acceleration and courses taken as pass/fail are excluded from GPA and rank.